Mark L. Javitch (CA SBN 323729)
Javitch Law Office
480 S. Ellsworth Ave
San Mateo, CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705
mark@javitchlawoffice.com
*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MARIA RUTENBURG, an individual<br><br>Plaintiff,<br><br>v.<br><br>TWITTER, INC., a Delaware Corporation,<br><br>Defendant. | Case No.:  4:21-cv-00548-YGR<br><br>**NOTICE OF MOTION AND MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>**Hearing Date: March 9, 2021**<br>**Time: 2:00 p.m.** |

i

4:21-cv-00548-YGR

## NOTICE OF MOTION AND MOTION FOR TEMPORARY RESTRAINING ORDER

PLAINTIFF HEREBY PROVIDES NOTICE that as soon as may be heard, on March 9, 2021, in Courtroom 1, on the 4th Floor of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, CA 94612 at 2:00 p.m., Plaintiff will and hereby does move the Court for a temporary restraining order against Defendant TWITTER, INC.

The Motion will be based on this Notice of Motion and Motion for a Temporary Restraining Order,, the Memorandum of Points and Authorities, and the declaration of Plaintiff MARIA RUTENBURG in Support of the Motion for a Temporary Restraining Order.

Date: January 27, 2021

By: /s/ Mark L. Javitch

Mark L. Javitch
*Attorney for Plaintiff*
MARIA RUTENBURG

ii

4:21-cv-00548-YGR

1

2

## <u>TABLE OF CONTENTS</u>

3    I.      INTRODUCTION .................................................................................................1

4    II.     FACTUAL SUMMARY ........................................................................................1

5            A.  Former President Trump's Tweets.............................................................1

6            B.  Twitter's Interactive Space for Commenting on Former President Trump's Tweets is a Designated Public Forum.......................................................................................2

7            C.  Twitter Applies Warning Notices to Former President Trump's Tweets................2

8            D.  Twitter Blocks Comment and Then Censors Former President Trump's Tweets...2

9    III.    LEGAL STANDARD...........................................................................................5

10   IV.     A TEMPORARY RESTRAINING ORDER SHOULD BE ISSUED .............................6

11           A.      Plaintiff is Likely to Succeed or Raise Serious Questions........................6

12                   1.   Plaintiff's First and Fourteenth Amendment Claims are Likely to Succeed or Raise Serious Questions ...................................................................................6

13                        i.    Plaintiff has Standing..........................................................6

14                        ii.   The Interactive Space Surrounding the President's Tweets are Designated Public Fora ...........................................................................7

15
16                        iii.  Blocking Speech in a Designated Public Forum Based on Viewpoint and Content is Prohibited..............................................................8

17                        iv.   Defendants Blocked Plaintiff's Ability to Comment on Certain Topics is Viewpoint and Content-Based Discrimination and Violates the Due Process
18                              Clause................................................................................9

19                        v.    Defendants Were Acting under Color of Law .................................11

20                              a.    The Deprivation was the Result of a Governmental Policy ....11

21                              b.    Regulating Speech in a Designated Public Forum is Traditionally and Exclusively the Prerogative of the State................................15

22

23

iii

24

25

26

27

2.    Plaintiff's Illegal Prior Restraint Claim is Likely to Succeed or Raise Serious Questions......................................................................................15

3.    Plaintiff's First Amendment Retaliation Claim is Likely to Succeed .............17

B.     Plaintiff Will Face Further Irreparable Harm if the Injunction is Not Issued........18

C.     The Balance of Hardships Sharply Favors the Injunction .....................................19

D.     The Public Interest Strongly Favors the Injunction ...............................................19

E.     Only a Minimal Bond Should be Required.............................................................20

F.     Relief Requested ....................................................................................................20

V.     CONCLUSION...........................................................................................................21

iv

4:21-cv-00548-YGR

1

## **TABLE OF AUTHORITIES**

2

***Cases***

3

<u>Supreme Court Authorities</u>

4

*Board of Airport Comm'rs of Los Angeles v. Jews for Jesus, Inc.*,
482 U.S. 569, 574 (1987)......................................................................................... 9-10

6

*City of Lakewood v. Plain Dealer Pub. Co.*,
486 U.S. 750, 763 (1987)......................................................................................... 9-10

7

8

*Elrod v. Burns*,
427 U.S. 347, 373 (1976)..............................................................................................18

9

10

*Jackson v. Metropolitan Edison, Co.*,
419 U.S. 345, 352 (1974)..............................................................................................10

11

*Lugar v. Edmondson Oil Co.*,
457 U.S. 922, 937 (1982).................................................................................. 10, 13-14

12

13

*Lujan v. Defenders of Wildlife*,
137 S. Ct., 1730, 1735 (2017).........................................................................................6

14

15

*Manhattan Cmty. Access Corp. v. Halleck*,
139 S. Ct. 1921, 1934 (2019).................................................................................12, 14

16

*Matal v. Tam*,
137 S. Ct. 1744, 1763 (2017).........................................................................................8

17

18

*Nat'l Collegiate Athletic Assn. v. Tarkianian*,
488 U.S. 179 (1988)......................................................................................................14

19

20

*Nebraska Press Ass'n v. Stuart*,
427 U.S. 539, 558 (1976)..............................................................................................15

21

22

*New York Times Co. v. United States*,
403 U.S. 713, 730-32 (1971) ........................................................................................18

23

v

24

4:21-cv-00548-YGR

25

26

27

Supreme Court Authorities (continued)

*Packingham v. North Carolina*,
137 S. Ct., 1730, 1735 (2017)....................................................................................8

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
141 S. Ct. 63, (2020)...............................................................................................18

*Terry v. Adams*,
345 U.S. 461, 469-70 (1953) ...................................................................................11

*West v. Atkins*,
487 U.S. 42, 46 (1988)..............................................................................................11

Circuit Court Authorities

*Alliance for the Wild Rockies v. Cottrell*,
632 F.3d 1127, 1131 (9th Cir. 2011) .........................................................................5

*Attwood v. Clemons*,
818 F. App'x 863, 867 (11th Cir. 2020) ........................................................7, 12, 14

*Davison v. Randall*,
912 F.3d 666, 687 (4th Cir. 2019) ....................................................... 7-8, 12, 14

*Desert Outdoor Adver. V. City of Moreno Valley*,
103 F.3d 814, 818 (9th Cir. 1996) ...........................................................................16

*Epona, LLC v. Cty of Ventura*,
912 F.3d 666, 687 (9th Cir. 2017) ...........................................................................17

*Foti v. City of Menlo Park*,
146 F.3d 629, 643 (9th Cir. 1998) ...........................................................................18

*Gorenc v. Salt River Project Agric. Improvement and Power Dist.*,
869 F.2d 503, 507 (9th Cir. 1989) ...........................................................................11

vi

1

2

<u>Circuit Court Authorities (continued)</u>

*Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.*,
742 F.3d 414, 430 (9th Cir. 2014) ............................................................. 15

*Hernandez v. Sessions*,
872 F.3d 976, 1000 (9th Cir. 2017) ............................................................. 7

*Iowa Right to Life Committee, Inc. v. Williams*,
187 F.3d 963, 970 (8th Cir. 1999) ............................................................. 19

*Hunt v. City of Los Angeles*,
638 F.3d 703, 712 (9th Cir. 2011) ............................................................. 10

*Knight First Amendment Inst. v. Trump*,
928 F. 3d 226, 239 (2d Cir. 2019).............................................. 7-8, 12-14

*Lee v. Katz*,
276 F.3d 550, 554-55 (9th Cir. 2002) ................................................. 10, 14

*Leer v. Murphy*,
844 F.2d 628, 632-33 (9th Cir. 1988) ......................................................... 6

*Long Beach Area Peace Network v. City of Long Beach*,
574 F.3d 1011 (9th Cir. 2015) ................................................................. 16

*Munns v. Kerry*,
782 F.3d 402, 409 (9th Cir. 2015) ............................................................. 6

*O'Brien v. Welty*,
818 F.3d 920, 932 (9th Cir. 2016) ............................................................. 17

*Prager Univ. v. Google, LLC*,
951 F.3d 991, 998-99 (9th Cir. 2020) ................................................. 11, 14

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

4:21-cv-00548-YGR

Circuit Court Authorities (continued)

*Sammartano v. First Judicial District Court in, for Cty. Of Carson City,*
303 F.3d 959, 974 (9th Cir. 2002) ............................................................19

*Shell Offshore, Inc. v. Greenpeace, Inc.,*
709 F.3d 1281, 1291 (9th Cir. 2013) ..........................................................5

*Sierra On—Line, Inc. v. Phoenix Software, Inc.,*
739 F.2d 1415, 1421 (9th Cir. 1984) ..........................................................5

District Court Authorities

*Am. Atheists v. Rapert,*
2019 U.S. Dist. Lexis 230493 (E.D. Ark. Sep. 30, 2019)............................7

*Burkow v. City of Los Angeles,*
119 F. Supp. 2d 1076, 1082 (C.D. Cal. 2000) ..........................................18

*Campbell v. Reisch,*
367 F. Supp. 3d 987, 922 (W.D. Mo. 2019) ................................................7

*Davison v. Facebook, Inc.,*
370 F. Supp. 3d 621, 629 (E.D. Va. Mar. 3, 2020)....................................12

*Divino Grp. LLC v. Google LLC,*
20211 U.S. Dist. Lexis 3245 (N.D. Cal. Jan. 6, 2021)...............................12

*Ebeid v. Facebook, Inc.,*
2019 WL 2059662, 2019 U.S. Dist. LEXIS 78876 (N.D. Cal. May 9, 2019)..............................12

*Felts v. Reed,*
2020 U.S. Dist. Lexis 224489, 2020 WL 7041809 (E.D. Mo. Dec. 1, 2020)................................7

viii

District Court Authorities (continued)

*Forbes v. Facebook, Inc.*,
2016 U.S. Dist. LEXIS 19857, 2016 WL 676396 (E.D.N.Y. Feb. 18, 2016) ...............................12

*Freedom Watch v. Google, Inc*,
368 F. Supp. 3d 30, 40 (D.D.C. 2019) ...........................................................................................12

*Garnier v. O'Connor-Ratcliffe*,
2021 U.S. Dist. Lexis 761, 2021 WL 129823 (S.D. Cal. Jan. 14, 2021) ............................... 6-7, 13

*Garnier v. Poway Unified Sch. Dist.*,
2019 U.S. Dist. Lexis 167247, 2019 WL 4736208 (S.D. Cal. Sep. 26, 2019) ...............................7

*Langdon v. Google, Inc.*,
474 F. Supp. 2d 622, 631 (D. Del. 2007) .......................................................................................12

*Lewis v. Jones*,
440 F. Supp. 3d 1123, 1135 (E.D. Cal. 2020).....................................................................7, 10, 18

*Lombard v. Eunice Kennedy Shriver Center for Mental Retardation, Inc.*,
556 F. Supp. 677, 680 (D. Mass. 1983) .........................................................................................14

*One Wisconsin Now v. Kremer*,
354. F. Supp. 3d 940 (W.D. Wis. 2019) ......................................................................................7, 9

*Pen Am. Ctr., Inc. v. Trump*,
448 F. Supp. 3d 309, 327 (S.D.N.Y. 2020).....................................................................................18

*Tulsi Now, Inc. v. Google, LLC*,
2020 U.S. Dist. Lexis 41673, 2020 WL 4353686 (C.D. Cal. Mar. 3, 2020) ..................................12

*Wilson v. Twitter*,
2020 U.S. Dist. Lexis 110800, 2020 WL 3410349 (S.D.W Va. May 1, 2020) .............................12

ix

4:21-cv-00548-YGR

District Court Authorities (continued)

*Zimmerman v. Facebook, Inc.*,
2020 U.S. Dist. Lexis 183323, 2020 WL 5877863 (N.D. Cal. Oct. 2, 2020)................................12

**Statutes, Rules, and Other Authorities**

U.S. Constitution..................................................................................................................6
42 U.S.C. § 1983..................................................................................................................6
Federal Rule of Civil Procedure 65(c) .................................................................................20

x

4:21-cv-00548-YGR

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

This case is not about the free speech of the former President – Rather, this case concerns the free speech rights of Plaintiff Maria Rutenburg and millions of people around the country who enjoyed debating, supporting, criticizing, attacking, or mocking Trump's Tweets. Americans have a First Amendment right to read, discuss, debate, comment, reply and respond to the former President's tweets, yet Twitter arbitrarily revoked those rights by picking and choosing which topics[1] people could comment about, and then ultimately by banning all discussions with Trump's tweets in context.

### II.   FACTUAL SUMMARY

#### A.     Former President Trump's Tweets

The former President's tweets covered a range of all topics, official and unofficial, were always controversial, and the media punditry's reaction commonly drove the media coverage for the day's news cycle. Am. Compl., ¶ 21. He opened his account when he was a private citizen in 2009, but he presented his account as being a presidential account as opposed to a personal account and he regularly conducted official business in the appointment and removal of officers.  *Id*. at ¶¶ 22-23. His Twitter account @realDonaldTrump had issued over 65,000 tweets and over 88 million followers.  According to estimates,

---

[1] Orwell, George. *1984*. London: Secker and Warburg, 1949. Print. ("Don't you see that the whole aim of Newspeak is to narrow the range of thought? In the end we shall make thought-crime literally impossible, because there will be no words in which to express it.…Has it ever occurred to you, Winston, that by the year 2050, at the very latest, not a single human being will be alive who could understand such a conversation as we are having now?")

1

as a presidential candidate, he tweeted 7,794 times, or 15.2 tweets per day. As president, he tweeted 26,193 times over four years, up to 34.8 tweets per day in the last half of his last year in office.

**B.    Twitter's Interactive Space for Commenting on Former President Trump's Tweets is a Designated Public Forum**

Courts have segregated out the "interactive space" surrounding a politician's social media postings for separate analysis under the First Amendment. *See e.g.*, *Knight First Amendment Inst. v. Trump*, 928 F.3d 226, 239 (2d Cir. 2019). This interactive space permits users a range of expressive options – they are able to reply within a tweet to the author, quote a tweet to their own audience (while keeping the original tweet in context for discussion), retweet a tweet to their own followers, or like a tweet. Am. Compl., ¶¶ 15-22, 44, 54.

**C.    Twitter Applies Warning Notices to Former President Trump's Tweets**

Beginning as early as November 2, 2020, Twitter began inserting warning notices on Trump's Tweets, especially when Trump discussed "election fraud." Am. Compl., ¶¶ 26, 32, 35, 38, 46, 59. The first flag Twitter imposed said "[s]ome or all of the content shared in this Tweet is disputed and might be misleading about an election or other civic process. [Click to] Learn more" link was placed above the tweet and the phrase "Learn how voting by mail is safe and secure" below the tweet." Between November 2, 2020, and when Trump's Twitter Account was suspended, Twitter flagged Trump's tweets with various warning notices over 400 times and deleted 62 tweets. *Id.* at 46.

**D.    Twitter Blocks Commenting on Certain of Former President Trump's Tweets**

Beginning on election night, November 3, 2020, Twitter started to remove wholesale certain of Trump's tweets whenever he alleged election fraud. On election night, Trump tweeted:

4:21-cv-00548-YGR

> We are up BIG, but they are trying to STEAL the Election. We will never
> let them do it. Votes cannot be cast after the [polls] are closed.

Am. Compl., ¶ 25. Twitter erased this tweet, but Trump was able to tweet the same message five

minutes later, and Twitter permitted the tweet to stand but added its warning notices. *Id*. at ¶ 26. The next

day, Trump retweeted:

> @MattMackowiak: An update gives Biden 100% of new votes – 128k+

*Id*. at ¶ 27. But this post was deleted by Twitter. *Id*. at ¶ 28. On November 5, 2020, Trump

retweeted:

> @EricTrump: The amount of FRUAD being reported in Pennsylvania,
> Michigan, Nevada, Georgia and Wisconsin is unreal.  Please report personal
> experiences. Please have all facts and evidence.

*Id*. at ¶ 29. This post was also deleted by Twitter. *Id*. at ¶ 30. Between November 2, 2020 and when

Trump's account was suspended, Twitter deleted approximately 62 of his tweets and added warning

labels to approximately 400 of his tweets. *Id*.at ¶ 46.

On January 6, 2021, Trump held a rally in Washington, D.C that culminated in violence at the

Capital Building.  *Id*. at ¶ 31. Trump at least three times that day, but all three of those tweets were

removed by Twitter.  *Id*. at ¶ 32. Prior to removing the tweets, Twitter applied warning labels and

prohibited Plaintiff's from commenting and otherwise interacting with the tweets.  *Id*. at ¶ 33.

First, Trump tweeted:

> Mike Pence didn't have the courage to do what should have been done to
> protect our Country and our Constitution, giving States a chance to certify
> a corrected set of facts, not the fraudulent or inaccurate ones which they
> were asked to previously certify. USA demands the Truth!

*Id*. at ¶ 34. At first, the tweet was left up by Defendant, but they attached a warning label to the

tweet which said "This claim about election fraud is disputed[.]" *Id*. at ¶ 35. Plaintiff could view this

3

tweet for a short time before Twitter deleted it. *See* Rutenberg Decl., ¶ 10. Plaintiff tried to comment and quote this tweet but has not been able to view or comment on it since Defendant deleted it.  *Id*. at ¶ 11.

On the same day, Trump tweeted a video of himself speaking, in which he said:

> I know your pain. I know you're hurt. We had an election that was stolen from us. It was a landslide election, and everyone knows it, especially the other side. But you have to go home now. We have to have peace. We have to have law and order. We have to respect our great people in law and order. We don't want anybody hurt.
>
> It's a very tough period of time. There's never been a period of time like this where such a thing happened where they could take it away from all of us: from me, from you, from our country. This was a fraudulent election, but we can't play into the hands of these people.
>
> We have to have peace. So go home. We love you. You're very special. You've seen what happens. You see the way others are treated that are so bad and so evil. I know how you feel but go home and go home in peace.

Am. Compl., at. ¶ 36. Twitter applied a warning label to this video tweet that read: "This claim of election fraud is disputed, and this Tweet can't be replied to, Retweeted, or liked due to a risk of violence[.]" *Id*. at ¶¶ 37-38. Plaintiff was able to view this tweet for a short period, and tried to comment on the tweet, but she was unable to comment because Twitter had applied the warning label and disabled the commenting functions. *Id*. at. ¶¶ 36-40; *See* Rutenberg Decl., ¶¶ 8-9. Later, Twitter removed that tweeted video and replaced it with a banner that said: "This Tweet is no longer available." Am. Compl., ¶ 40.

On the same day, Trump also tweeted:

> These are the things and events that happen when a sacred landslide election victory is so unceremoniously & viciously stripped away from great patriots who have been badly & unfairly treated for so long. Go home with love & in peace.  Remember this day forever!

*Id*. at ¶ 38.

4

Plaintiff tried to comment and quote this tweet, but she was not able to because Defendant had deleted the tweet. *See* Rutenberg Decl., ¶¶ 12-13.

Based on these three tweets, on January 7, 2021, Defendant suspended the former President for a 12 hour period and required Trump's account to remove three tweets that represented "severe and repeated" policy violations. Am. Compl., ¶ 42. On January 8, 2021, Twitter announced a complete suspension of Trump's twitter account and removed all of his tweets from view or comment.[2] *Id*. at ¶¶ 47-48.  Since the suspension, Plaintiff has tried to search, view and comment on the former president's tweets, but has been unable to view or comment on any of them due to Defendant blocking them from view.  *Id*. at. ¶¶ 47-52; *See* Rutenberg Decl., ¶ 14

## III.   LEGAL STANDARD

"A plaintiff seeking a [temporary restraining order] must establish that [she] is likely to succeed on the merits, that [she] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [her] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Defense Council*, 555 U.S. 7, 20 (2008). Alternatively, "if a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc*., 709 F.3d 1281, 1291 (9th Cir. 2013) (internal quotation marks and citation omitted). A "serious question" is one on which the movant "has a fair chance of success on the merits." *Sierra On—Line, Inc. v. Phoenix Software, Inc*., 739

---

[2] *See Twitter, Inc*., Permanent suspension of @realDonaldTrump, Jan. 8, 2021. https://blog.twitter.com/en_us/topics/company/2020/suspension.html (Last Accessed January 21, 2021).

F.2d 1415, 1421 (9th Cir. 1984) (citation omitted). The Ninth Circuit employs a sliding scale approach, wherein "the elements of the preliminary injunction test are balanced so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

## IV.   A TEMPORARY RESTRAINING ORDER SHOULD BE ISSUED

### A.  Plaintiff is Likely to Succeed on the Merits or Raise Serious Questions

#### 1.   Plaintiff's First and Fourteenth Amendment Claims are Likely to Succeed or Raise Serious Questions

Plaintiff's § 1983 claims under the First and Fourteenth Amendments are likely to succeed, or in the alternative, raise serious questions. To establish a prima facie case under 42 U.S.C. § 1983, a plaintiff must show that the action occurred under "color of law" and resulted in a deprivation of a constitutional right or a federal statutory right. *Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir. 1988).

#### i.   Plaintiff has Standing

The jurisdiction of federal courts is limited by Article III, § 2, of the Constitution to "Cases" or "Controversies." *Munns v. Kerry*, 782 F.3d 402, 409 (9th Cir. 2015). This requires a litigant to show "an invasion of a legally protected interest" that is "concrete and particularized," as well as "actual or imminent." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotations omitted).

Here, Plaintiff seeks injunctive relief against Defendant to restore her First and Fourteenth Amendment rights. Am. Compl., ¶ 62. Plaintiff was and is currently prohibited arbitrarily from commenting on the former President's tweets. *See* Rutenburg Decl., ¶¶ 6-14.  An injunction issued by this Court would require Defendant to unblock the former President's tweets from view (for the period in which he was a candidate and in office) and unblock Plaintiff's ability to comment on those tweets. Given her alleged infringement on her civil rights, Plaintiff has standing to bring her claim against

Defendant for a violation of 42 U.S.C. § 1983. *See Garnier v. O'Connor-Ratcliff*, No. 3:17-cv-02215-BEN-JLB, 2021 U.S. Dist. LEXIS 7613, 2021 WL 129823, at *24-25 (S.D. Cal. Jan. 14, 2021).

        ii.      **The Interactive Space in the President's Tweets are Designated Public Fora**

The only three circuit courts that have analyzed the issue, and numerous district courts, have held that the interactive space (where the public can comment, reply, quote, or retweet) surrounding a public official's official social media postings constitutes a designated public forum entitled to First Amendment Protection. *See Davison v. Randall*, 912 F.3d 666, 687 (4th Cir. 2019); *Knight First Amendment Inst.*, 928 F.3d at 239; *Attwood v. Clemons*, 818 F. App'x 863, 867 (11th Cir. 2020) (unpublished op.); *O'Connor-Ratcliff*, 2021 U.S. Dist. LEXIS 7613, 2021 WL 129823, at *27; *Garnier v. Poway Unified Sch. Dist.*, No. 17-cv-2215-W (JLB), 2019 U.S. Dist. LEXIS 167247, 2019 WL 4736208, at *29 (S.D. Cal. Sept. 26, 2019); *Campbell v. Reisch*, 367 F. Supp. 3d 987, 922 (W.D. Mo. 2019); *Felts v. Reed*, Case No. 20-cv-821-JAR, 2020 U.S. Dist. LEXIS 224489, 2020 WL 7041809, at *6 (E.D. Mo. Dec. 1, 2020); *One Wisconsin Now v. Kremer*, 354 F. Supp. 3d 940, 955 (W.D. Wis. 2019); *Lewis v. Jones*, 440 F. Supp. 3d 1123, 1135 (E.D. Cal. 2020); *Am. Atheists v. Rapert*, No. 4:19-cv-00017-KGB, 2019 U.S. Dist. LEXIS 230493, at *79 (E.D. AR Sep. 30, 2019).

The Second Circuit specifically analyzed former President Trump's twitter account. The panel held that the following factors indicated the interactive component of the former President's social media page could be analyzed separately from the rest of the profile for the purposes of forum analysis. *Knight*, 928 F.3d at 239. The *Knight* court found "a social media account is intentionally opened for public discussion when the President, upon assuming office, repeatedly used the account as an official vehicle for governance and made its interactive features accessible to the public without limitation." *Id.* at 237.

7

In "considering the interactive features, the speech in question is that of multiple individuals" and not just the government. *Id*. (1) the Twitter account was presented as being "registered to Donald J. Trump, '45th President of the United States of America, Washington, D.C.,'"; (2) the President's tweets were considered "official records that must be preserved under the Presidential Records Act"; and (3) the President's Twitter account was used in the course of the appointment and removal of officers and for conducting foreign policy. 302 F. Supp. 3d at 567. The *Knight* court determined that "the President presents the [Twitter] account as being a presidential account as opposed to a personal account and, more importantly, uses the account to take actions that can be taken only by the President as President." *Id*. The contents of the retweets, replies, likes, and mentions are controlled by the user who generates them," the interactive space is not government speech and is susceptible to forum analysis. *Id*. The analysis conducted by the Knight court of the former President's twitter account applies the same here. Am. Compl., ¶¶ 18-19.

            iii.       **Blocking Speech in a Designated Public Forum Based on Viewpoint, Content, or Taking Offense is Prohibited**

In designated public forums, content and viewpoint discrimination are prohibited. *See Davison*, 912 F.3d at 687-88. The Supreme Court has recognized social media as one of "the most important places . . . for the exchange of views . . . ." *Packingham v. North Carolina*, 137 S. Ct. 1730, 1735 (2017). "Content discrimination" occurs when the government "chooses the subjects that may be discussed," while "viewpoint discrimination" occurs when the government prohibits "speech by particular speakers," thereby suppressing a particular view about a subject. *See Perry*, 460 U.S. at 59 (Brennan, J., dissenting). "Viewpoint discrimination is apparent, for example, if a government official's decision to take a challenged action was impermissibly motivated by a desire to suppress a particular point of view."

8

*Davison*, 912 F.3d at 687 (citations omitted). Further, speech may also not be banned on the basis that it is claimed to be "offensive." *See Matal v. Tam*, 137 S. Ct. 1744, 1763 (2017) ( "Official censorship based on a state actor's subjective judgment that the content of protected speech is offensive or inappropriate is viewpoint discrimination."); see also *id*. at 1766 (Kennedy, J., concurring)).

**iv.     Blocking Plaintiff's Ability to Comment on Presidential Tweets Is Viewpoint and Content-Based Discrimination and Violates the Due Process Clause**

Here, Plaintiff was subject to both viewpoint and content-based discrimination and a violation of the due process clause in a designated public forum when Plaintiff's ability to view and respond to the former President's tweets on the topic of alleged election fraud was interfered with and blocked, and then again when her ability to comment on all the former President's tweets was removed. Plaintiff herself commented on election fraud and she wanted to do so with the former president's tweets in context. Am. Compl. at ¶¶ 19-20, 39, 45-52; *see also* Rutenburg Decl., ¶¶ 6-14*; One Wisconsin Now*, 354 F. Supp. 3d at 955-56*.* Defendant's censorship was sporadic, haphazard, and entirely arbitrary, likely based on the prevailing political pressure at the time. The original justification for the censorship, wanting to quell violence in Washington D.C., has long passed.

On January 6, 2021, the President posted at least two written tweets and one video tweet. Am. Compl., ¶ 32. Defendant posted a warning label on one tweet. *Id*. at ¶ 33. Then Trump posted a video of himself speaking. *Id*. at ¶ 36.  Defendant at first kept the video available but prevented Plaintiff's ability to comment and reply to the three tweets. *Id*. at ¶¶ 37-39. Thereafter, Plaintiff could not view, comment, or otherwise interact with the three Trump's tweets. *Id*. at ¶ 29; *see also* Rutenburg Decl., ¶¶ 14. Then, in the evening, Defendant removed the video and replaced it with a message that said: "This Tweet violated

9

is no longer available." Am. Compl., ¶ 40. For a couple of days, only the three tweets were blocked, but it was still possible to search and interact with thousands of President Trump's other tweets.

On January 8, 2021, Twitter suspended Trump's account and removed all of Trump's Tweets from the service, spanning over 65,000 tweets. *Id*. at ¶ 31-32. In doing so, Twitter prevented Plaintiff from the ability to view and search the record, thereby rendering all of Trump's tweets unavailable for comment. *Id*. at ¶ 33. The result was that Plaintiff was effectively blocked from viewing tweeting, quoting, or retweeting President Trump's tweets in a designated public forum. *Id*. at ¶¶ 34-36. *See Board of Airport Comm'rs of Los Angeles v. Jews for Jesus, Inc*., 482 U.S. 569, 574 (1987) (overturning a resolution banning "All First Amendment Activities" in a public forum).

Defendant's arbitrary censorship not only violates the First Amendment, but also the Due Process Clause of the Fourteenth Amendment. Defendant's policy of blocking some users and some tweets on certain topics is vague and is a line that "is so murky, enforcement of the [policy] poses a danger of arbitrary and discriminatory application." *Hunt v. City of Los Angeles,* 638 F.3d 703, 712 (9th Cir. 2011); *See Jones*, 440 F. Supp. 3d at 1136 (plaintiff was likely to succeed in demonstrating viewpoint discrimination). The original justification for the censorship, to quell violence prior to the inauguration, has now passed. *See Hunt*, 638 F.3d at 713 ("[T]his lack of clarity may operate to inhibit the exercise of freedom of expression because individuals will not know whether the ordinance allows their conduct, and may choose not to exercise their rights for fear of being . . . punished.").

### v.      Defendant was Acting Under Color of State Law

Defendant's arbitrary censoring of selected people and topics in a designated public forum satisfies the color of law analysis. The Supreme Court has found state action present "in the exercise by a private

entity of powers traditionally exclusively reserved to the State." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352 (1974). "Under the public function test, when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations." *See Lee v. Katz*, 276 F.3d 550, 554-55 (9th Cir. 2002), cert. denied, 536 U.S. 905 (2002) (citations omitted). Plaintiff must satisfy a two-step test under *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). In the first step of the *Lugar* analysis, Plaintiff must show that  "the deprivation is the result of a governmental policy." *Id.* In the second step of the *Lugar* analysis Plaintiff must make a showing that the function at issue is "both traditionally and exclusively governmental." *West v. Atkins*, 487 U.S. 42, 46 n. 6 (1988).

a.      The Deprivation was the Result of a Governmental Policy

Unlike the recent case *Prager Univ. v. Google, LLC*, here, the deprivation was the result of a governmental policy*, and thus *Prager* does not control this case. In that case, the Ninth Circuit held that merely hosting speech on their private websites does not transform social media companies into state actors. 951 F.3d 991, 998-99 (9th Cir. 2020).

Prager University sued YouTube for "demonetizing" its educational videos and marking them as "restricted," placing them in the same category alongside videos of drugs, sexual situations, and violence, all based on alleged anti-conservative bias. *Id*. at 996. The court rejected Prager's argument that in the modern age, the ubiquity of YouTube's video service and merely opening it for public discussion meant it must be considered a constitutionally protected designated public forum.  *Id*. at 998-999 (Hosting speech on private property does not make it analogous to a private entity assuming the traditional functions of government in operating a company town).

11

4:21-cv-00548-YGR

However, these cases do not demonstrate that Defendant here can never for any purposes be held to be a state actor. On the contrary, an entity may be a state actor for some purposes but not for others. *See Gorenc v. Salt River Project Agric. Improvement and Power Dist.*, 869 F.2d 503, 507 (9th Cir. 1989) (power district, although a limited political subdivision, was not a state actor for employment purposes); *Terry v. Adams*, 345 U.S. 461, 469-70 (1953) ("If a private actor is functioning as the government, that private actor becomes the state for purposes of state action.")

Here, the facts and the law are different, and this case presents an issue of first impression. Plaintiff does not allege that she was blocked, demonetized, or generally restricted from posting on Twitter. *See* Rutenburg Decl., ¶ 5. Plaintiff currently has a Twitter account and is able to post. *Id.* However, Plaintiff here is arguing that Defendant has specifically blocked Plaintiff from commenting in the interactive space surrounding the former president's tweets. *Id*. at ¶¶ 6-14; Am. Compl., ¶¶ 45-52. While it is well established that the social media websites are not designated public fora generally, that principle is not disputed in this case. Instead, this case concerns the interactive space surrounding the tweets of the president, an area that has already been held to be a constitutionally protected designated public forum by the only three circuit courts to analyze the issue. *See Davison*, 912 F.3d at 687; *Knight First Amendment Inst.*, 928 F.3d at 239; *Attwood*, 818 F. App'x at 867.

Other cases in this circuit and around the country have also held that the modern prevalence of social media websites does not transform them into designated public fora. *See Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1934 (2019); *Divino Grp. LLC v. Google LLC*, No. 19-cv-04749-VKD, 2021 U.S. Dist Lexis 3245, at *14-15 (N.D. Cal. Jan. 6, 2021); *Tulsi Now, Inc. v. Google*, LLC, No. 2:19-cv-06444-SVW-RAO, 2020 U.S. Dist. LEXIS 41673, 2020 WL 4353686, at *4 (C.D. Cal. Mar. 3, 2020);

1    *Zimmerman v. Facebook, Inc.*, No. 19-cv-04591-CV, 2020 U.S. Dist. Lexis 183323, 2020 WL 5877863,

2    at *5-6 (N.D. Cal. Oct. 2, 2020); *Wilson v. Twitter*, 2020 U.S. Dist. LEXIS 110800, 2020 WL 3410349,

3    at *8 (S.D.W. Va. May 1, 2020); *Davison v. Facebook, Inc.*, 370 F. Supp. 3d 621, 629 (E.D. Va.), aff'd,

4    774 F. App'x 162 (4th Cir. 2019); *Freedom Watch, Inc. v. Google, Inc.*, 368 F. Supp. 3d 30, 40 (D.D.C.

5    2019); *Ebeid v. Facebook, Inc.*, No. 18-CV-07030-PJH, 2019 U.S. Dist. LEXIS 78876, 2019 WL

6    2059662, at *16 (N.D. Cal. May 9, 2019); *Forbes v. Facebook, Inc.*, No. 16 CV 404 (AMD), 2016 U.S.

7    Dist. LEXIS 19857, 2016 WL 676396, at *4-5 (E.D.N.Y. Feb. 18, 2016); *Langdon v. Google, Inc.*, 474

8    F. Supp. 2d 622, 631 (D. Del. 2007). But those courts only considered the social media websites generally

9    and not the specific interactive space surrounding presidential tweets, so the issue of censorship in a

10   designated public fora was not at issue in these cases, and therefore, they also do not control this case for

11   the same reason. Here, there is "something more" present.  *See Lugar*, 457 U.S. at 939.

12        Here, Defendant's censoring of Plaintiff and the fact that they have such authority to censor in a

13   designated public forum is the result of government action, which satisfies the first step in the *Lugar*

14   analysis. *See Lugar*, 457 U.S at 937 (the "deprivation must be caused by the exercise of some right or

15   privilege created by the [government]"). As courts have recognized, the former president's tweets opened

16   up a designated public square in the interactive space surrounding the president's tweets. *See Knight First*

17   *Amendment Inst.*, 928 F.3d at 239. Defendant was implicitly delegated power to administer the designated

18   public forum and therefore was required to do so consistently with the First Amendment. Twitter misused

19   its authority to manage and administer the public's ability to comment when they enacted restrictions not

20   permitted within the First Amendment. *See Nat'l Collegiate Athletic Assn. v. Tarkanian*, 488 U.S. 179,

21   (1988) (citations omitted) (the state may be sufficiently involved in the private actor's conduct where the

13

private actor exercised power he was delegated from the state). Twitter was cloaked with and exercised the governmental authority that they would not have had but for the delegation of authority from the former President.

Defendant also voluntarily accepted the delegated authority and control, and further sought to enhance its official status. Twitter purported to be setting and enforcing rules in the 2020 election similar to an umpire. Just before the election, Defendant first began adding warning labels to the former president's tweets. Am. Compl., at ¶¶ 33. Then, Defendant started preventing Plaintiff and the public from commenting and interacting with certain tweets. *Id*. at ¶¶ 38-40. Then Defendant suspended Trump and required him to remove the three tweets. *Id*. at ¶¶ 42-43. It appeared to the public that Defendant wanted to be seen as the referee or umpire "calling balls and strikes" in the 2020 election.

Accordingly, Twitter was delegated with governmental authority, accepted the delegation, and further sought to maximize its power of the delegation. But Defendant crossed the line when it started interfering in the public's ability to comment. Defendant ignored the status of the constitutionally protected zone and instead arbitrarily suppressed classic government criticism that is entitled to protection. While the Court in *Prager v. YouTube* rejected the idea that merely declaring oneself a state actor legally makes one a state actor, Plaintiff here is not making that argument. Plaintiff instead argues it was the former president who delegated the authority of regulating the designated public forum to Defendant when he started tweeting for official purposes. *See Knight First Amendment Inst*., 928 F.3d at 239.

     b. Regulating Speech in a Designated Public Forum is Traditionally and Exclusively the Prerogative of the Government

The second step of the *Lugar* analysis is also satisfied. Protecting First Amendment freedoms in

14

a traditional or designated forum is traditionally and exclusively the prerogative of the state. *See Lee v. Katz*, 276 F.3d 550, 555 (9th Cir. 2002) ("Previous courts have found this function to be a traditional and exclusive public function."). Indeed, no other entity has the capability or judgment to protect these freedoms. While mere hosting speech on a private platform—is hardly "an activity that only governmental entities have traditionally performed." *Halleck*, 139 S. Ct. at 1930. Here, the challenged activity is different – the fair administration of speech in a designated public forum. Here, the state cannot simply delegate the duty to protect civil rights in a constitutionally protected zone to a private entity and then argue that the constitution does not apply. *See Katz*, 276 F.3d at 555; *Lombard v. Eunice Kennedy Shriver Center for Mental Retardation, Inc*., 556 F. Supp. 677, 680 (D. Mass. 1983).

## 2.   Plaintiff's Claim for Illegal Prior Restraint is Likely to Succeed or Raise Serious Questions

"A prior restraint is an administrative or judicial order that forbids certain communications issued before those communications occur." *Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc*., 742 F.3d 414, 430 (9th Cir. 2014). "Any prior restraint on expression comes to [the Court] with a heavy presumption against its constitutional validity," *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 558 (1976) (internal quotations omitted). As such, a party seeking to impose a prior restraint must establish that: (1) the activity it seeks to restrain poses either a clear and present danger or a serious and imminent threat to a protected competing interest, (*United States v. Sherman*, 581 F.2d 1358, 1361 (9th Cir. 1978)); (2) the restraint is narrowly drawn, (*Carroll v. President & Commr's of Princess Anne*, 393 U.S. 175, 183-84, (1968)); and (3) less restrictive alternatives are not available, (*Nebraska Press Ass'n*, 427 U.S. at 563).

Under an alternative version of the doctrine, a prior restraint is a law that "condition[s] the free

15

exercise of First Amendment rights on the unbridled discretion of government officials." *Desert Outdoor Adver. v. City of Moreno Valley*, 103 F.3d 814, 818 (9th Cir. 1996) (internal citations omitted). "Unbridled discretion challenges typically arise when discretion is delegated to an administrator, police officer, or other executive official," as opposed to a legislative body. *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1042 (9th Cir. 2009). Absent standards controlling the exercise of discretion, there is a danger that government officials may determine "who may speak and who may not based upon the content of the speech or viewpoint of the speaker." *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 763-64, (1987).

City of Lakewood and its progeny make clear that "'a law cannot condition the free exercise of First Amendment rights on the unbridled discretion of government officials.'" *Outdoor Systems, Inc. v. City of Mesa*, 997 F.2d 604, 613 (9th Cir. 1993). "The mere existence of the licensor's unfettered discretion, coupled with the power of prior restraint, [intimidates parties into censoring their own speech], even if such discretion and power are never actually abused." *United States v. Linick*, 195 F.3d 538, 541 (9th Cir. 1999) (internal quotations omitted) (alterations in original). *See Young v. City of Simi Valley*, 216 F.3d 807, 819 (9th Cir. 2000) ("completely discretionary, there is a danger that protected speech will be suppressed impermissibly because of the government official's … distaste for the content of the speech").

The degree of discretion and the arbitrariness exercised by Defendant in its censoring of Plaintiff on certain topics is untenable and reeks of a public official with "unbridled discretion." *Epona, LLC v. Cty. of Ventura*, 876 F.3d 1214, 1226 (9th Cir. 2017). Plaintiff's ability to comment was restricted and then cut off arbitrarily, and now she is entirely prevented from viewing and commenting at all. Defendant

16

was required to act with procedural safeguards and not violate Plaintiff's rights just like and just as much as any government agency.

### 3.     Plaintiff's Claim for First Amendment Retaliation is Likely to Succeed or Raise Questions

Plaintiff's claim for First Amendment retaliation is likely to succeed or raise questions. The blocking of Plaintiff's ability to comment on Trump's tweets was intended to chill Plaintiff's speech and those of people who wanted to discuss and comment on the President's tweets. "The First Amendment forbids government officials from retaliating against individuals for speaking out." *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010). To establish such a claim, "a plaintiff must show that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct. *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016). Here, Plaintiff satisfies all three elements.

Plaintiff is likely to succeed on this claim or raise serious questions because 1) Plaintiff's speech regarding public events and specifically on the topic of election fraud is classic government criticism and therefore entitled to protection (Am. Compl., ¶ 44-52); 2) Defendant actually did disable and prevent Plaintiff from commenting on the presidential tweets on the topic she wished to speak about (*See* Rutenberg Decl., ¶¶ 6-14); and 3) Defendant was motivated to suppress speech on the topic of alleged election fraud because Defendant did not want the discussion to undermine the victory of Defendant's candidate. (Am. Compl., ¶¶ 15, 58); s*ee Pen Am. Ctr., Inc. v. Trump*, 448 F. Supp. 3d 309, 327 (S.D.N.Y. 2020) (White House could not revoke press credentials in response to tense questioning by Jim Acosta).

17

**B.      Plaintiff Will Face Further Irreparable Harm if the Injunction Is Not Issued**

The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion) (citing *New York Times Co. v. United States*, 403 U.S. 713, 730-32 (1971)). Plaintiff is currently facing irreparable ongoing harm and the risk that the censorship in public designated of selected tweets and politicians by Twitter will continue or get worse. *See City of Lakewood*, 486 U.S. at 758. The First Amendment does not go on holiday during a pandemic. *See Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 213 (2020) (concur. op., granting injunctive relief). Irreparable injury need not be established with certainty or even high probability; the distant possibility of such harm establishes a "serious threat of irreparable injury" sufficient to support preliminary injunctive relief. *See, e.g., Foti v. City of Menlo Park*, 146 F.3d 629, 643 (9th Cir. 1998); *Burkow v. City of Los Angeles*, 119 F. Supp. 2d 1076, 1082 (C.D. Cal. 2000). Plaintiff cited a specific example that she would have liked to comment more on the topic of election fraud but was blocked by Defendant. *See Jones*, 440 F. Supp. 3d at 1138 (finding irreparable injury). Therefore, this factor weighs strongly in favor of issuing the temporary restraining order. *See Hernandez v. Sessions*, 872 F.3d 976, 1000 (9th Cir. 2017) (a deprivation of constitutional rights demonstrates irreparable harm).

**C.      The Balance of Hardships Sharply Favors Issuing the Injunction**

"If the balance of harm tips decidedly toward the plaintiff, then the plaintiff need not show as robust a likelihood of success on the merits as when the balance tips less decidedly." *Id*. (citations omitted). The relief contemplated requires no more of the Defendant than what the law already requires. Defendant does not face any burden in restoring the ability for users to comment and interact with the tweets. On the

contrary, this is Defendant's primary business from which they obtain substantial profits. Defendant will likely incur additional profit from having additional user engagement on their platform from people who wish to comment on the currently unavailable tweets.

### D.    The Public Interest Strongly Favors the Injunction

This is the special case where the Court should strongly consider the public interest.  *See Sammartano v. First Judicial District Court in, for County of Carson City*, 303 F.3d 959, 974 (9th Cir. 2002) (this element "deserves separate attention in cases where the public interest may be affected.) Here, the public interest weighs in favor of the issuance of a temporary restraining order to maintain the status quo and to protect First Amendment rights. The public has a right to view, comment, and reply to presidential tweets in the historical record, rather than to have them suppressed from site.  There is no other competing public interest. *See id*. ("We believe that the public interest is better served by following binding Supreme Court precedent and protecting the core First Amendment right of political expression."); *Iowa Right to Life Committee, Inc. v. Williams*, 187 F.3d 963, 970 (8th Cir. 1999) (district court did not abuse its discretion in granting a preliminary injunction because "the potential harm to independent expression and certainty in public discussion of issues is great and the public interest favors protecting core First Amendment freedoms" (citations omitted)); *Monterey County Democratic Central Committee v. United States Postal Service*, 812 F.2d 1194, 1196 (9th Cir. 1987) ("The values embodied in the First Amendment … constitute the hallmark of free societies.").

As demonstrated, there are volumes full of First Amendment activity that are currently blocked from public view and comment – some new conversations are prevented from ever occurring. Twitter's removal of thousands of presidential tweets, their consequential public comments, retweets, quotes, and

likes, amounts not only to a burning of books, but a burning of pens, paper, and entire libraries. A bigger memory hole will be needed in Winston Smith's office if he is to handle the volume. There is no public interest to be gained by suppressing the speech of Plaintiff by not permitting interacting with the presidential tweets. Therefore, this factor strongly weighs in favor of issuing the injunction.

### E.  Only Minimal or No Bond Should be Required

Federal Rule of Civil Procedure 65(c) requires that a movant for a preliminary injunction give "security . . . in such sum as the court deems proper" before any preliminary injunction issues. Fed. R. Civ. P. 65(c). However, although Plaintiff filed this action in her individual capacity, Plaintiff is seeking injunctive relief only, no damages, and she is therefore acting for the benefit of not only herself and her own wish to live under the strong protections of the First Amendment, but also for the benefit of other members of the general public who would benefit from having their First Amendment Freedoms restored. Defendant will not suffer any harm and instead will likely benefit financially. Therefore, Plaintiff requests minimal or no bond be required.

### F.  Relief Requested

Plaintiff requests that Defendant restore Plaintiff's ability to view and interact with the tweets she is entitled to within the First Amendment. Therefore, Plaintiff seeks a temporary restraining order requiring Defendant to unblock Plaintiff's ability to view, comment, quote, retweet, and like the former President's tweets for the period which he was a candidate and in public office, and prohibiting Defendant from blocking Plaintiff from such access in the future.

## V.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the motion for a

20

temporary restraining order and such other relief as the Court deems proper.

Plaintiff MARIA RUTENBURG

By: /s/ Mark L. Javitch_____
Mark L. Javitch (California SBN 323729)
JAVITCH LAW OFFICE
480 S. Ellsworth Avenue
San Mateo CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705
Email: mark@javitchlawoffice.com

*Attorney for Plaintiff*

21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF SAN MATEO

At the time of service, I was over 18 years of age.  I am employed in County of San Mateo, State of California.  My business address is Javitch Law Office, 480 S. Ellsworth Ave, San Mateo, California, 94401.

I sent a copy of this motion via USPS express mail overnight to:

Twitter, Inc.
Legal Department
1355 Market St.
San Francisco, CA 94103-1337

With tracking number 9270 1901 7554 7700 0001 5739 65.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: January 27, 2021                     /s/ Mark L. Javitch

                                            Mark L. Javitch
                                            Javitch Law Office
                                            480 S. Ellsworth Ave
                                            San Mateo CA 94401

22