1

Mark L. Javitch (CA SBN 323729)
JAVITCH LAW OFFICE

2

480 S. Ellsworth Ave
San Mateo, CA 94401

3

Telephone: (650) 781-8000

4

Facsimile: (650) 648-0705
mark@javitchlawoffice.com

5

*Attorney for Plaintiff*

6

7

8

9

UNITED STATES DISTRICT COURT

10

NORTHERN DISTRICT OF CALIFORNIA

11

OAKLAND DIVISION

12

MARIA RUTENBURG, an individual,

Case No.:  4:21-cv-00548-YGR

13

Plaintiff,

**RESPONSE TO ORDER TO SHOW CAUSE**

14

v.

15

TWITTER, INC., a Delaware Corporation,

16

Defendant.

17

18

19

20

21

22

23

i

24

4:21-cv-00548-YGR

25

26

27

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**RESPONSE TO ORDER TO SHOW CAUSE**

I.   **INTRODUCTION**

Because Twitter is a private company, this case hinges on whether Twitter's conduct constitutes state action. It does. Plaintiff's argument does not contradict binding caselaw that by merely hosting speech on their platforms, social media websites are not considered designated public forums. *Prager Univ. v. Google, LLC*, 951 F.3d 991, 998-99 (9th Cir. 2020).[1] But *Prager* does not stand for the proposition that Twitter could *never* act with state authority – if private entities could never act with state authority, then there would be no need for the Supreme Court's state action jurisprudence.

Despite social media websites not being public fora generally, the only courts that confronted the issue have held that when a person with governmental authority opens an official social media page for public comment, the space that permits public commenting on the official's posts must be analyzed separately from the social media websites generally to determine whether a public forum exists. *See Knight First Amendment Inst. v. Trump*, 928 F.3d 226, 239 (2d Cir. 2019).

Examining this space separately, these courts held that the space for public comment on official posts does, indeed, constitute a designated public forum. *Id*. Accordingly, a Plaintiff who is arbitrarily censored from commenting on certain topics on the official's posts falls victim to illegal viewpoint

---

[1] *See also Manhattan Community Access Corp. v. Halleck*, 139 S. Ct. 1921, 1926 (2019) (operating public access channels on a cable system does not transform it into a designated public forum).

1

4:21-cv-00548-YGR

1  discrimination and a violation of due process and is therefore entitled to redress under 42 U.S. Code §

2  1983.[2] *Id.*

3      Accordingly, the restrictions against Plaintiff's commenting here must be reversed under the same

4  reasoning as in *Knight*. *See Knight*, 928 F.3d at 238 (affirming summary judgment against defendant

5  because the First Amendment prohibits "blocking [plaintiffs] and preventing them from viewing,

6  retweeting, replying to, and liking [the Former President's] tweets"). Plaintiff's right to be free from

7  arbitrary censorship in a constitutionally protected public forum must be secured regardless of whether

8  the censor is a private or public entity. It does not settle the matter, therefore, that Twitter is a private

9  company.

10     Twitter may be held liable if its conduct satisfies one of the tests for state action. Most relevant

11 here is the government function test. This test focuses on the character of the power asserted, not the

12 nature of the party exercising the power.[3] Thus, the arbitrary censorship of Plaintiff's speech while trying

13 to comment on former President Trump's tweets on the topic of election fraud satisfies the government

14 function test because 1) Defendant exercised authority it was only endowed with because of

15 governmental action and 2) regulating speech in a public forum is a power that has been traditionally and

16 exclusively exercised by the government. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982);

17 *Lee v. Katz*, 276 F.3d 550, 554-55 (9th Cir. 2002).[4] Therefore, Twitter's conduct is under color of law.

---

[2] Viewpoint discrimination is prohibited in all forums. *Internat'l Soc'y for Krishna Consciousness v. Lee*, 505 U.S. 672, 679 (1992).

[3] "The state actor inquiry is focused on whether the source of the private actor's power comes from the [s]tate." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

[4] Cert. denied, 536 U.S. 905 (2002).

## II.    THIS COURT HAS SUBJECT MATTER JURISDICTION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). The Supreme Court has set out the government or public function test for determining whether a private individual's actions amount to state action. *Katz*, 276 F.3d at 554-55. Twitter's conduct here is under color of law because its actions satisfy the government function test.

### A.    The Interactive Spaces in the President's Tweets are Designated Public Fora

The only courts that have analyzed the issue, including four circuit courts and numerous district courts in this circuit and around the country, have held that the space where the public can comment on a public official's official social media posts constitutes a public forum entitled to First Amendment Protection. *See Davison v. Randall*, 912 F.3d 666, 687 (4th Cir. 2019); *Knight*, 928 F.3d at 239; *Attwood v. Clemons*, 818 F. App'x 863, 867 (11th Cir. 2020) (unpublished op.); *Robinson v. Hunt Cty.*, 921 F.3d 440, 447 (5th Cir. 2019); *Lewis v. Jones*, 440 F. Supp. 3d 1123, 1135 (E.D. Cal. 2020); *West v. Shea*, SACV 20-01293-CJC (DFMx), 2020 U.S. Dist. LEXIS 248837, __ F. Supp. 3d __, 2020 WL 8269540, at *6-7 (C.D. Cal. Nov. 12, 2020); *Garnier v. O'Connor-Ratcliff*, No. 3:17-cv-02215-BEN-JLB, 2021 U.S. Dist. LEXIS 7613, 2021 WL 129823, at *27 (S.D. Cal. Jan. 14, 2021); *Garnier v. Poway Unified Sch. Dist.*, No. 17-cv-2215-W (JLB), 2019 U.S. Dist. LEXIS 167247, 2019 WL 4736208, at *29 (S.D. Cal. Sept. 26, 2019); *Windom v. Harshbarger*, 396 F. Supp. 3d 675, 685 (N.D. W. Va. 2019); *One Wisconsin Now v. Kremer*, 354 F. Supp. 3d 940, 955 (W.D. Wis. 2019); *Anderson v. Hansen*, No. 20-C-1305, 2021 U.S. Dist. LEXIS 27722, at *25-28 (E.D. Wis. Feb. 12, 2021); *Scarborough v. Frederick County Sch. Bd.*, No. 5:20-cv-00069, 2021 U.S. Dist. LEXIS 22977, 2021 WL 419180, at *17-19 (W.D.

3

Va. Feb. 8, 2021); *Clark v. Kolkhorst*, No. A-19-CV-00198-LY-SH, 2020 U.S. Dist. LEXIS 193964, 2020 WL 6151570, at *19-20 (W.D. Tex. Oct. 20, 2020); *Felts v. Reed*, Case No. 20-cv-821-JAR, 2020 U.S. Dist. LEXIS 224489, 2020 WL 7041809, at *6 (E.D. Mo. Dec. 1, 2020); *Popp v. Monroe County*, No. 1:19-cv-03664-JPH-DML, 2020 U.S. Dist. LEXIS 57042, at *2 (D. Ind. Mar. 31, 2020); *Am. Atheists v. Rapert*, No. 4:19-cv-00017-KGB, 2019 U.S. Dist. LEXIS 230493, at *79 (E.D. AR Sep. 30, 2019); *cf. Campbell v. Reisch*, No. 19-2994, 2021 U.S. App. LEXIS 2202, 2021 WL 261992, at *13 (8th Cir. Jan. 27, 2021) (the social media page of a candidate running for office was not official and thus did not create a public forum).

The Second Circuit specifically evaluated former President Trump's Twitter account. The panel held that the following factors indicated the interactive component of the former President's social media posts could be analyzed separately from the rest of the profile for the purposes of forum analysis. *Knight*, 928 F.3d at 239. "A social media account is intentionally opened for public discussion when the President, upon assuming office, repeatedly used the account as an official vehicle for governance and made its interactive features accessible to the public without limitation." *Id*. at 237. In "considering the interactive features, the speech in question is that of multiple individuals" and not just the government. *Id*. (1) the Twitter account was presented as being registered to Donald J. Trump, '45th President of the United States of America, Washington, D.C.'"; (2) the President's tweets were considered 'official records that must be preserved under the Presidential Records Act'; and (3) the President's Twitter account was used in the course of the appointment and removal of officers and for conducting foreign policy. *Id*. at 236. "The President presents [his Twitter] account as being a presidential account as opposed to a personal account and, more importantly, uses the account to take actions that can be taken only by the President

4

4:21-cv-00548-YGR

as President." *Id*. The contents of the retweets, replies, likes, and mentions are controlled by the user who generates them," the interactive space is not government speech and is susceptible to forum analysis. *Id*. at 239. The same factors are present here and thus the analysis conducted by the *Knight* court of the former President's Twitter account applies to Plaintiff's claims here. *See* Am. Compl., ¶¶ 18-19; *Jones*, 440 F. Supp. 3d at 1135. Therefore, the public space to comment on the former President's tweets is a designated public forum. *Id*. Here, Plaintiff's rights must be vindicated after being subject to arbitrary viewpoint discrimination in a public forum.

### B.    Twitter's Conduct Satisfies the Public Function Test

Although there is no dispute that Twitter is a corporation, the Supreme Court has identified seven possible situations for private entities to run afoul of the First Amendment. *See Brentwood Acad. v. Tenn. Secondary Sch. Athl. Ass'n*, 531 U.S. 288, 296 (2001). "To draw the line between governmental and private, this Court applies what is known as the state-action doctrine." *Halleck*, 139 S. Ct. at 1926. "What is fairly attributable [to the state] is a matter of normative judgment, and the criteria lack rigid simplicity." *Brentwood*, 531 U.S. at 295. There is no "specific formula" for "defining state action[.]" *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 836 (9th Cir. 1999). "[T]o distinguish between private action and state action can sometimes be difficult." *Howerton v. Gabica*, 708 F.2d 380, 382 (9th Cir. 1983)). "State action is an elusive concept and cannot be discerned by a precise formula." *Melara v. Kennedy*, 541 F.2d 802, 804 (9th Cir. 1976).

The state actor inquiry is focused on whether the source of the private actor's power comes from the State. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). "[W]hen private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations." *Katz*, 276 F.3d at 554-55

5

4:21-cv-00548-YGR

(citations omitted). For actions by a private entity to be considered to be taken under color of law, the challenged conduct must satisfy a two-step inquiry. *Lugar*, 457 U.S. at 937. The first question is whether the challenged conduct causing "the deprivation is the result of a governmental policy." *Id.* The second *Lugar* question is whether the function at issue must be "both traditionally and exclusively governmental." *West v. Atkins*, 487 U.S. 42, 46 n. 6 (1988).

### 1.    The Deprivation Is Only Possible Because of Governmental Action

Twitter's arbitrary censoring of people attempting to comment on the former President's tweets on the topic of alleged election fraud satisfies the first step of the *Lugar* analysis. *See* Am. Compl., ¶¶ 39-40, 43-46, 48-52; *Shea*, 2020 U.S. Dist. LEXIS 248837, 2020 WL 8269540, at *7 (viewpoint discrimination is restricted in all public and non-public forums). In determining whether a private actor operates under color of state law, the Court must first identify "the specific conduct of which the plaintiff complains." *See Katz*, 276 F.3d at 555 n.5 ("It is important to identify the function at issue because "an entity may be a State actor for some purposes but not for others.")

Here, there is no question that Defendant only had the ability to arbitrarily censor Plaintiff in a public forum because of governmental action (the former President posting on Twitter for official purposes that created the public forum in the first place). As courts have recognized, the former President opened a designated public forum in the interactive space where the public can comment on the former President's tweets. *See Knight*, 928 F.3d at 239. The former President implicitly delegated power to Defendant to administer the designated public forum and therefore Defendant was required to do so consistently within the confines of the First Amendment. However, Twitter misused its authority to manage and administer the public's ability to comment when they enacted restrictions not permitted within the scope of the First and Fourteenth Amendments. Conversely, "[i]f the private actor is merely

6

4:21-cv-00548-YGR

claiming power derived from the State with no actual delegation or abdication by the State, the private actor's mere attempts to perform traditional public functions do not suffice to make the private actor a state actor." *Perez-Morciglio v. Las Vegas Metro. Police Dep't*, 820 F. Supp. 2d 1100, 1107 (D. Nev. 2011) ("There is no evidence the [state] delegated, either expressly or by acquiescence, any authority[.]") Therefore, this satisfies the first step in the *Lugar* analysis. *See Lugar*, 457 U.S at 937 (the "deprivation must be caused by the exercise of some right or privilege created by the [government]").

This is not mere private misuse – Twitter was cloaked with and exercised the governmental authority that they would not have had but for the delegation of authority from the former President. *Lugar*, 457 U.S. at 941 ("While private misuse … does not describe conduct that can be attributed to the State, the procedural scheme created by the statute obviously is the product of state action."); *id.* at 942 ("The fact that the challenged scheme allowed a private party to invoke the state power … created a sufficient nexus between state and individual to demonstrate state action and permit a § 1983 suit against the individual who [invoked the state power.]")

Defendant exercised its "official" status. Twitter purported to be setting and enforcing rules in the 2020 election. Just before the election, Defendant first began adding warning labels to the former president's tweets. Am. Compl., at ¶¶ 33. Then, Defendant prohibited Plaintiff and the public from commenting and interacting with certain tweets on the topic of election fraud. *Id*. at ¶¶ 38-40. Defendant also suspended Trump and required him to remove three tweets alleging election fraud. *Id*. at ¶¶ 42-43. Days later, Defendant removed Trump's tweets entirely. Over a period of weeks, Plaintiff's ability to view and comment on tweets certain topics was curtailed (sometimes she could view but not comment and other times she could not even view) until her entire ability to comment on any tweets was

1   haphazardly cut off. *Id*. at ¶¶ 47-52.

2   If the civil rights of citizens are violated by a private party who is able to commit an act only by

3   virtue of its unique association with the government's authority, but the government itself would be

4   prohibited from doing the same act, then the rights in the Constitution would have no meaning unless

5   they were enforced against the private party. *See Ex parte Virginia*, 100 U.S. 339, 347 (1880) ("[A]s he

6   acts in the name and for the State, and is clothed with the State's power, his act is that of the State. This

7   must be so, or the constitutional prohibition has no meaning.") Twitter was delegated governmental

8   authority and haphazardly exercised its delegated power in censoring Plaintiff. Defendant crossed the

9   line when it arbitrarily interfered with Plaintiff's ability to comment on the presidential tweets and then

10   censored the comments entirely. Defendant ignored the status of the constitutionally protected zone and

11   instead arbitrarily suppressed classic government criticism, the type of speech most entitled to protection.

12   While the Court in *Prager v. Google LLC* rejected the idea that merely *declaring* oneself a public

13   forum legally makes one a state actor, (951 F.3d at 999) Plaintiff here is not making that argument.

14   Instead, Plaintiff argues it was the former President who delegated the authority of regulating the

15   designated public forum to Defendant when he started tweeting for official purposes. *See Knight*, 928

16   F.3d at 239; *Lugar*, 457 U.S. at 937 ("deprivation must be caused by the exercise of some right or

17   privilege created by the State[.]") Defendant would never have had the power to take the actions against

18   Plaintiff that it did if former President Trump had not previously created the public forum.

19   **2.     Regulating Speech in a Designated Public Forum is Traditionally and Exclusively the Prerogative of the Government**

20   The second step of the *Lugar* analysis is also satisfied. Protecting First Amendment freedoms in a

21   traditional or designated forum is traditionally and exclusively the prerogative of the state. *See Katz*, 276

8

4:21-cv-00548-YGR

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

F.3d at 555 ("Previous courts have found this function to be a traditional and exclusive public function."). Mere hosting speech on a private platform—is hardly "an activity that only governmental entities have traditionally performed." *Halleck*, 139 S. Ct. at 1930. But here, the challenged activity is different – the fair administration of speech in a designated public forum. Here, the state cannot simply delegate the duty to protect civil rights to a private entity and then argue that the Constitution does not apply. *See Katz*, 276 F.3d at 555; *Lombard v. Eunice Kennedy Shriver Center for Mental Retardation, Inc.*, 556 F. Supp. 677, 680 (D. Mass. 1983).

### 3.     *Prager v. Google* Does Not Control This Case

*Prager Univ. v. Google, LLC* concerned social media websites generally and not specifically the ability to comment on official posts. In *Prager*, the Ninth Circuit held that merely hosting speech on their private websites does not transform social media companies into state actors. *Prager*, 951 F.3d at 998-99.

Prager University sued Google for "demonetizing" its educational Youtube videos and marking them as "restricted," which placed them in the same category as videos of drugs, sexual situations, and violence – based on the allegation that Google harbored a partisan bias against political conservatives. *Id.* at 996. The court rejected Prager's argument that merely opening their servers for public upload of videos made Youtube a designated public forum. *Id.* at 998-999 (hosting speech on private property is not analogous to assuming the traditional functions of government in operating a company town) (c*f. Marsh v. Alabama*, 326 U.S. 501, 509 (1946)).

However, these cases do not demonstrate that Twitter could *never* be held to be a state actor, or that it is not a state actor in this case. On the contrary, "[i]t is important to identify the function at issue because an entity may be a State actor for some purposes but not for others." *Katz*, 276 F.3d at 555 n.5. Here, the facts and the law are inapposite *Prager*, and this case presents an issue of first impression. Unlike

9

*Prager*, Plaintiff here does not allege that she was blocked, demonetized, or generally restricted from posting on Twitter. Am. Compl., ¶¶ 16-19. Plaintiff currently has a Twitter account and does not complain about her ability to post generally. *Id.*

Plaintiff here is arguing that Defendant blocked Plaintiff from commenting specifically in the interactive space surrounding the former President's tweets. Am. Compl., ¶¶ 45-52. While it is well established that the social media websites are not designated public fora generally, that principle is not disputed in this case. Instead, this case concerns the interactive space surrounding the social media posts of the former President and other public officials, areas that have already been held to be a constitutionally protected designated public forum by the only four circuit courts to consider the issue. *See Knight*, 928 F.3d at 239 (former President); *Davison*, 912 F.3d at 688 (Chair of County Board of Supervisors); *Attwood*, 818 F. App'x at 867 (State House Representative); *Robinson*, 921 F.3d at 447 (County Sheriff).

Courts have consistently followed *Prager* in holding that merely by hosting speech on social media websites or public access television channels does not transform these spaces into designated public fora. *See Halleck*, 139 S. Ct. at 1934 (as applied to public access cable television channels); *Federal Agency of News LLC v. Facebook*, 432 F. Supp. 3d 1107, 1122-23 (N.D. Cal. 2020); *Divino Grp. LLC v. Google LLC*, No. 19-cv-04749-VKD, 2021 U.S. Dist. Lexis 3245, at *14-15 (N.D. Cal. Jan. 6, 2021); *Belknap v. Alphabet, Inc.*, No. 3:20-CV-1989-SI, 2020 U.S. Dist. LEXIS 224564, 2020 WL 7049088, at *4-6 (D. Or. Dec. 1, 2020); *Zimmerman v. Facebook, Inc.*, No. 19-cv-04591-CV, 2020 U.S. Dist. Lexis 183323, 2020 WL 5877863, at *5-6 (N.D. Cal. Oct. 2, 2020); *Tulsi Now, Inc. v. Google*, LLC, No. 2:19-cv-06444-SVW-RAO, 2020 U.S. Dist. LEXIS 41673, 2020 WL 4353686, at *4 (C.D. Cal. Mar. 3, 2020); *Ebeid v. Facebook, Inc.*, No. 18-CV-07030-PJH, 2019 U.S. Dist. LEXIS 78876, 2019 WL 2059662, at *16 (N.D.

10

Cal. May 9, 2019); *Davison v. Facebook, Inc.*, 370 F. Supp. 3d 621, 629 (E.D. Va.), aff'd, 774 F. App'x 162 (4th Cir. 2019); *Freedom Watch, Inc. v. Google, Inc.*, 368 F. Supp. 3d 30, 40 (D.D.C. 2019); *Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 631 (D. Del. 2007); *Wilson v. Twitter*, 2020 U.S. Dist. LEXIS 110800, 2020 WL 3410349, at *8 (S.D.W. Va. May 1, 2020); *Forbes v. Facebook, Inc.*, No. 16 CV 404 (AMD), 2016 U.S. Dist. LEXIS 19857, 2016 WL 676396, at *4-5 (E.D.N.Y. Feb. 18, 2016). But similarly, those courts only resolved claims against the social media websites generally and not the interactive space surrounding government officials' official social media postings. Therefore, the issue of viewpoint discrimination in public fora did not arise in those cases, and accordingly, they also do not control the present case. Here, the authority Defendant used was derived from the former President's official use of Twitter, which indicates there is "something more" present. *See Lugar*, 457 U.S. at 939.

## III.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court hold that subject matter jurisdiction exists over this case because Plaintiff has plausibly alleged that Defendant satisfied the government function test.

DATED: February 24, 2021            Plaintiff MARIA RUTENBURG

By: /s/ Mark L. Javitch
Mark L. Javitch (California SBN 323729)
JAVITCH LAW OFFICE
480 S. Ellsworth Avenue
San Mateo CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705
Email: mark@javitchlawoffice.com

*Attorney for Plaintiff*

11

4:21-cv-00548-YGR