MARK R. CONRAD (CA Bar No. 255667)
GRACE YANG (CA Bar No. 286635)
**CONRAD | METLITZKY | KANE LLP**
Four Embarcadero Center, Suite 1400
San Francisco, CA 94111
Tel:   (415) 343-7100
Fax:   (415) 343-7101
Email: mconrad@conmetkane.com
Email: gyang@conmetkane.com

Attorneys for TWITTER, INC., a Delaware Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA RUTENBURG, an individual, | CASE NO. 4:21-CV-00548-YGR |
| Plaintiff, | |
| v. | **DEFENDANT TWITTER, INC.'S RESPONSE RE ORDER TO SHOW CAUSE** |
| TWITTER, INC., a Delaware Corporation, | |
| Defendant. | |

**Table of Contents**

| | | |
|---|---|---|
| I. | INTRODUCTION | - 1 - |
| II. | FACTUAL AND PROCEDURAL BACKGROUND | - 1 - |
| | A. Plaintiff's Factual Allegations. | - 1 - |
| | B. Procedural History. | - 2 - |
| |    1. Plaintiff's Amended Complaint. | - 2 - |
| |    2. Plaintiff's Motion for a Temporary Restraining Order | - 2 - |
| |    3. The Court's Order to Show Cause. | - 3 - |
| III. | STANDARD OF REVIEW | - 3 - |
| IV. | LEGAL ARGUMENT | - 4 - |
| | A. The Amended Complaint Cannot Allege an Exercise of *State* Authority. | - 5 - |
| | B. The Amended Complaint Cannot Allege that Twitter Is a State Actor. | - 6 - |
| V. | CONCLUSION | - 10 - |

# Table of Authorities

**Cases**

*Am. Atheists v. Rapert*,
 --- F.Supp.3d ---, No. 4:19-cv-00017KGB, 2020 WL 7367609 (E.D. Ark. Dec. 15, 2020)...................6

*Anderson v. Hansen*,
 No. 20-C-1305, 2020 WL 5748743 (E.D. Wis. Feb. 12, 2021) ............................................................6

*Attwood v. Clemons*,
 818 F. App'x 863 (11th Cir. 2020)........................................................................................................6

*Britain v. Twitter, Inc.*,
 No. 19-CV-00114-YGR, 2019 WL 2423375 (N.D. Cal. June 10, 2019) ..............................................4

*Campbell v. Reisch*,
 No. 19-2994, 2021 WL 261992 (8th Cir. Jan. 27, 2021) ......................................................................6

*Carney v. Adams*,
 141 S. Ct. 493 (2020) ............................................................................................................................4

*Clark V. Kolkhorst*,
 No. A-19-CV-00198-LY-SH, 2020 WL 6151570 (W.D. Tex. Oct. 20, 2020)......................................6

*Collins v. Womancare*,
 878 F.2d 1145 (9th Cir. 1989)...........................................................................................................4, 6

*Cyber Promotions, Inc. v. American Online, Inc.*,
 948 F. Supp. 436 (E.D. Pa. 1996) .........................................................................................................8

*Davison v. Randall*,
 912 F.3d 666 (4th Cir. 2019).................................................................................................................6

*Ebeid v. Facebook, Inc.*,
 No. 18-CV-07030-PJH, 2019 WL 2059662 (N.D. Cal. May 9, 2019) .............................................7, 9

*Faison v. Jones*,
 440 F. Supp. 3d 1123 (E.D. Cal. 2020).................................................................................................6

*Felts v. Reed*,
 No. 4:20-cv-821-JAR, 2020, 2020 WL 7041809 (E.D. Mo. Dec. 1, 2020)..........................................6

*Florer v. Congregation Pidyon Shevuyim, N.A.*,
 639 F.3d 916 (9th Cir. 2011).................................................................................................................5

*Garnier v. O'Connor-Ratcliff,*
 No. 3:17-cv-02215-BEN-JLB, 2021 WL 129823 (S.D. Cal. Jan. 14, 2021) ........................................6

*Garnier v. Poway Unified School District*,
   No. 17-cv-2215-W (JLB), 2019 WL 4736208 (S.D. Cal. Sept. 26, 2019) ............................................. 6

*Green v. Sloane*,
   No. CV 17-3497, 2019 WL 6654150 (E.D. Pa. Mar. 25, 2019),
   *aff'd*, 783 F. App'x 108 (3d Cir. 2019) ............................................................................................. 3

*Howard v. AOL*,
   208 F.3d 741 (9th Cir. 2000) ............................................................................................................. 7

*Kinderstart.com LLC v. Google, Inc.*,
   No. C06-2057 JFRS, 2007 WL 831806 (N.D. Cal. Mar. 16, 2007) .................................................... 8

*Knight First Amendment Institute at Columbia University v. Trump*,
   928 F.3d 226 (2d Cir. 2019) ............................................................................................................... 8

*Lampros v. Baker*,
   650 F. App'x 354 (9th Cir. 2016) ....................................................................................................... 3

*Langdon v. Google, Inc.*,
   474 F. Supp. 2d 622 (D. Del. 2007) ................................................................................................... 8

*Lee v. Katz*,
   276 F.3d 550 (9th Cir. 2002) .............................................................................................................. 8

*Lloyd Corp. v. Tanner*,
   407 U.S. 551 (1972) ............................................................................................................................ 7

*Lugar v. Edmondson Oil Co.,*,
   457 U.S. 922 (1982) ................................................................................................................. 1, 4, 5, 6

*Manhattan Community Access Corporation v. Halleck*,
   139 S. Ct. 1921 (2019) ............................................................................................ 1, 3, 6, 7, 8, 9

*Nyabwa v. Facebook,*
   No. 2:17-CV-24, 2018 WL 585467 (S.D. Tex. Jan. 26, 2018) ............................................................ 7

*One Wisconsin Now v. Kremer*,
   354 F. Supp. 3d 940 (W.D. Wis. 2019) .............................................................................................. 6

*Prager University v. Google LLC,*
   951 F.3d 991 (9th Cir. 2020) ......................................................................................................... 7, 9

*Prager Univ. v. Google LLC*,
   No. 17-CV-06064-LHK, 2018 WL 1471939 (N.D. Cal. Mar. 26, 2018),
   *aff'd*, 51 F.3d 991 (9th Cir. 2020) ..................................................................................................... 7

*Robinson v. Hunt Cnty*,
   921 F.3d 440 (5th Cir. 2019) ............................................................................................... 6

*Scarborough v. Frederick Cnty. School Board*,
   No. 5:20-CV-00069, 2021 WL 419180 (W.D. Va. Feb. 8, 2021) ....................................... 6

*Shulman v. Facebook*,
   No. CV 17-764 (JMV), 2017 WL 5129885 (D.N.J. Nov. 6, 2017) ................................. 7, 8

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ............................................................................................................. 3

*West v. Shea*,
   No. SACV2001293CJCDFMX, 2020 WL 8269540 (C.D. Cal. Nov. 12, 2020) ................ 6

*Windom v. Harshbarger*,
   396 F. Supp. 3d 675 (N.D. W. Va. 2019) ........................................................................... 6

**Federal Statutes**

42 U.S.C. § 1983 ........................................................................................................................... 1

**Federal Rules**

Fed. R. Civ. P.

   12(b)(1) .............................................................................................................................. 4

   12(b)(6) .............................................................................................................................. 4

## I. INTRODUCTION

This case involves a straightforward application of basic constitutional principles. The First and Fourteenth Amendments apply only to the government. Defendant Twitter, Inc. ("Twitter") is not the government. Thus, Plaintiff Maria Rutenburg ("Plaintiff") cannot sue Twitter for claimed violations of the First and Fourteenth Amendments under 42 U.S.C. § 1983. *See Manhattan Community Access Corporation v. Halleck*, 139 S. Ct. 1921, 1928 (2019).

Plaintiff's Amended Complaint is so frivolous that—as the Court suggested in its Order to Show Cause ("OSC"), Dkt. No. 16—it should be dismissed for lack of subject-matter jurisdiction. Plaintiff asserts in response to the OSC that "Twitter's conduct constitutes state action." Dkt. No. 17 at 1. Not so. First, a bedrock requirement of any Section 1983 claim is that the defendant exercise **state authority** to violate a plaintiff's federal constitutional rights. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 940 (1982). Nowhere does Plaintiff allege that Twitter has exercised **state authority** (as opposed to supposed "implicitly delegated" *federal* governmental power, Dkt. No. 17 at 6). Second, setting aside this glaring defect, Plaintiff's Amended Complaint does not adequately allege facts to establish that Twitter can be sued as a state actor.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Plaintiff's Factual Allegations.[1]

Plaintiff is an individual and an attorney. Dtk. No. 2 ¶¶ 7, 13. She is an active Twitter user. *Id.* ¶ 18. She interacts with the Tweets of other Twitter users. *Id.* ¶ 19. Among the persons whose Tweets she frequently likes, quotes, comments on, and/or Retweets is former President Donald Trump. *Id.* ¶ 20.

According to the Amended Complaint, former President Trump "presented" his Twitter account as "a presidential account as opposed to a personal account" while he was still in office. *Id.* ¶ 22. He used this account "to take actions that can only be taken by the President as President." *Id.*

Plaintiff alleges that Twitter deleted, removed, and/or "applied warning labels" to certain Tweets by former President Trump between November 2, 2020 and January 6, 2021. *See id.* ¶¶ 25–46. She

---

[1] To assess subject-matter jurisdiction, the Court need not accept the alleged facts as true. *Gebhardt v. Chu*, No. C 10-2807 MEJ, 2010 WL 5211459, at *5 (N.D. Cal. Dec. 16, 2010). But Twitter accepts the Amended Complaint's factual allegations as true solely for the purpose of addressing the OSC and Plaintiff's response thereto.

claims that Twitter suspended the account of former President Trump and "removed the more than 65,000 [T]weets that used to be visible in the account." *Id.* ¶ 48. Plaintiff does not allege that Twitter took any action with respect to her own account.

Plaintiff alleges that she "desires to view, search and comment but is no longer able to do so on any of the former President's [T]weets." *Id.* ¶ 50. Plaintiff claims that Twitter's actions have violated her First and Fourteenth Amendment rights—and, by extension, the free speech rights of the "millions of people around the country" who wish to "view, discuss, debate, comment and respond to former President Trump's [T]weets." *Id.* ¶ 2.

### B. Procedural History.

#### 1. Plaintiff's Amended Complaint.

Plaintiff filed this lawsuit on January 22, 2021. Dkt. No. 1. She filed her Amended Complaint on January 26, 2021. Dkt. No. 2. She asserts a single cause of action, under Section 1983, based on an alleged violation of her First and Fourteenth Amendment rights. *Id.* at 7. The nub of her claim is this: while former President Trump was still in office, Twitter restricted his Tweets and account, and so blocked Plaintiff and the rest of the public from being able to view and otherwise engage with those Tweets. *Id.* ¶¶ 25–50. She seeks injunctive relief and an award of attorney's fees. *Id.* at 8.

Plaintiff alleges that Twitter is a "state actor" for purposes of Section 1983 because former President Trump used a Twitter account while he was in office. *Id.* ¶¶ 4, 57. She asserts that Twitter was "granted authority by the former President under color of law when he opened a designated public forum by [T]weeting from a presidential account on Twitter," and that Twitter "accepted the position to administer the interactive space surrounding former President's [T]weets." *Id.* ¶ 57. She thus claims that Twitter "acted under color of law that was delegated to them when they were entrusted to lawfully administer [a] designated public forum." *Id.* ¶ 4.

#### 2. Plaintiff's Motion for a Temporary Restraining Order

On January 27, 2021, Plaintiff moved for a temporary restraining order to reinstate former President Trump's Tweets and account. Dkt. No. 9 at 20. The Court denied the motion *sua sponte*. Dkt. No. 11 at 1. In its ruling, the Court explained that a "fundamental flaw in Rutenburg's entire case is that

the claimed rights under the First Amendment (and the corollary claims under the Fourteenth Amendment) cannot be enforced against a private entity" like Twitter. *Id.* at 1.

### 3. The Court's Order to Show Cause.

Instead of asking for a reconsideration of the ruling, Plaintiff sought to file another motion for a preliminary injunction. Dkt. No. 15 at 1. Accordingly, the parties filed a joint stipulation to set a consolidated briefing schedule so that Plaintiff could file a second request for injunctive relief and Twitter could file a motion to dismiss. *Id.* at 2.

The Court denied the parties' stipulation and issued its OSC, requiring Plaintiff to explain "why this case should not be dismissed for lack of subject-matter jurisdiction." Dkt. No. 16 at 1. The OSC explained, again, that the First Amendment "prohibits only *governmental* abridgment of speech" and "does not prohibit *private* abridgement of speech." *Id.* (emphasis in original) (citing *Halleck*, 139 S. Ct. at 1928).

Plaintiff filed her response to the OSC on February 24, 2021, Dkt. No. 17, and, pursuant to the Court's Order, Twitter now responds as well, Dkt. No. 16 at 2.

## III. STANDARD OF REVIEW

A complaint can be dismissed for lack of subject-matter jurisdiction if its federal claim is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). A court may even "act on its own initiative" to dismiss such an inadequate complaint. *See, e.g.*, *Lampros v. Baker*, 650 F. App'x 354, 355 (9th Cir. 2016) (upholding a *sua sponte* dismissal of a Section 1983 claim because the plaintiff had failed to allege state action). Ample authority exists to support dismissal for lack of subject-matter jurisdiction where, as here, a putative Section 1983 claim cannot plausibly allege that the defendant is a state actor. *See, e.g.*, *Greene v. Sloane*, No. CV 17-3497, 2019 WL 6654150, at *1 (E.D. Pa. Mar. 25, 2019), *aff'd*, 783 F. App'x 108 (3d Cir. 2019) (dismissing *sua sponte* a frivolous Section 1983 claim for lack of subject-matter jurisdiction because the plaintiff did not plausibly allege that the defendants were state actors).

Twitter respectfully notes, however, that even if the Amended Complaint is not so "wholly insubstantial or frivolous" as to fall outside of the Court's subject-matter jurisdiction, *Steel Co.*, 523 U.S.

- 3 -

at 89, her claim would still be subject to dismissal—and the Court still should dismiss the case pursuant to its OSC—because the Amended Complaint fails to state a viable claim. In other words, dismissal would be appropriate either under Rule 12(b)(1) for lack of subject-matter jurisdiction, or under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. For purposes of this filing, Twitter does not examine any defects in the Amended Complaint beyond those identified in the OSC, but Twitter reserves its right to move for dismissal based on numerous additional pleading defects in the Amended Complaint, if and when a response is required.[2] *See* Dkt. No. 16 (extending Twitter's deadline to respond to the Amended Complaint until May 19, 2021).

## IV.   LEGAL ARGUMENT

The Court should dismiss the Amended Complaint because Plaintiff's sole claim under Section 1983 is wholly meritless. Section 1983 provides a remedy for the deprivation of federal rights—but only when that deprivation is caused by conduct that is "fairly attributable to the **State**" and therefore undertaken under color of state law. *Lugar*, 457 U.S. at 928, 937 (emphasis added).

The Supreme Court's decision in *Lugar* sets forth two requirements to determine when conduct is attributable to the state. *Id.* The first requirement concerns the exercise of state authority. Often called the state-policy requirement, this means that, in connection with a violation of the plaintiff's federal constitutional rights, a defendant must have "exercise[d] . . . some right or privilege created by the State." *Id.* at 937. Meanwhile, the second requirement, often described as the "state actor" requirement, asks whether the defendant is "a person who may fairly be said to be a state actor." *Id.*; *see also Collins v. Womancare*, 878 F.2d 1145, 1151 (9th Cir. 1989). In other words, under *Lugar*: (i) a defendant must

---

[2] Beyond the shortcomings identified in the OSC, Plaintiff's claims are also subject to dismissal because, by way of example only, Plaintiff lacks standing to assert a generalized constitutional grievance held equally by "millions of people around the country." *See* Dkt. No. 2 ¶ 2; *Carney v. Adams*, 141 S. Ct. 493, 499 (2020) ("[A] plaintiff cannot establish standing by asserting an abstract general interest common to all members of the public, no matter how sincere or deeply committed a plaintiff is to vindicating that general interest on behalf of the public.") (internal quotations omitted). Also, her lawsuit impermissibly seeks to hold Twitter liable as a publisher of online content created by another, in violation of Section 230 of the Communications Decency Act ("CDA"). *See Brittain v. Twitter, Inc.*, No. 19-CV-00114-YGR, 2019 WL 2423375, at *4 (N.D. Cal. June 10, 2019) (this Court dismissed a senate candidate's First Amendment claim under the CDA because the claim had tried to hold Twitter liable for suspending the candidate's Twitter accounts), *appeal dismissed*, No. 19-16622, 2020 WL 4877527 (9th Cir. Mar. 6, 2020). Finally, because the Amended Complaint seeks only injunctive relief, it would appear that former President Trump's electoral defeat and his departure from office prior to the filing of this lawsuit would render any claim for injunctive relief under Section 1983 entirely moot.

be exercising a power created by a state government, and (ii) the defendant's conduct must be that of a state actor. Plaintiff fails to meet either requirement here.

### A. The Amended Complaint Cannot Allege an Exercise of *State* Authority.

The Amended Complaint is frivolous because Plaintiff does not—in fact, cannot—meet the state-policy requirement for a Section 1983 claim. To satisfy that requirement, Plaintiff must allege that Twitter exercised "a right or privilege having its source in *state authority*" to violate her federal constitutional rights. *Lugar*, 457 U.S. at 939 (emphasis added). In *Lugar*, for example, the plaintiff met the state-policy requirement because the defendants had allegedly used a state statute and prejudgment procedure to deprive him of his property without due process. *Id.* at 940–41.

Here, Plaintiff makes no allegation that Twitter exercised any *state* right or privilege to restrict her access to former President Trump's Tweets. Instead, she points to a supposed delegation of authority from President Trump, a former *federal* official, to operate what she contends is a public forum. *See* Dkt. No. 2 ¶¶ 4, 57. Even indulging Plaintiff's own theory of the case, the Amended Complaint merely describes how Twitter —using its own technical means—reportedly disabled, removed, and otherwise restricted former President Trump's Tweets and accounts. *See id.* ¶¶ 3, 28, 30, 32, 33, 37, 40, 42, 44, 47. None of this has anything to do with an exercise of authority by any of the fifty sovereign states, and thus, the Amended Complaint fails to allege any conduct with a nexus to a state privilege or power.

Plaintiff glosses over the state-policy requirement by suggesting that conduct stemming from any "governmental" authority—rather than the requisite state authority—can sustain her Section 1983 claim. *See, e.g.*, Dkt. No. 17 at 6. That is wrong. *Lugar* expressly instructs that the alleged deprivation of constitutional rights must be rooted in the exercise of a state's sovereign power. 457 U.S. at 940; *see also Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 922–23 (9th Cir. 2011) (analyzing a Section 1983 claim in terms of whether the deprivation was caused by the exercise of a right or privilege "created by the State"). Tellingly, Plaintiff's response to the OSC cites fifteen cases asserting Section 1983 claims—all of which were brought against state actors, rather than federal ones. *See* Dkt. No. 17 at

3-4.[3] The alleged delegation of *federal* governmental authority to Twitter does not meet the state-policy requirement, and thus the Court should dismiss the Amended Complaint.[4]

### B.     The Amended Complaint Cannot Allege that Twitter Is a State Actor.

Turning to *Lugar*'s second requirement, a Section 1983 claim can only be brought against a defendant "who may fairly be said to be a state actor." 457 U.S. at 937. It is undisputed that Twitter is a private company. *See* Dkt. No. 2 ¶ 14 ("Twitter is a ubiquitous social media company."); Dkt. No. 17 at 2 ("Twitter is a private company."). Despite this, Plaintiff attempts to salvage her Section 1983 claim by arguing that Twitter performed a public function and that the company is therefore functionally equivalent to a state actor. *See id.* at 2.

That argument should be rejected. The Supreme Court's authority in *Manhattan Community Access Corporation v. Halleck* is directly on point. 139 S. Ct. 1921 (2019). In *Halleck*, two producers brought Section 1983 and First Amendment claims against their cable television network, which had

---

[3] These cases on which Plaintiff relies all involve state or local elected officials: *Davison v. Randall*, 912 F.3d 666 (4th Cir. 2019) (chair of Virginia board of supervisors); *Attwood v. Clemons*, 818 F. App'x 863 (11th Cir. 2020) (Florida state representative); *Robinson v. Hunt Cnty.*, 921 F.3d 440 (5th Cir. 2019) (Texas county sheriff's office); *Faison v. Jones*, 440 F. Supp. 3d 1123 (E.D. Cal. 2020) (Sacramento sheriff); *West v. Shea*, No. SACV2001293CJCDFMX, 2020 WL 8269540 (C.D. Cal. Nov. 12, 2020) (mayor of Irvine); *Garnier v. O'Connor-Ratcliff*, No. 3:17-cv-02215-BEN-JLB, 2021 WL 129823 (S.D. Cal. Jan. 14, 2021) (California school board of trustees); *Garnier v. Poway Unified Sch. Dist.*, No. 17-cv-2215-W (JLB), 2019 WL 4736208 (S.D. Cal. Sept. 26, 2019) (California school board of trustees); *Windom v. Harshbarger*, 396 F. Supp. 3d 675 (N.D. W. Va. 2019) (member of West Virginia House of Delegates) ; *One Wisconsin Now v. Kremer*, 354 F. Supp. 3d 940 (W.D. Wis. 2019) (members of Wisconsin state assembly); *Anderson v. Hansen*, No. 20-C-1305, 2020 WL 5748743 (E.D. Wis. Feb. 12, 2021) (Wisconsin school district and officials); *Scarborough v. Frederick Cnty. Sch. Bd.*, No. 5:20-CV-00069, 2021 WL 419180 (W.D. Va. Feb. 8, 2021) (Virginia school board and officials); *Clark v. Kolkhorst*, No. A-19-CV-00198-LY-SH, 2020 WL 6151570 (W.D. Tex. Oct. 20, 2020) (Texas state senator); *Felts v. Reed*, Case No. 4:20-cv-821-JAR, 2020, 2020 WL 7041809 (E.D. Mo. Dec. 1, 2020) (Missouri city board member); *Am. Atheists v. Rapert*, --- F.Supp.3d ---, No. 4:19-cv-00017KGB, 2020 WL 7367609 (E.D. Ark. Dec. 15, 2020) (Arkansas state senator); and *Campbell v. Reisch*, No. 19-2994, 2021 WL 261992 (8th Cir. Jan. 27, 2021) (Missouri state representative).

[4] Even if the Court were to accept the nonsensical proposition that a delegation of *federal* authority could somehow meet the state-policy requirement, Plaintiff would still fail here. This is because Twitter's alleged conduct was diametrically opposed to the delegation of authority that former President Trump supposedly granted. Specifically, Plaintiff contends that former President Trump gave Twitter the authority *to keep his account open*—yet her Section 1983 claim rests on the theory that Twitter should be held liable *for closing that same account*. Dkt. No. 2. Federal law rejects the idea that Twitter can be held liable for taking action that is directly contrary to whatever source of government authority it supposedly received. *See Lugar*, 457 U.S. at 940; *see also Collins*, 878 F.2d at 1147 (explaining that the defendants' conduct was contrary to the relevant state statute and therefore could not count as an exercise of state authority for the state-policy requirement).

suspended the producers for airing a controversial film. *Id.* at 1927. The central question presented was whether the network—a private entity that the state had designated to operate its public-access channels—was a state actor. *Id.* at 1926, 1929.

The Supreme Court ruled that it was not. *Id.* at 1929. The court explained that there were "very few" functions that could turn a private entity into a state actor, and such functions had to be ones that the government both "traditionally" and "exclusively" performed. *Id.* (recognizing public functions only in the limited instances of running elections and operating all municipal functions of a company town) (internal citations omitted); *see Lloyd Corp. v. Tanner*, 407 U.S. 551, 569 (1972) (limiting *Marsh v. Alabama*'s recognition of a public function to the context of company towns); *Prager Univ. v. Google LLC*, 951 F.3d 991, 998 (9th Cir. 2020) (confirming that, beyond running elections and operating company towns, "not much else" can be recognized as a public function). The *Halleck* Court ruled that the network's operation of public-access cable television channels was neither a traditional nor an exclusive government function, especially as other private and public entities operated such channels too, and so the network remained a private entity not subject to the First Amendment. 139 S. Ct. at 1926, 1929–30.

The same holds true for Twitter: operating an online social media platform is not a function that has been traditionally or exclusively performed by the government. For this reason, federal courts have repeatedly rejected attempts—like the instant case—to treat social media companies as state actors under Section 1983. *See, e.g.*, *Prager Univ. v. Google LLC*, No. 17-CV-06064-LHK, 2018 WL 1471939, at *8 (N.D. Cal. Mar. 26, 2018), *aff'd*, 951 F.3d 991 (9th Cir. 2020) (concluding that YouTube did not perform a public function simply by hosting speech on a private digital-video platform for the public); *Howard v. AOL*, 208 F.3d 741, 754 (9th Cir. 2000) (finding no subject-matter jurisdiction for a Section 1983 claim because AOL was not a state actor, even if it allegedly acted as a "quasi-public utility" that involves "a public trust."); *Ebeid v. Facebook, Inc.*, No. 18-CV-07030-PJH, 2019 WL 2059662, at *6 (N.D. Cal. May 9, 2019) (rejecting the argument that Facebook was a state actor because it allegedly regulated speech in a public forum); *Nyabwa v. Facebook*, No. 2:17-CV-24, 2018 WL 585467, at *1 (S.D. Tex. Jan. 26, 2018) (finding that the plaintiff had failed to state a First Amendment claim because Facebook was not the government); *Shulman v. Facebook.com*, No. CV 17-764 (JMV),

2017 WL 5129885, *4 (D.N.J. Nov. 6, 2017) (rejecting the plaintiff's constitutional claims against Facebook because Facebook was not a state actor); *Kinderstart.com LLC v. Google, Inc.*, No. C06-2057 JFRS, 2007 WL 831806, *13–15 (N.D. Cal. Mar. 16, 2007) (rejecting arguments that Google was a state actor for constitutional claims); *Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 631–32 (D. Del. 2007) (ruling that Google is a private entity not subject to the plaintiff's constitutional claims); *and Cyber Promotions, Inc. v. Am. Online, Inc.*, 948 F. Supp. 436, 442 (E.D. Pa. 1996) (concluding that AOL "does not stand in the shoes of the State").

Plaintiff attempts to get around these directly analogous cases by relying on inapposite authority. First, Plaintiff cites *Knight First Amendment Institute at Columbia University v. Trump*, 928 F.3d 226 (2d Cir. 2019). But in that case, the Second Circuit explicitly stated that it was ***not*** deciding "whether private social media companies are bound by the First Amendment when policing their platforms." *Id.* at 230. Instead, the Second Circuit held that the government engages in unlawful viewpoint discrimination when ***the government itself*** blocks others from a social media account used for government business. *Id.* at 238. Indeed, Plaintiff uses *Knight* merely to contend that "when a person with governmental authority" opens a social-media account to the public, the account may be analyzed under a public-forum analysis. Dkt. No. 17 at 2. That analysis is inapplicable here, because this case is not about the manner in which the government was using a Twitter account to interact with other Twitter users, but rather about whether Twitter itself may take action with respect to a government official who uses its platform (just as the company would with respect to all other users). *Knight* is therefore irrelevant to this case and does not support Plaintiff's Section 1983 claim.

Second, Plaintiff relies on both *Knight* and the Ninth Circuit's decision in *Lee v. Katz*, 276 F.3d 550 (9th Cir. 2002), for the proposition that former President Trump's Twitter account was a public forum whose administration was "implicitly" delegated to Twitter. Dkt. No. 17 at 6. But even assuming that former President Trump's Twitter account constituted a public forum, *Halleck* makes clear that a private entity's mere administration of that forum is ***not*** a public function in and of itself. 139 S. Ct. at

1930.[5] In fact, *Halleck* rejected Plaintiff's argument that a media company becomes a state actor simply because it operates a public forum for speech. 139 S. Ct. at 1930 ("Merely hosting speech by others is not a traditional, exclusive public function and does not alone transform private entities into state actors subject to First Amendment constraints."). This is why federal courts have uniformly rejected the notion that a social media company can be sued for constitutional torts.[6] *See, e.g.*, *Prager Univ.*, 951 F.3d at 997 ("YouTube may be a paradigmatic public square on the Internet, but it is not transformed into a state actor solely by providing a forum for speech.") (internal quotations and citations omitted); *Ebeid*, 2019 WL 2059662, at *6 (rejecting the argument that Facebook was a state actor because it allegedly regulated speech in a public forum).

Simply put, Plaintiff cannot transform Twitter into a "state actor" based on an allegation that the company "administered" former President Trump's account, which is all that Plaintiff has alleged here. Dkt. No. 2 ¶ 57; *see also* Dkt. No 17 at 6 ("The former President implicitly delegated power to Defendant ***to administer*** the designed public forum and therefore Defendant was required to do so consistently within the confines of the First Amendment.") (emphasis added). To hold otherwise would transform an entire industry—not just Twitter, but any other platform where elected officials might communicate, including Facebook, Instagram, Google, TikTok, Vimeo, Parler, Reddit, Discord, Tumblr, LinkedIn, Pinterest, Medium, and so on—into state actors subject to liability under the First Amendment. That is not, never has been, and never should be the law. *See Halleck*, 139 S. Ct. at 1930–31 ("If the rule were otherwise, all private property owners and private lessees who open their property for speech would be subject to First Amendment constraints," under "court-made law wholly

---

[5] Nothing in *Lee* stands for the contrary, and nor could it. *Lee* concerned a city-owned plaza that the city had leased to the defendants, under express contractual terms that required defendants to "permit access to and [*sic*] free speech on the [plaza] as may be required by laws." 276 F.3d at 552. Nothing like that situation exists here.

[6] There is no law that transforms private entities like Twitter into state actors whenever government officials decide—on their own initiative—to open and manage their accounts on these companies' privately owned platforms. Finding otherwise would force private property owners like Twitter to "face the unappetizing choice of allowing all comers or closing the platform altogether," when "[t]he Constitution does not disable private property owners and private lessees from exercising editorial discretion over speech and speakers on their property." *Halleck*, 139 S. Ct. at 1931 (internal quotation omitted).

disregarding the constitutional basis on which private ownership of property rests in this country."). The Court should accordingly dismiss this lawsuit.

## V. CONCLUSION

In the end, Plaintiff cannot show the good cause needed to save her entirely meritless case. Her sole claim brought under Section 1983 cannot plausibly allege that any ***state authority*** caused the purported deprivation of her federal rights (even though all Section 1983 claims require such an allegation). And notably, Plaintiff cannot allege that Twitter is anything but a private entity: Twitter is not the government, and it does not act as if it were the government. Because Plaintiff cannot make these required allegations, her Amended Complaint should be dismissed for lack of subject-matter jurisdiction.

DATED: March 10, 2021

Respectfully submitted,

CONRAD | METLITZKY | KANE LLP


*/s/ Mark R. Conrad*
MARK R. CONRAD
GRACE YANG
Attorneys for TWITTER, INC.