Mark L. Javitch (CA SBN 323729)
JAVITCH LAW OFFICE
480 S. Ellsworth Ave
San Mateo, CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705
mark@javitchlawoffice.com
*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MARIA RUTENBURG, an individual, <br><br>  Plaintiff, <br><br> v. <br><br> TWITTER, INC., a Delaware Corporation, <br><br>  Defendant. | Case No.: 4:21-cv-00548-YGR <br><br> **REPLY TO ORDER TO SHOW CAUSE** |

**TABLE OF CONTENTS**

I.  INTRODUCTION .................................................................................................................1

II. THIS COURT HAS SUBJECT MATTER JURISDICTION.............................................2

    A.    The Interactive Spaces in the President's Tweets are Designated Public Fora .......3

    B.    Twitter's Conduct Satisfies the Public Function Test.................................................3

        1.    The Deprivation is Only Possible Because of Government Action ..................7

        2.    Regulating Speech in a Designated Public Forum is Traditionally and Exclusively the Prerogative of the Government

    C.    Plaintiff Has Standing................................................................................................12

III. CONCLUSION...................................................................................................................13

# TABLE OF AUTHORITIES

*Cases*

Supreme Court Authorities

*Carney v. Adams*,
141 S. Ct. 493 (2020) ................................................................................................ 12

*Elrod v. Burns*,
427 U.S. 347, 373 (1976) .......................................................................................... 12

*Lugar v. Edmondson Oil Co.*,
457 U.S. 922, 937 (1982) .................................................................................. 2, 6-11

*Manhattan Cmty. Access Corp. v. Halleck*,
139 S. Ct. 1921, 1934 (2019) ................................................................................ 5-6, 10

*West v. Atkins*,
487 U.S. 42, 46 (1988) ............................................................................................. 2, 7

Circuit Court Authorities

*Davison v. Randall*,
912 F.3d 666, 687 (4th Cir. 2019) .............................................................................. 1

*DiLoreto v. Unified Sch. Dist. Bd. Of Educ.*,
196 F.3d 958, 970 (9th Cir. 1999) .............................................................................. 9

*Howard v. AOL*,
208 F. 3d 741 (9th Cir. 2000) ................................................................................... 10

*Knight First Amendment Inst. v. Trump*,
928 F. 3d 226, 239 (2d Cir. 2019) .......................................................... 1, 3-4, 5, 7-8, 10

*Lansing v. City of Memphis*,
202 F.3d 821, 828-29 (6th Cir. 2000) ....................................................................... 11

*Lee v. Katz*,
276 F.3d 550, 554-55 (9th Cir. 2002) ............................................................................... 1-4, 9-11

*United States v. Otherson*,
637 F.2d 1276 (9th Cir. 1980) ................................................................................................... 7

*Prager Univ. v. Google, LLC*,
951 F.3d 991, 998-99 (9th Cir. 2020) ........................................................................................ 5

*Venetian Casino Resort, L.L.C. v. Local Joint Exec. Bd.*,
257 F.3d 937, 944 (9th Cir. 2001) ............................................................................................. 4

District Court Authorities

*Cuviello v. City of Stockton*,
2008 U.S. Dist. Lexis 116537, 2008 WL 4283260 (E.D. Cal. Sep. 16, 2008) ......................... 12

*Citizens to End Animal Suffering & Exploitation, Inc. v. Faneuil Hall Marketplace, Inc.*,
745 F. Supp. 65, 72 (D. Mass. 1990) ......................................................................................... 4

*Cyber Promotions, Inc. v. Am. Online, Inc.*,
948 F. Supp. 436, 422 (E.D. Pa. 1996) .................................................................................... 10

*Ebeid v. Facebook, Inc.*,
2019 WL 2059662, 2019 U.S. Dist. LEXIS 78876 (N.D. Cal. May 9, 2019) ..................... 5, 10

*Garnier v. O'Connor-Ratcliffe*,
2021 U.S. Dist. Lexis 761, 2021 WL 129823 (S.D. Cal. Jan. 14, 2021) .................................. 13

*Kinderstart.com LLC v. Google, Inc.*,
No. C06-2057 JFRS, 2007 WL 831806 (N.D. Cal. 2007) ....................................................... 10

*Knight First Amendment Inst. v. Trump*,
302 F. Supp. 3d 541, 577 (S.D.N.Y. 2018) ................................................................................ 3

*Langdon v. Google, Inc.*,
474 F. Supp. 2d 622, 631-32 (D. Del. 2007) ........................................................................... 10

*Lewis v. Jones*,
440 F. Supp. 3d 1123, 1135 (E.D. Cal. 2020)...............................................................................3

*N. Shore Right to Life Comm. V. Manhasset Am. Legion Post No. 304.*,
2013 U.S. Dist. Lexis 41624, 2013 WL 1222038 (E.D.N.Y. 1978)................................................4

*Nyabwa v. Facebook, Inc.*,
2018 WL 585467 (S.D. Tex. Jan. 26, 2018)................................................................................10

*Pindak v. Cook Cnty.*,
2013 U.S. Dist. Lexis 41624, 2013 WL 1222038 (N.D. Ill. Mar. 25, 2013)..................................4

*Shulman v. Facebook, Inc.*,
2017 WL 5129885 (D.N.J. Nov. 6, 2017) ..................................................................................10

*Prager Univ. v. Google LLC*,
2018 WL 1471939 (N.D. Cal. Mar. 26, 2018)............................................................................10

**<u>Statutes, Rules, and Other Authorities</u>**

U.S. Constitution............................................................................................... *passim*
42 U.S.C. § 1983......................................................................................................2, 9, 12
Mitchell Hamline Law Journal of Public Policy and Practice........................................................5
Berkeley Tech. Law Journal .........................................................................................................5

v

**REPLY TO ORDER TO SHOW CAUSE**

**I.   INTRODUCTION**

Twitter's position that it could never be a state actor because it is a corporation disregards the Supreme Court's entire state action jurisprudence. Twitter argues that it has *no responsibilities* despite courts universally recognizing that a public forum exists in the public's ability to comment on official Tweets. None of Twitter's cases confront the reality that public officials can create constitutionally protected zones in some areas of its social media platform.

There are four laws that can be applied harmoniously here. First, social media websites are not public fora generally. Second, when a person with governmental authority opens an official social media page for public comment, the space that permits public commenting on the official's posts is a public forum. *See Knight First Amendment Inst. v. Trump*, 928 F.3d 226, 239 (2d Cir. 2019).[1] Third, state action is present because Twitter was endowed with the ability to regular speech in the public forum, powers or functions that are both "traditionally" and "exclusively" governmental in nature. *See Lee v. Katz*, 276 F.3d 550, 554 (9th Cir. 2002). Fourth, the First Amendment is violated when Twitter arbitrarily blocked Plaintiff from liking and commenting on certain topics in the public forum. *See Knight*, 928 F.3d at 238.

Accordingly, the restrictions against Plaintiff's liking and commenting here must be reversed under the same reasoning as in *Knight* and *Katz*. *See Knight*, 928 F.3d at 238; *Katz*, 276 F.3d at 554.

---

[1] Only one other court of appeals has reached the merits of whether a public official's social media account can be a public forum for First Amendment purposes. In *Davison v. Randall*, 912 F.3d 666 (4th Cir. 2019), the Fourth Circuit answered this question exactly as the Second Circuit did, applying the same legal framework to an analogous record.

Once it has been established that a public forum exists, the law focuses only on the function at issue and does not differentiate between whether the censor's pen is held by the public or private hand. [2] *Id*. at 238. Plaintiff's right to be free from arbitrary censorship in a constitutionally protected zone must be secured regardless of whether the censor is a private or public entity. Twitter is liable under the government function test for unlawfully administering the designated public forum.

Plaintiff demonstrates here that the arbitrary censorship of Plaintiff's speech while trying to like and comment on the former President's Tweets on the topic of election fraud satisfies the government function test because 1) Twitter exercised authority it was only endowed with because of governmental action and 2) Regulating speech in a public forum is a power that has been traditionally and exclusively exercised by the government. *See Katz*, 276 F.3d at 554-55.

## II.   THIS COURT HAS SUBJECT MATTER JURISDICTION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). The Supreme Court has set out the government or public function test for determining whether a private individual's actions amount to state action. *Katz*, 276 F.3d at 554-55. Twitter's conduct here is under color of law because its actions satisfy the government function test.

---

[2] "The state actor inquiry is focused on whether the source of the private actor's power comes from the [s]tate." *Lugar*, 457 U.S at 937.

      **A.**    **The Interactive Spaces in the President's Tweets are Designated Public Fora**

On February 24, 2021, Plaintiff responded to the Order to Show Cause ("OSC"). Dkt. 17. In her response to the OSC, Ms. Rutenburg argued that the only courts that have analyzed the issue have held that the space where the public can comment on a public official's official social media posts constitutes a public forum entitled to First Amendment Protection. Dkt. 17, 4-5. The Second Circuit specifically evaluated former President Trump's Twitter account and held that the public's ability to comment is a designated public forum. *Id*. at 239. The account is akin to a digital town hall, with the President speaking from the podium at the front of the room, and citizens responding to him and engaging with one another about his statements. This suit also concerns Plaintiff's ability to comment on the former President's Tweets and thus the same analysis conducted by the *Knight* court applies to Plaintiff's claims here. *See* Am. Compl., ¶¶ 18-19; *Lewis v. Jones*, 440 F. Supp. 3d 1123, 1135 (E.D. Cal. 2020). Therefore, the public space to comment on the former President's Tweets (during the events in this case) must be treated as a designated public forum. *See Knight First Amendment Inst. v. Trump*, 302 F.Supp.3d 541, 577 (S.D.N.Y. 2018) aff'd, 928 F.3d 226 (2d Cir. 2019) ("[T]he blocking of the individual plaintiffs has the discrete impact of preventing them from interacting directly with the President's [T]weets [restricts] a real, albeit narrow, slice of speech. No more is needed to violate the Constitution.")

Twitter does not meaningfully dispute the Second Circuit's holding that the space for public commenting on former President Trump's Twitter posts is a designated public forum or that its character

has somehow changed[3] by the time of the incidents in this case. Instead, Twitter asserts that *Knight* does not apply because that the holding applied to when *the government* blocked the plaintiff. But Twitter defeats its own argument, as Twitter also admits that the Second Circuit was specifically *not* deciding that issue that the Court here must decide – whether a social media company administering a designated public forum is restricted from arbitrary censorship under the First Amendment *in the same way* the government is prohibited from censoring such a forum. Dkt 18, 13:8-20 (citing *Knight*, 928 F.3d at 230).

Although the above quotation shows the issue was not addressed in *Knight*, courts have already established that once a public forum exists, a private entity must abide by the same restrictions as the government if it retains ultimate control to administer the forum. See *Pindak v. Cook Cnty.*, No. 10-cv-6237, 2013 U.S. Dist. LEXIS 41624, 2013 WL 1222038, at *13-15 (N.D. Ill. Mar. 25, 2013) (First Amendment restricted private security officers); *Citizens To End Animal Suffering & Exploitation, Inc. v. Faneuil Hall Marketplace, Inc.*, 745 F. Supp. 65, 72 (D. Mass. 1990) (First Amendment restricted private security guards); *N. Shore Right to Life Comm. v. Manhasset Am. Legion Post No. 304*, 452 F. Supp. 834, 840 (E.D.N.Y. 1978) (First Amendment restricted private group selecting participants in a public parade).

Nevertheless, Twitter asserts it is not transformed into a state actor merely because it administered the former President's Twitter account. Dkt. 18, 14:10-15:2. But this argument contradicts binding Ninth Circuit caselaw holding that administering speech in a designated public forum is indeed a public

---

[3] *Cf. Venetian Casino Resort, L.L.C. v. Local Joint Exec. Bd.*, 257 F.3d 937, 944 (9th Cir. 2001), cert. denied, 535 U.S. 905 (2002) (changing the public forum's protected status would require altering the objective physical character or uses of the property)

4

function. *See Katz*, 276 F.3d at 556 ("That 'function' is the administration of free speech rules within a public forum.").

Finally, Twitter argues that courts have rejected the notion that a social media company can be sued for constitutional torts. Dkt. 18, 14:1-9 (citing *Manhattan Community Access Corp. v. Halleck*, 139 S.Ct. 1921, 1930 (2019); *Prager Univ. v. Google LLC*, 951 F.3d 991, 997 (9th Cir. 2020); *Ebeid v. Facebook, Inc.*, No. 18-CV-07030-PJH, 2019 WL 2059662, at *6 (N.D. Cal. May 9, 2019)). But Twitter's cases only stand for the proposition that social media websites are generally not public fora. *Id*. As Plaintiff argued in the reply to the OSC, Ms. Rutenburg does not dispute that social media websites are not generally public fora. Dkt. 17, 10:9-12:11. This suit concerns a different issue, Plaintiff's right to comment on the former President's Tweets while he held office, where the Second Circuit already determined that arbitrary blocking violated the First Amendment because it was a designated public forum. *See e.g.*, *Knight*, 928 F.3d at 238 ("[T]he speech restrictions at issue burden the [plaintiff's] ability to converse on Twitter with others who may be speaking to or about the President.").

### B. Twitter's Conduct Satisfies the Public Function Test

Twitter points out that it is a private entity and seems to assert it would be impossible for its conduct to satisfy the state action doctrine. Dkt. 18, 11:3-13:7. But if the line were drawn at whether an entity were "private" or "public," there would be no need for the Supreme Court's station action jurisprudence. Scholars have long recognized that some conduct by social media companies could satisfy

the state action doctrine.[4] Twitter relies heavily on *Halleck*, but that case is inapposite because it involved public access television that did not establish a public forum. In *Halleck*, the plaintiff alleged that a private entity violated its First Amendment right when it suspended plaintiff from broadcasting on public access television channels. *Halleck,* 139 S.Ct. at 1928. But the Court held that the broadcasting entity did not act under color of law because the operation of public access channels on a cable system was not a function traditionally and exclusively performed by the government. *Id*. at 1929. *Halleck* does not advance Twitter's argument because the broadcast channels were not public forums. In contrast, here, it is undisputed that Plaintiff's suit concerns her attempts to comment on the former President's official posts while he was in office, which was already determined by the Second Circuit to constitute a designated public forum.

Twitter's argument that the private property of social media websites will be generally eroded should fall on deaf ears. Dkt. 18, 14:10-15:2. Although the holding has not been specifically extended to social media, the California Supreme Court has recognized there is no deprivation of private property rights from limiting a property owner's right to censor speech when the property is already dedicated to public speaking. *See PruneYard Shopping Center v. Robins*, 447 U.S. 74, 83 (1980). Further, this suit only pertains to a miniscule fraction of Tweets on Twitter's website, those that are from people trying to comment on the posts of government officials, not all Tweets generally. Twitter's primary business is opening its website to speech from millions of users, so it will not likely be prejudiced by being forced

---

[4] *See* Patty, Michael (2019) "Social Media and Censorship: Rethinking State Action Once Again," *Mitchell Hamline Law Journal of Public Policy and Practice*: Vol. 40 , Article 5; Jonathan Peters, The "Sovereigns of Cyberspace" and State Action: The First Amendment's Application (or Lack Thereof) to Third-Party Platforms, 32 Berkeley Tech. L.J. 989 (2017).

to restrain from censoring.

The inquiry here is focused on whether the source of the private actor's power comes from the State. *Lugar*, 457 U.S. at 937. For actions by a private entity to be considered to be taken under color of law, the challenged conduct must satisfy a two-step inquiry. *Id*. The first question is whether the challenged conduct causing "the deprivation is the result of a governmental policy." *Id.* The second *Lugar* question is whether the function at issue must be "both traditionally and exclusively governmental." *Atkins*, 487 U.S. at 46 n. 6.

### 1. The Deprivation Is Only Possible Because of Governmental Action

In her reply to the OSC, Plaintiff argued that Twitter's arbitrary censoring of her attempts to comment on the former President's Tweets on the topic of alleged election fraud satisfies the first step of the *Lugar* because Twitter's ability to censor the designated public forum was only possible as a result of governmental action, the former President's posting on Twitter for official purposes. Dkt. 17, 7:7-9:20.

Twitter argues that Plaintiff fails this first *Lugar* step because Twitter did not exercise a right or privilege having its source in *state* authority (pointing out that former President Trump is a *federal*, not a *state* official). Twitter asserts that Plaintiff's citations involved cases against state actors, rather than federal ones. Dkt. 18, 10:22-11:2. Twitter appears to argue that the First Amendment and the Due Process Clause do not protect citizens against the federal government, but this argument is incorrect. *See e.g.*, *United States v. Otherson*, 637 F.2d 1276 (1980) (applying color of law analysis to federal officials). Twitter also ignores the most important case Plaintiff cited, the Second Circuit case *Knight v. Trump*, which involved the former President, a federal official, and the panel affirmed the decision ordering that Plaintiff be unblocked from commenting on posts from the President.

Twitter also argues that *Florer v. Congregation Pidyon Shevuyim N.A.* forecloses Plaintiff's

argument that the deprivation was possible only because of governmental authority. Dkt. 18, 10:18-25 (citing 639 F.3d 916, 922–23 (9th Cir. 2011)). There, the plaintiff prisoner in that case requested a Torah, calendar, and a visit from a rabbi from Congregation Pdyon Shevuyim. However, the Congregation decided that he was not Jewish and therefore declined to provide the requested services to Plaintiff. *Id*. at 923.

The court held that the Congregation's refusal to fulfill the prisoner's requests was not a public function. The deprivation had no connection to any action or policy of the government that made the deprivation possible – on the contrary, the state had in no way designated Congregation Pdyon Shevuyim for any special tasks or to perform any services for the prison. *Id*. at 925-926. The state generally permitted prisoners to request religious materials from any religious organization. *Id*. at 925. Merely because plaintiff's requests to the religious organization he selected were denied does not mean that the deprivation was made possible because of the government. *Cf. id*. at 925-926. (If the Congregation had refused to provide services because the government determined plaintiff was not Jewish, then the state may have caused the deprivation…instead, this alleged deprivation was "ecclesiastical" and not "public").

In contrast to Twitter's cases, here, courts have already acknowledged that governmental action was present when the former President opened a designated public forum by choosing to use Twitter when making announcements and permitting the public to comment. *See e.g.*, *Knight*, 928 F.3d at 239. Here, there is no question that Defendant only had the ability to arbitrarily censor Plaintiff in the public forum because of this governmental action.

Twitter also argues that Twitter's alleged conduct could not constitute governmental action

because it "was diametrically opposed to the delegation of authority that former President Trump supposedly granted." (citing *Lugar*, 457 U.S. at 940; *Collins*, 878 F.2d at 1147) (explaining that the defendants' conduct was contrary to the relevant state statute and therefore could not count as an exercise of state authority for the state-policy requirement). But Twitter mixes up which action is under analysis. The courts in *Lugar* and *Collins* held there was no state action because the defendants attempted to exercise state action, but they failed at the outset to lawfully invoke the statute that would have conveyed government authority. Here, it is already established that there was government action – the former President posting on Twitter for official purposes which created a designated public forum for the public to like and comment.

Twitter states that it is contradictory for Plaintiff to contend that former President Trump gave Twitter the authority to keep his account open and yet maintain her Section § 1983 claim on the theory that Twitter should be held liable for closing that same account. Dkt. 18, 12:23-28. But Twitter misunderstands Plaintiff's claim, Plaintiff does not complain that her speech was impaired after Twitter gave sufficient notice and closed the forum because of too much controversy. *Cf. DiLoreto v. Unified Sch. Dist. Bd. Of Educ.*, 196 F.3d 958, 970 (9th Cir. 1999) (closing a forum to avoid controversy is a constitutionally permitted solution). On the contrary, Plaintiff complains that she wanted to post on certain topics in a constitutionally protected zone but was arbitrary censored from liking and commenting.

      **2.    Regulating Speech in a Designated Public Forum is Traditionally and Exclusively the Prerogative of the Government**

In her reply to the OSC, Ms. Rutenburg argued that the second step of the *Lugar* analysis is also satisfied because regulating speech in a traditional or designated forum is a function that is traditionally and exclusively the prerogative of the state. The Ninth Circuit has held this function to be

"quintessentially an exclusive and traditional public function-the regulation of free speech within a public forum." *Katz*, 276 F.3d at 556-57.

Twitter argues again that it is not performing a traditional and exclusive function because merely hosting speech on a private platform is not such a function. Dkt. 18, 11:10-13:7, 13:21-15:2 (citing *Halleck*, 139 S. Ct. at 1930; *Prager Univ. v. Google LLC*, No. 17-CV-06064-LHK, 2018 WL 1471939, at *8 (N.D. Cal. Mar. 26, 2018), aff'd, 951 F.3d 991 (9th Cir. 2020); *Howard v. AOL*, 208 F.3d 741, 754 (9th Cir. 2000); *Ebeid*, 2019 WL 2059662, at *6; *Nyabwa v. Facebook*, No. 2:17-CV-24, 2018 WL 585467, at *1 (S.D. Tex. Jan. 26, 2018); *Shulman v. Facebook.com*, No. CV 17-764 (JMV), 2017 WL 5129885, *4 (D.N.J. Nov. 6, 2017); *Kinderstart.com LLC v. Google, Inc*., No. C06-2057 JFRS, 2007 WL 831806, *13–15 (N.D. Cal. Mar. 16, 2007); *Langdon v. Google, Inc*., 474 F. Supp. 2d 622, 631–32 (D. Del. 2007); *Cyber Promotions, Inc. v. Am. Online, Inc*., 948 F. Supp. 436, 442 (E.D. Pa. 1996).

But Twitter's cases did not address the second *Lugar* step and instead merely demonstrate that the social media websites are not public fora generally. As discussed in Plaintiff's reply to the OSC, (Dkt. 17, 10:10-12:11) this line of cases only resolved claims against the cable access channel and social media websites generally and not the interactive space surrounding government officials' official social media postings. *Halleck*, 139 S. Ct. at 1930.

This case is similar to *Katz*. "It is important to identify the function at issue because an entity may be a State actor for some purposes but not for others." *Katz*, 276 F.3d at 555 n.5 (internal citations omitted). Here, as in *Katz*, it is already established that there is a designated public forum in the public's ability to comment on the former President's Tweets during the period he was in office. *See Knight*, 928 F.3d at 238. Therefore, the only remaining issue is whether the function at issue here – whether a private

10

company's regulation of speech in a designated public forum – is exclusively and traditionally governmental and therefore satisfies the second step of the *Lugar* analysis.

Under binding Ninth Circuit caselaw, the answer is yes. *See Katz*, 276 F.3d at 556-57 ("It turns on what is quintessentially an exclusive and traditional public function -- the regulation of free speech within a public forum."). As in *Katz*, here, Twitter had the ability to and did censor Plaintiff from commenting on certain of the former President's Tweets, and then ultimately removed Plaintiff's ability to *view and comment on all* of the former President's Tweets. Am. Compl., ¶¶ 45-52. This power demonstrates that Twitter retained exclusive authority to regulate speech in the forum, and that the government retained little control over the forum, similar to the situation in *Katz*. *See id.* at 556 (the defendant became a state actor when he was delegated the public function and exercised "functionally exclusive regulation of free speech" within the public forum) (*cf. Lansing v. City of Memphis*, 202 F.3d 821, 828-29 (6th Cir. 2000) (no state action when the state retains ultimate power to regulate activities in the forum).[5]

Twitter argues that this case is unlike *Katz* because that holding relied on a contract term in a lease between the government and the private entity. Dkt. 18, 14:23-25. But that is not the question for the second *Lugar* step, and nearly the exact argument was rejected in *Katz*, where the court explained that the precise arrangement between the government and the private actor was not dispositive. See *Katz*, 276 F.3d at 556 ("Given the reality that the [space] is a public forum…It is the function of the [defendant's] administration of the [public forum] that guides and informs our inquiry, not the precise legal arrangement

under which [the defendant] the leases the area. That 'function' is the administration of free speech rules within a public forum.").

### C. Plaintiff Has Standing

Twitter argues that Plaintiff does not have standing under *Carney v. Adams* because Plaintiff is only asserting a generalized right common to all the public. 141 S. Ct. 493, 499 (2020). In *Carney*, the plaintiff sued to enforce a provision of the Delaware state constitution prohibiting state courts from having a majority of judges from one political party. *Id*. at 498. The Court held the plaintiff lacked standing because he was asserting the same injury experienced as all citizens of Delaware. *Id*. at 499 ("that he 'must live and work within a State that (in his view) imposes unconstitutional requirements for eligibility on three of its courts.'")

However, here, if the Court holds that Plaintiff plausibly pleads Twitter acted under color of law, there is no doubt that Plaintiff has standing to allege a constitutional deprivation that she personally experienced. Plaintiff was arbitrarily blocked from liking and commenting on the former President's Tweets (and now she cannot even view them). *See* Am. Compl., ¶¶ 45-52. The loss of First Amendment freedoms, even briefly, constitute an irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

Even though others who also wanted to like and comment but were blocked also experienced the same injury, does not turn the injury into a generalized grievance. Plaintiff is entitled to injunctive and declaratory relief under 42 U.S.C. § 1983 as a remedy against Defendant to restore her rights under the First Amendment and the Due Process Clause and to prevent future abuses. Plaintiff's claims have not been mooted. *See Cuviello v. City of Stockton*, No. CIV. S-07-1625 LKK/KJM, 2008 U.S. Dist. LEXIS 116537, 2008 WL 4283260, at *7 (E.D. Cal. Sep. 16, 2008) ("[I]t is well-settled that an action for an

injunction does not become moot merely because the conduct complained of was terminated, if there is a possibility of recurrence, since otherwise the defendant would be free to return to [his] old ways.") (internal quotation marks omitted). An injunction issued by this Court would require Defendant to unblock the former President's Tweets from view (for the period in which he was in office) and unblock Plaintiff's ability to comment on those Tweets. Declaratory relief would also invaluably serve to prevent similar abuses in the future. There is no question that experiencing arbitrary censorship in a designated public forum conveys Plaintiff standing. *See Garnier v. O'Connor-Ratcliff*, No. 3:17-cv-02215-BEN-JLB, 2021 U.S. Dist. LEXIS 7613, 2021 WL 129823, at *24-25 (S.D. Cal. Jan. 14, 2021).

### III.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court hold that subject matter jurisdiction exists over this case because Plaintiff has plausibly alleged that Defendant satisfied the government function test.

DATED: March 17, 2021              Plaintiff MARIA RUTENBURG

By: /s/ Mark L. Javitch_____
Mark L. Javitch (California SBN 323729)
JAVITCH LAW OFFICE
480 S. Ellsworth Avenue
San Mateo CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705
mark@javitchlawoffice.com

*Attorney for Plaintiff*