Mark L. Javitch (CA SBN 323729)
JAVITCH LAW OFFICE
480 S. Ellsworth Ave.
San Mateo, CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705
mark@javitchlawoffice.com
*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARIA RUTENBURG,

              Plaintiff,

v.

TWITTER, INC.,

              Defendant.

Case No.:  4:21-cv-00548-YGR

**NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

**Hearing Date: June 1, 2021**
**Time: 2:00 p.m.**

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION FOR LEAVE TO AMEND COMPLAINT

PLAINTIFF HEREBY PROVIDES NOTICE that on June 1, 2021, in Courtroom 1, on the 4th Floor of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, California, 94612, at 2:00 p.m., or as soon thereafter as the matter may be heard, Plaintiff MARIA RUTENBURG will and hereby does move the Court for leave to file Plaintiff's [Proposed] Second Amended Complaint ("SAC") a copy and redline version of which are concurrently filed with this Notice of Motion and Motion as Exhibit "A" and "B" to the Declaration of Mark L. Javitch, ¶¶ 5-6.

The Motion will be based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the proposed SAC, the declaration of Mark L. Javitch, and at the Court's discretion, oral argument.

Date: April 21, 2021                    By: /s/ Mark L. Javitch

                                        Mark L. Javitch

                                        *Attorney for Plaintiff*
                                        MARIA RUTENBURG

1

**<u>TABLE OF CONTENTS</u>**

2

I. INTRODUCTION ..................................................................................1

II. FACTS & PROCEDURAL HISTORY .................................................1

III. LEGAL STANDARD FOR LEAVE TO AMEND..............................2

IV. THE COURT SHOULD GRANT LEAVE TO AMEND ....................2

  A. The Proposed SAC Establishes the Space where Plaintiff
   was Blocked was a Designated Public Forum ..........................3

   1. New Allegations in the Second Amended Complaint .......3

   2. *Knight v. Trump* Litigation .............................................4

   3. Courts Have Followed *Knight* ........................................5

  B. Restrictions on Regulating Speech in a Public Forum
   Apply to Public and Private Actors ...........................................8

  C. Private Actors become State Actors when they Retain Ultimate
   Discretion and Control to Regulate Speech In a Designated Public Forum ...........9

  D. Twitter Being a Private Company is Not Determinative of
   Whether Its Conduct Satisfies the State Action Doctrine .....................10

  E. The Space for Responding to former President Trump's Tweets
   Must be Analyzed Separately from Twitter as a Whole .......................11

  F. None of the Other *Foman* Factors Weighing Against Amendment Are Present...12

   1. There Has Been No Undue Delay..................................12

   2. There is No Bad Faith or Dilatory Motive.........................13

   3. There is No Repeated Failure to Cure Deficies ...........13

   4. There is No Undue Prejudice .........................................13

   5. The Proposed Amendments Are Not Futile....................14

    i. The Former President Tweeting Created the Privilege
     of Administering the Forum, Satisfying the First *Lugar* Step ........14

    ii. Twitter's Conduct Regulating Speech in a
     Designated Public Forum Satisfies the Second *Lugar* Step .............15

    iii. Leave to Seek Declaratory Relief Should be Granted ...................16

V. CONCLUSION....................................................................................16

iii

3:21-cv-00548-YGR

1

## TABLE OF AUTHORITIES

2

*Cases*

3

Supreme Court Authorities

4

*Biden v. Knight First Amendment Inst. at Columbia Univ., et. al.*,
2021 U.S. LEXIS 1863, 2021 WL 1240931 (Apr. 5, 2021) ..................................................... 3, 5-6

5

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*,
531 U.S. 288, 295 (2001) .......................................................................................................9

6

7

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*,
473 U.S. 788 (1985) ............................................................................................................3, 9

8

9

*City of Madison Joint Sch. Dist. No. 8 v. Wis. Emp. Relations Comm'n*,
429 U.S. 167 (1976) .............................................................................................................5

10

*Lugar v. Edmondson Oil Co.*,
457 U.S. 922, 937 (1982) ................................................................................................ 8, 13-14

11

12

*Foman v. Davis*,
371 U.S. 178 (1962) ................................................................................................ 2, 10-12, 15

13

14

*Evans v. Newton*,
382 U.S. 296, 299 (1966) ....................................................................................................7

15

*Jackson v. Metropolitan Edison Co.*,
419 U.S. 345, 351 (1974) ....................................................................................................14

16

17

Circuit Court Authorities

18

*Attwood v. Clemons*,
818 F. App'x 863 (11th Cir. 2020) .......................................................................................6

19

20

*Acri v. Internat'l Ass'n of Machinists & Aerospace Workers*,
781 F.2d 1393 (9th Cir. 2020) .............................................................................................12

21

22

*AmerisourceBergen Corp. v. Dialysist West, Inc.*,
465 F.3d 946 (9th Cir. 2006) ..............................................................................................12

23

24

*Charudattan v. Darnell*,
834 F. App'x 477 (11th Cir. 2020) .......................................................................................6

25

26

*Campbell v. Reisch*,
2021 U.S. App. LEXIS 2202, 2021 WL 261992 (8th Cir. Jan. 27, 2021) ........................................6

27

28

Circuit Court Authorities (continued)

*Davison v. Randall*,
912 F.3d 666, 687 (4th Cir. 2019) ...............................................................6

*DCD Programs, Ltd. v. Leighton*,
833 F.2d 183, 185 (9th Cir. 1987) .........................................................2, 11

*Eureka Fed Sav. & Loan Ass'n v. Am. Cas. Co.*,
873 F.2d 229 (9th Cir. 1989) ................................................................2, 11

*Griggs v. Pace American Group, Inc.*,
170 F.3d 877 (9th Cir. 1999) ....................................................................11

*Knight First Amendment Inst. v. Trump*,
928 F. 3d 226, 239 (2d Cir. 2019)........................................................3, 5, 13

*Knight First Amendment Inst. v. Trump*,
denial of reh'g en banc, 953 F.3d 216 (2d Cir. 2020)................................3, 5

*Eminence Capital LLC v. Aspeon Inc.*,
316 F.3d 1048, 1052 (9th Cir. 2003) ..........................................................12

*Lansing v. City of Memphis*,
202 F.3d 821, 828-29 (6th Cir. 2000) ...........................................................8

*Lee v. Katz*,
276 F.3d 556 (9th Cir. 2002) ..............................................................8-9, 14

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) (en banc) ......................................................2

*Morongo Band of Mission Indians v. Rose*,
893 F.2d 1074 (9th Cir. 1990) .....................................................................2

*Sutton v. Providence St. Joseph Med. Ctr.*,
192 F.3d 826, 835-36 (9th Cir. 1999) .........................................................14

*Venetian Casino Resort, L.L.C. v. Local Joint Exec. Bd.*,
257 F.3d 937, 944 (9th Cir. 2001) ...............................................................4

District Court Authorities

*Am. Atheists v. Rapert*,
2019 U.S. Dist. LEXIS 230493 (E.D. Ark. Sep. 30, 2019) ............................6

3:21-cv-00548-YGR

<u>District Court Authorities (continued)</u>

*Anderson v. Hansen*,
2021 U.S. Dist. LEXIS 27722 (E.D. Wis. Feb. 12, 2021) ..............................................6

*Attwood v. Clemons*,
2021 U.S. Dist. LEXIS 49586, 2021 WL 1020449 (N.D. Fla. Mar. 17, 2021) ..............6

*Citizens to End Animal Suffering & Exploitation, Inc. v. Faneuil Hall Marketplace, Inc.*,
745 F. Supp. 65, 72 (D. Mass. 1990) ........................................................................8, 10

*Clark v. Kolkhorst*,
2020 U.S. Dist. LEXIS 193964, 2020 WL 6151570 (W.D. Tex. Oct. 20, 2020) ............6

*Clark v. Upton*,
703 F.Supp.2d 1037, 1043 (E.D. Cal. 2010) ................................................................6

*Felts v. Reed*,
2020 U.S. Dist. LEXIS 224489, 2020 WL 7041809 (E.D. Mo. Dec. 1, 2020) ..............6

*Fleck v. Trs. of Univ. of Penn.*,
995 F. Supp. 2d 390 (E.D. Pa. 2014) ..........................................................................11

*Finjan, Inc. v. Check Point Software Techs., Inc.*,
2019 U.S. Dist. LEXIS 62473, 2019 WL 1455333 (N.D. Cal. Apr. 2, 2019) ........14, 16

*Genentech, Inc. v. Abbott Laboratories*,
127 F.R.D. 529 (N.D. Cal. 1989) ................................................................................14

*Garnier v. O'Connor-Ratcliffe*,
2021 U.S. Dist. Lexis 761, 2021 WL 129823 (S.D. Cal. Jan. 14, 2021) ......................6

*Garnier v. Poway Unified Sch. Dist.*,
2019 U.S. Dist. LEXIS 167247 (S.D. Cal. Sep. 26, 2019) ............................................6

*Knight First Amendment Inst. v. Trump*,
302 F. Supp. 3d 541, 577 (S.D.N.Y. 2018) ...............................................................3, 5

*Lewis v. Jones*,
440 F. Supp. 3d 1123, 1135 (E.D. Cal. 2020) ..............................................................6

*Luis v. Metro Life Ins. Co.*,
142 F. Supp. 3d 873, 881 (N.D. Cal. 2015) ................................................................14

3:21-cv-00548-YGR

<u>District Court Authorities (continued)</u>

*N. Shore Right to Life Comm. V. Manhasset Am. Legion Post No. 304.*,
2013 U.S. Dist. Lexis 41624, 2013 WL 1222038 (E.D.N.Y. 1978)..........................................8, 10

*One Wis. Now. v. Kremer*,
354 F. Supp. 3d 940, 955 (W.D. Wis. 2019) ...................................................................6

*Pindak v. Cook Cnty.*,
2013 U.S. Dist. Lexis 41624, 2013 WL 1222038 (N.D. Ill. Mar. 25, 2013) ...........................8-9

*Popp v. Monroe Cnty.*,
2020 U.S. Dist. Lexis 57042 (D. Ind. Mar. 31, 2020) .......................................................6

*Scarborough v. Frederick Cnty. Sch. Bd.*,
2021 U.S. Dist. Lexis 22977, 2021 WL 419180 (W.D. Va. Feb. 8, 2021).................................6

*Serpa v. SBC Telecomms., Inc.*,
318 F. Supp. 2d 865 (N.D. Cal. 2004) ............................................................................2

*Stearns v. Select Comfort Retail Corp.*,
763 F. Supp. 2d 1128 (N.D. Cal. 2010) ........................................................................13

*Phillips v. Ochoa*,
2021 U.S. Dist. Lexis 55683, 2021 WL 1131693 (D. Nev.. Mar. 24, 2021).................................6

*TaiMed Biologics, Inc. v. Nuomda Corp*,
2011 U.S. Dist. LEXIS 48863, 2011 WL 1630041 (N.D. Cal. Apr. 29, 2011)............................14

*West v. Shea*,
2020 U.S. Dist. LEXIS 248837, __ F. Supp. 3d __, (C.D. Cal. Nov. 12, 2020) ..........................6

*Windom v. Harshbarger*,
396 F. Supp. 3d 675 (N.D. W. Va. 2019) ........................................................................6

**<u>Statutes, Rules, and Other Authorities</u>**

U.S. Constitution.................................................................................... *passim*
42 U.S.C. § 1983 ...............................................................................................1, 9
Fed. R. Civ. P. 15 ............................................................................................2, 15
28 U.S.C. § 2201 .............................................................................................2, 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    <u>INTRODUCTION</u>

Plaintiff seeks leave to amend her Amended Complaint to add allegations sufficient to establish the same as other courts have held, that the area in which Plaintiff tried to comment was a designated public forum. Once Plaintiff establishes that she wished to comment in a designated public forum, she can then prove that Twitter acted under color of law when it arbitrarily blocked her contrary to the constitutional protections inherent in such a zone. The proposed SAC is permissible under Federal Rule of Civil Procedure 15(a)(2) and Defendant TWITTER, INC. ("Twitter") will not be unduly prejudiced by the filing of the proposed SAC since this action is still at the early stages.

### II.    <u>STATEMENT OF FACTS AND PROCEDURAL HISTORY</u>

On January 22, 2021, Plaintiff filed a Complaint under 42 U.S.C. § 1983 alleging that Twitter acted under color of law in violation of her First and Fourteenth Amendment rights when it arbitrarily censored and blocked Plaintiff's ability to comment on the topic of election integrity in the designated public forum that was the space where users could respond to former President Trump's Tweets. (*See* Dkt. No. 1). On January 26, 2021, Plaintiff Filed her Amended Complaint. (*See* Dkt. No. 2). On January 27, 2021, Rutenburg filed a motion for a temporary restraining order. (*See* Dkt. Nos. 9, 10). The Court denied the motion. (*See* Dkt. No. 11.)

On February 11, 2021, the Court issued an Order to Show Cause ("OSC") why the case should not be dismissed for lack of subject matter jurisdiction. (*See* Dkt. No. 16). The Parties fully briefed the matter.[1] (*See* Dkt. Nos. 17, 18, 20). On April 9, 2021, the Court dismissed the case for lack of subject

---

[1] On March 8, 2021, Twitter sued Ken Paxton, the Texas Attorney General, and filed a motion for a temporary restraining order requesting the Court immunize Twitter from investigation of Texas

matter jurisdiction because Plaintiff did not sufficiently allege that the space from where she was blocked was a designated public forum. (*See* Dkt. 21).

## III.   <u>LEGAL STANDARD</u>

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely granted when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (cleaned up). The liberal policy towards amendment is well-established in the Ninth Circuit. *See, e.g., Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) ("leave to amend 'shall be freely given when justice so requires,' Fed. R. Civ. P. 15(a), and this policy is to be applied with extreme liberality"). "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *DCD Programs, Ltd v. Leighton*, 833 F.2d 183, 185 (9th Cir. 1987) (citation omitted). "The party opposing leave to amend bears the burden of showing prejudice." *Serpa v. SBC Telecomms., Inc*., 318 F. Supp. 2d 865, 870 (N.D. Cal. 2004) (cleaned up).

## IV.   <u>THE COURT SHOULD GRANT LEAVE TO AMEND</u>

On April 9, 2021, the Court dismissed the Amended Complaint because Plaintiff did not sufficiently allege that the space where she tried to comment was a designated public forum. *See* Dkt. 21, at p. 3 ("Instead, Rutenburg points to a supposed delegation of authority from former President Trump to operate what she contends is a public forum.") The Court should allow Plaintiff to file the

---

consumer protection statutes. *See Twitter, Inc. v. Ken Paxton*, No. 3:21-cv-01644 (N.D. Cal.). On April 15, 2021, Ms. Rutenburg submitted her amicus brief with leave in favor of Defendant Ken Paxton. (*See* Dkt. 57).

proposed SAC because adding allegations sufficient to establish that the space where she tried to comment was a designated public forum would convey subject matter jurisdiction over this case.

### A. The Proposed Amendment Establishes the Space Where Plaintiff was Blocked was a Designated Public Forum

This case is the mirror image of *Knight* because both of the plaintiffs in both cases were blocked from the exact same area – the space for commenting on Trump's Tweets – which must be analyzed separately from Twitter as a whole. *See Knight First Amendment Inst. at Columbia Univ. v. Trump*, 302 F. Supp. 3d 541, 564 (S.D.N.Y. 2018) ("Ultimately, the delineation of a tweet's interactive space as the putative forum is consistent with the Supreme Court's directive to "focus[] on the access sought by the speaker.") (citing *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 801 (1985)). That conclusion is consistent with the Supreme Court's application of the public forum doctrine in analogous contexts. *See Knight*, denial of reh'g en banc, 953 F.3d 216, 221-22 (2d Cir. 2020) (Barrington, J., concur. op.).

Therefore, Plaintiff now seeks leave to allege a similar description of the @realDonaldTrump Twitter Profile that the Southern District of New York and the panel of the Second Circuit previously analyzed and determined was a designated public forum. *Knight*, 302 F. Supp. 3d at 564 aff'd by 928 F.3d at 239.[2]

### 1. New Allegations in the Second Amended Complaint

The former President presented his Twitter account as being a presidential account as opposed to a personal account and used the account to take actions that can only be taken by the President as President of the United States. *See* SAC, ¶ 34. For example, the former President's Twitter Account was

---

[2] *vacated and remanded on other grounds sub nom. Biden*, 593 U.S. ___ , ___ S.Ct.___, 2021 U.S. LEXIS 1863, 2021 WL 1240931.

used in the course of the appointment and removal of officers and for conducting foreign policy.  *Id*. at ¶ 35. Between his inauguration and the events in this case, the former President used the @realDonaldTrump account as a channel for communicating and interacting with the public about his administration. *Id*. at ¶ 36. The page associated with the account is registered to Donald J. Trump, '45th President of the United States of America, Washington, D.C." *Id*. at 37. The @realDonaldTrump account is generally accessible to the public at large without regard to political affiliation or other limiting criteria. *Id*. at ¶ 38. Any member of the public can view his Tweets even without being signed into Twitter. *Id*. at ¶ 39.

Former President Trump often used @realDonaldTrump multiple times a day to announce, describe, and defend his policies, to promote his Administration's legislative agenda, to announce official decisions, to engage with foreign political leaders, to publicize state visits, to challenge media organizations' coverage of himself, and sometimes for non-government business. *Id*. at ¶ 40. For example, former President Trump used the @realDonaldTrump account to announce on June 7, 2017, that he intended to nominate Christopher Wray for the position of FBI Director.  *Id*. at ¶ 41. He also used the @realDonaldTrump account in removing then-Secretary of State Rex Tillerson and then-Secretary of Veterans Affairs David Shulkin. *Id*. at ¶ 42. The National Archives and Records Administration advised the White House that the President's Tweets from @realDonaldTrump are official records that must be preserved under the Presidential Records Act. *Id*. at ¶ 43. Former President Trump commonly engaged with the public and retweeted others' Tweets in his comment threads. *Id*. at ¶ 44. Twitter users frequently engaged with the former President's Tweets by liking, retweeting, commenting, and replying to his Tweets. *Id*. at ¶ 45.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 2. *Knight v. Trump* Litigation

In 2017, former President Trump and his advisor blocked seven users who had responded negatively to his Tweets. The seven users and the Knight First Amendment Institute sued former President Trump. The Southern District of New York held the blocking was illegal arbitrary censorship in a designated public forum. *See Knight*, 302 F.Supp.3d at 577. The Second Circuit affirmed and then denied rehearing en banc. *See Knight*, 928 F.3d at 238; denial of reh'g en banc, 953 F.3d at 221-222. On April 5, 2021, the Supreme Court granted certiorari and vacated the opinion due to the change in presidential administration. *Sub nom Biden v. Knight First Amendment Institute at Columbia University*, et. al., No. 20-197, 593 U.S. ___ , ___ S.Ct.___, 2021 U.S. LEXIS 1863, 2021 WL 1240931 (Apr. 5, 2021)

### 3. Courts Have Followed *Knight*

Despite the opinion being vacated due to the change in presidential administrations, the reasoning of the Second Circuit panel and the order denying rehearing en banc remain persuasive authority establishing that government officials create public fora when they post for official purposes and enable comments on social media. These courts specifically evaluated former President Trump's Twitter account. By using the @realDonaldTrump account as an official vehicle for governance and by making its interactive features accessible to the public without limitation, the former President created a public forum in the public's ability to comment. *Id*. at 239. The account is akin to a digital town hall, with the President speaking and citizens responding to him and engaging with one another about his statements. The opinion denying rehearing en banc points out that this conclusion is consistent with the Supreme Court's application of the public forum doctrine in analogous contexts. *See Knight*, 953 F.3d 216, 221-22. The Supreme Court has long held that open public meetings are public fora in which viewpoint

discrimination is impermissible. *City of Madison Joint Sch. Dist. No. 8 v. Wis. Emp. Relations Comm'n*, 429 U.S. 167, 175 (1976).

Furthermore, the notion that an official creates a public forum on social media when posting for official purposes and opening comments is supported by nearly every court across the country that has been confronted with this situation.[3] This caselaw trend is unlikely to change despite the vacating of the Second Circuit opinion. Only one other court of appeals has had an opportunity to rule on the merits in a published decision of whether a public official's social media account can be a public forum for First Amendment purposes, and it answered the question exactly as the Second Circuit did, applying the same legal framework to an analogous record. *See Davison v. Randall*, 912 F.3d 666 (4th Cir. 2019) Additionally, the Fifth and Eleventh Circuits also followed the same reasoning in unpublished opinions. *See Robinson v. Hunt Cnty.*, 921 F.3d 440, 447 (5th Cir. 2019) reh'g denied (May 16, 2019); *Attwood v. Clemons*, 818 F. App'x 863, 867 (11th Cir. 2020); *Charudattan v. Darnell*, 834 F. App'x 477, 480

---

[3] *See also Lewis v. Jones*, 440 F. Supp. 3d 1123, 1135 (E.D. Cal. 2020); *West v. Shea*, SACV 20-01293-CJC (DFMx), 2020 U.S. Dist. LEXIS 248837, __ F. Supp. 3d __, 2020 WL 8269540, at *6-7 (C.D. Cal. Nov. 12, 2020); *Garnier v. O'Connor-Ratcliff*, No. 3:17-cv-02215-BEN-JLB, 2021, U.S. Dist. LEXIS 7613, 2021 WL 129823, at *27 (S.D. Cal. Jan. 14, 2021); *Garnier v. Poway Unified Sch. Dist.*, No. 17-cv-2215-W (JLB), 2019 U.S. Dist. LEXIS 167247, 2019 WL 4736208, at *29 (S.D. Cal. Sept. 26, 2019); *Windom v. Harshbarger*, 396 F. Supp. 3d 675, 685 (N.D. W. Va. 2019); *One Wis. Now v. Kremer*, 354 F. Supp. 3d 940, 955 (W.D. Wis. 2019); *Attwood v. Clemons*, No. 1:18cv-38-MW/MJF, 2021 U.S. Dist. LEXIS 49586, 2021 WL 1020449, at *20 (N.D. Fla. Mar. 17, 2021); *Anderson v. Hansen*, No. 20-C-1305, 2021 U.S. Dist. LEXIS 27722, at *25-28 (E.D. Wis. Feb. 12, 2021); *Scarborough v. Frederick Cnty. Sch. Bd.*, No. 5:20-cv-00069, 2021 U.S. Dist. LEXIS 22977, 2021 WL 419180, at *17-19 (W.D. Va. Feb. 8, 2021); *Clark v. Kolkhorst*, No. A-19-CV-00198- LY-SH, 2020 U.S. Dist. LEXIS 193964, 2020 WL 6151570, at *19-20 (W.D. Tex. Oct. 20, 2020); *Felts v. Reed*, No. 20-cv-821-JAR, 2020 U.S. Dist. LEXIS 224489, 2020 WL 7041809, at *6 (E.D. Mo. Dec. 1, 2020); *Popp v. Monroe Cnty.*, No. 1:19-cv-03664-JPHDML, 2020 U.S. Dist. LEXIS 57042, at *2 (D. Ind. Mar. 31, 2020); *Am. Atheists v. Rapert*, No. 4:19-cv-00017-KGB, 2019 U.S. Dist. LEXIS 230493, at *79 (E.D. AR Sep. 30, 2019); *cf. Campbell v. Reisch*, No. 19-2994, 2021 U.S. App. LEXIS 2202, 2021 WL 261992, at *13 (8th Cir. Jan. 27, 2021) (the social media page of a candidate running for office was not official and thus did not create a public forum); *Phillips v. Ochoa*, No. 2:20-cv-00272-JAD-VCF, 2021 U.S. Dist. LEXIS 55683, 2021 WL 1131693, at *7-9 (D. Nev. Mar. 24, 2021) (same).

1   (11th Cir. 2020). Twitter cannot seriously dispute the countless number of courts that all follow the

2   same logic in holding that designated public fora are opened on its platform. Twitter does not otherwise

3   argue that there have been any alterations to their character as a public forum. *Cf. Venetian Casino*

4   *Resort, L.L.C. v. Local Joint Exec. Bd.*, 257 F.3d 937, 944 (9th Cir. 2001), cert. denied, 535 U.S. 905

5   (2002) (changing the public forum's protected status would require altering the objective physical

6   character or uses of the property).

7

8       Twitter's reliance on *Manhattan Community Access Corp. v. Halleck* is misplaced, as it

9   addressed a different function than the one here and actually restates the principle supporting Plaintiff's

10  argument that the function of regulating speech in a designated public forum satisfies the public

11  function test. 139 S.Ct. 1921, 1929 (2019). The function at issue in *Halleck* was the operation of public

12  access channels on a cable system, which, the Supreme Court explained, is not a traditional and

13  exclusive public function. *Id.* at 1931 ("But as the Court as long held, the fact that the government

14  licenses, contracts with, or grants a monopoly to a private entity does not convert the private entity into

15  a state actor—unless the private entity is performing a traditional, exclusive public function.").

16

17      Further, *Halleck* was a 5-4 decision that arose out of a dispute in New York that might have been

18  decided differently if the parties were in California. Here, the California Constitution confers even

19  broader and greater freedom of speech on private property than does the federal constitution and

20  therefore it is easier to establish a public forum. *See Fashion Valley Mall, LLC v. Nat'l Lab. Rel. Bd.*,

21  42 Cal. 4th 850, 863 (2007). California strikes a different balance of property rights compared to the

22  rest of the country in favor of peaceful exercise of free speech rights over property owners' exclusive

23  control of their property. *See PruneYard Shopping Center v. Robins*, 447 U.S. 74, 77 (1980). Therefore,

24  the rule espoused in *Halleck*, 139 S. Ct. at 1934 (a private entity who opens its property for speech by

25  others does not alone confer visitors with First Amendment rights) would apply in the opposite direction

26

27

28

1  in California. *Cf. Pruneyard*, 447 U.S. at 83 (private shopping center property must permit visitors to

2  exercise state-protected rights of free expression and petition).

### B.  Restrictions on Regulating Speech in a Public Forum Apply to Public and Private Actors

5  Plaintiff seeks leave to allege, as in *Knight*, the characteristics of the @realDonaldTrump Tweets

6  that made it a designated public forum.[4] Once it is established that the area where Plaintiff tried to

7  comment was a designated public forum, the law is straightforward: private entities face the same

8  restriction while regulating speech in a designated public forum that the government would face if it

9  were administering the forum. *See Lee v. Katz*, 276 F.3d, 556 (9th Cir. 2002); *Pindak v. Cook Cnty.*,

10  No. 10-cv-6237, 2013 U.S. Dist. LEXIS 41624, 2013 WL 1222038, at *13-15 (N.D. Ill. Mar. 25, 2013)

11  (First Amendment restricted private security officers); *Citizens To End Animal Suffering &*

12  *Exploitation, Inc. v. Faneuil Hall Marketplace, Inc.*, 745 F. Supp. 65, 72 (D. Mass. 1990) (First

13  Amendment restricted private security guards); *N. Shore Right to Life Comm. v. Manhasset Am. Legion*

14  *Post No.* 304, 452 F. Supp. 834, 840 (E.D.N.Y. 1978) (First Amendment restricted private group

15  selecting participants in a public parade).

16  In *Katz*, a private corporation that regulated speech in a plaza beside city-owned public facilities

17  leased from the City of Portland satisfied the state action doctrine because the private corporation was

18  regulating speech in a public forum, which is an "exclusively and traditionally public function." 276

19  F.3d 550, 554 (9th Cir. 2002).

---

[4] In a concurring opinion to the Supreme Court's order granting certiorari, Justice Thomas appeared to invite this suit extending First Amendment responsibilities to Twitter. *See Biden*, 2021 U.S. LEXIS 1863, 2021 WL 1240931, at *15 (Thomas, J., concur. op.) ("And no party has sued Twitter. The question facing the courts below involved only *whether a government actor* violated the First Amendment by blocking another Twitter user.") (emphasis added); *id.* at 3 ("We will soon have no choice but to address how our legal doctrines apply to highly concentrated, privately owned information infrastructure such as digital platforms.")

*Evans v. Newton* also supports this proposition that private actors are subject to "the constitutional limitations placed upon state action" when they take on governmental powers or functions. 382 U.S. 296, 299 (1966). In *Evans*, the Supreme Court held that management of a city park is a traditionally public function, such that private managers could not exclude persons from it on the basis of race. *Pindak* is another pure application of this law. 2013 U.S. Dist. LEXIS 41624, 2013 WL 1222038, at *13-15.

In *Pindak*, the plaintiff was a beggar who was kicked out of Daley Plaza several times by security guards for panhandling. *Id*. at *3. The court held that since Daley Plaza was a public forum, the guards who removed the plaintiff from the plaza violated the plaintiff's First Amendment rights regardless of whether they were public police officers or private security guards. *Id*. at *15 ("When [private security] personnel allegedly banned Plaintiff while he was making only non-threatening overtures, they took on the mantle of state actors regulating speech in a public forum. Plaintiff has adequately alleged to survive a motion to dismiss that Securitas is liable pursuant to § 1983 because its officers were performing a public function.")

### C.  Private Actors become State Actors when they Retain Ultimate Discretion and Control to Regulate Speech in a Designated Public Forum

In determining whether a private party becomes a state actor, the restriction applies to the party who retains ultimate discretion and control over content, speakers, and access to the designated public forum. A private entity that takes on such ultimate discretion in a designated public forum is restricted by the First Amendment as much as the government is. *See Katz*, 276 F.3d at 556 ("Portland retained little, if any, power over the [private entity's] free speech policies governing the [public forum.]"); *id*. (distinguishing *Lansing v. City of Memphis*, 202 F.3d 821, 828-29 (6th Cir. 2000)) (private company's conduct does not satisfy the state action because "the city retained ultimate control of the streets at all times.").

9

Other cases outside the Ninth Circuit also support the proposition that a private party regulating access to a public forum is a state actor equally bound by the First Amendment. In *Faneuil Hall Marketplace, Inc*., since a public forum existed in Faneuil Hall, the private company administering the forum was a state actor. 745 F. Supp. at 72 (The exercise of control over the public's right to use the [public forum] is subject to constitutional scrutiny, whether employed directly by the State or through delegation to a private party."). *See also N. Shore Right to Life*, 452 F. Supp. at 838 (a private group exercising discretion over which groups could march in a public Memorial Day parade was a state actor). Therefore, Twitter's retention of ultimate discretion over regulating speech in the public forum in this case means it is a state actor.

### D.   Twitter Being a Private Company is Not Determinative of Whether Its Conduct Satisfies the State Action Doctrine

Merely because Twitter is a private company does not support the argument that Twitter's conduct could never satisfy the state action doctrine. This reasoning runs contrary to the Supreme Court's state action doctrine that does not establish a bright line with private entities on one side and public entities on the other. *See Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (there is no "simple line" between state and private actors). Such a line would be overinclusive and underinclusive. For instance, a state officer does not always act under color of law and a private entity does not always fail the state action test. Further, a person or entity may be a state actor for some purposes but not for others. *See Katz*, 276 F.3d at 555 n. 5.

The focus here must be on the nature of the *activity performed*, not the nature of the *entity performing it*. *See Lugar v. Edmondson Oil Co*., 457 U.S. 922, 937 (1982) (analyzing the "source of the private actor's power").

10

1

2

### E.  The Space for Responding to former President Trump's Tweets Must be Analyzed Separately from Twitter as a Whole

3

4
Therefore, rather than analyzing Twitter as a whole, the Court must first determine the scope of

5
the relevant forum by considering "the access sought by the speaker." *Cornelius v. NAACP Legal*

6
*Defense & Ed. Fund*, 473 U.S. 788, 801 (1985). Here, Plaintiff sought access to respond to former

7
President's Tweets regarding election integrity. The Court must determine what function Twitter was

8
exercising in this protected space and cannot merely end the analysis by concluding that Twitter as a

9
whole is not a state actor.[5]

10
This principle that the function exercised in the area where access is sought must be analyzed

11
separately is expounded in *Fleck v. Trustees of University of Pennsylvania*, where, similar to Twitter,

12
it was recognized that the University of Pennsylvania ("Penn") as a whole was not a state actor. 995 F.

13
Supp. 2d 390, 399-402 (E.D. Pa. 2014). (Penn itself was not a "state actor" because although it was a

14
"state-aided" institution, it was not subject to "pervasive regulation by the state.") However, the

15
analysis did not end with the characterization that the entire entity was private.

16
*Fleck* next separately analyzed the private actor's power being exercised towards the plaintiffs

17
to determine whether the function exercised is a public function. *Id*. at 401. The actions of Penn's

18
purportedly private security officers in arresting Fleck satisfied the government function test because

19
they were exercising the public function of police power. *Id* (despite Penn not being a state actor

20
generally, Penn was a state actor in this case because it was exercising police services); *id*. at 402

21
("[w]here private security guards endowed by law with plenary police powers such that they are *de*

22
*facto* police officers, they may qualify as state actors under the public function test.") (alterations in

23

24

25
_____

26
[5] *ibid* (all courts facing this issue have held that the space for commenting on public officials' posts must

27
be analyzed separately for forum analysis).

11

28

original); *Dempsey v. Bucknell Univ.*, No. 4:11-cv-1679, 2012 U.S. Dist. LEXIS 62043, 2012 WL 1569826 at *5-6 (M.D. Pa. May 3, 2012) (campus police at a private institution acted under color of state law when they arrested the plaintiff).

Therefore, here, the Court must focus its forum analysis on the space Plaintiff desired to speak, in the space for comment on former President Trump's Tweets on the topic of election fraud. *See* SAC, ¶¶ 61-63, 68-69, 73-75.

### F.  None of the *Foman* Factors Weighing Against Amendment are Present

The factors to consider in determining whether to grant leave to amend were espoused in *Foman v. Davis*, 371 U.S. 178, 182 (1962). Regarding the *Foman* factors, in the absence of (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies in the complaint by prior amendment, (4) prejudice to defendant, and (5) futility of amendment, it is an abuse of discretion for a district court to refuse to grant leave to amend a complaint. *Id.*  Here, none of the *Foman* factors weigh against the filing of Plaintiff's proposed Second Amended Complaint. Therefore, Plaintiff requests that leave to amend should be granted.

#### 1.  There Has Been No Undue Delay

To evaluate undue delay, courts must determine "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 953 (9th Cir. 2006) (internal citations omitted). While delay alone will not justify the denial of leave to amend, "late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." *DCD Programs*, 833 F.2d at 186.

3:21-cv-00548-YGR

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

There has been no undue delay here. The Court recently dismissed this case for lack of subject matter jurisdiction on April 9, 2021, and Plaintiff is promptly seeking leave to amend by April 21, 2021. Thus, this factor favors granting leave to amend.

### 2.   There is No Bad Faith or Dilatory Motive

"Examples of bad faith have included-but are not limited to-instances in which a party makes a claim without alleging any newly discovered facts, makes a tactical decision to omit a claim to avoid summary judgment, or includes a claim to harass or burden the other party." *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1159 (N.D. Cal. 2010). Courts have also found bad faith where the requested amendment contains baseless legal theories that are presented for the purpose of prolonging the litigation. *See Griggs v. Pace American Group, Inc.*, 170 F.3d 877, 881 (9th Cir. 1999).

Here, there are no indications of bad faith. Plaintiff seeks to establish her meritorious legal theory by adding more specific allegations in the Second Amended Complaint to resolve the issues identified by the Court in its order dismissing the amended complaint for lack of subject matter jurisdiction. Therefore, this factor also favors granting leave to amend.

### 3.   There is No Repeated Failure to Cure Deficiencies

On April 9, 2021, the Court dismissed this case for lack of subject matter jurisdiction because Plaintiff had not sufficiently alleged a designated public forum. There has only been one dismissal order, so there could be no repeated failure to cure deficiencies. Therefore, as long as the Court finds Plaintiff has now plausibly alleged she tried to comment in a designated public forum, this factor also favors granting leave to amend, as well.

### 4.   There is No Undue Prejudice

Of all the *Foman* factors, "prejudice to the opposing party [ ] carries the greatest weight." *Eminence Capital LLC v. Aspeon Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).  Prejudice typically arises

3:21-cv-00548-YGR

where the opposing party is surprised with new allegations which require more discovery or will otherwise delay resolution of the case. *Acri v. International Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398-99 (9th Cir. 1986).

There is no surprise here because the facts are not disputed, and Plaintiff merely seeks leave to plead sufficient allegations establishing that the space surrounding the former President's Tweets was a designated public forum. There is little prejudice to Defendant at such an early stage of litigation, especially because discovery will not be much different with or without the amendment. *See, e.g., Finjan, Inc. v. Check Point Software Techs., Inc.*, No. 18-CV-02621-WHO, 2019 U.S. Dist. LEXIS 62473, 2019 WL 1455333, at *10 (N.D. Cal. Apr. 2, 2019) (no prejudice where proposed amendments would not require meaningful additional discovery). Defendant cannot identify any undue prejudice and this factor, too, favors granting leave to amend. *See, e.g., Genentech, Inc. v. Abbott Laboratories*, 127 F.R.D. 529, 531 (N.D. Cal. 1989) (additional expense and discovery is insufficiently prejudicial to deny a proposed amended complaint when the new facts came to light after the prior complaint was filed); *TaiMed Biologics, Inc. v. Numoda Corp.*, No. 10-03260-LB, 2011 U.S. Dist. LEXIS 48863, 2011 WL 1630041, at *11 (N.D. Cal. April 29, 2011) (no prejudice where Plaintiff gave prompt notice of its claim and amended complaint within the court's scheduling order).

### 5.   The Proposed Amendments are Not Futile

Under Rule 15(a), if the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. *Luis v. Metro. Life Ins. Co.*, 142 F. Supp. 3d 873, 881 (N.D. Cal. 2015). Therefore, denial of a motion for leave to amend on the ground of futility "is rare and courts generally defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed." *Clarke v. Upton*, 703 F.Supp.2d 1037, 1043 (E.D. Cal. 2010).

3:21-cv-00548-YGR

As explained above, the proposed SAC successfully establishes that the space where Plaintiff wished to comment was a designated public forum. Accordingly, Twitter's conduct satisfies the government function test when it arbitrarily censored Plaintiff in a public forum. *Lugar*, 457 U.S. at 937.

### i. The former President Tweeting Created the Privilege of Administeromg the Public Forum, Satisfying First *Lugar* Step is Satisfied

The first *Lugar* step is satisfied because the deprivation was only possible by the exercise of a privilege created by the State. *Id*. When former President Trump Tweeted for official purposes and opened his comment section for reply, he effectively created a designated public forum. *See Knight*, 928 F.3d at 238; SAC, ¶¶ 31-45. The privilege of administering the public forum was implicitly assigned to Twitter. *Id*. Twitter would never have had the power to regulate speech in a designated public forum without this governmental action.

### ii. Twitter's Conduct Regulating Speech in a Designated Public Forum Satisfies the Second *Lugar* Step

Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. "In order for private conduct to constitute governmental action, 'something more' must be present." *Lugar*, 457 U.S. at 939. Courts have identified "four factors or tests to identify what constitutes 'something more': (1) public function, (2) joint action, (3) governmental compulsion or coercion, and (4) governmental nexus." *Sutton v. Providence St. Joseph Med. Ctr*., 192 F.3d 826, 835-36 (9th Cir. 1999).

The test at issue here is the public function test. The relevant question is not simply whether a private group is serving a public function." *Jackson v. Metropolitan Edison Co*., 419 U.S. 345, 351 (1974). Rather, the question is whether the function performed has been "traditionally the exclusive prerogative of the State." *Id*. (emphasis in original) (citations omitted). Twitter's specific conduct at issue, blocking Plaintiff from a designated public forum, also satisfies the second step of the *Lugar*

analysis under the public function test because regulating speech in a public forum is the "quintessential" function that is both traditionally and exclusively the prerogative of the state. *Katz*, 276 F.3d at 556-57.

Because Ms. Rutenburg plausibly alleges Twitter was performing a function traditionally and exclusively reserved to the government when it arbitrarily censored her in a designated public forum, her proposed amendment is not futile. Thus, this factor, too, favors granting leave to amend. *See Finjan, Inc.*, 2019 U.S. Dist. LEXIS 62473, 2019 WL 1455333, at *16-17 ("[plaintiff] states sufficient facts that, if proven, would support [its claims.]").

### iii. Leave to Seek Declaratory Relief Should be Granted

If the Court grants leave to amend, Plaintiff also requests leave to seek declaratory relief.  28 U.S.C. § 2201 provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. *See Eureka Fed. Sav. & Loan Ass'n. v. Am. Cas. Co.*, 873 F.2d 229, 232 (9th Cir. 1989) (Declaratory relief is appropriate when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue.)

## V. CONCLUSION

Amendment would not be futile and all of the *Foman* factors favor granting leave to amend. Moreover, courts freely give leave to amend when justice so requires. Furthermore, Defendant cannot demonstrate undue prejudice, by Plaintiff filing the attached proposed SAC. For the foregoing reasons, Plaintiff respectfully requests that the Court grant her leave to amend.

Dated: April 21, 2021                    Respectfully submitted

                                         By:  /s/ Mark L. Javitch          .
                                         Mark L. Javitch (SBN 323729)
                                         480 S. Ellsworth Ave.

San Mateo CA 94401
Tel: (650) 781-8000
Fax: (650) 648-0705

*Attorney for Plaintiff*
MARIA RUTENBURG

17

## CERTIFICATE OF SERVICE

Filed electronically on this 21st day of April 2021, with the United States District Court for the Northern District of California CM/ECF system.

Notification was, therefore, automatically sent through the CM/ECF system to Counsel of record for Defendant:

Mark R. Conrad
Conrad | Metlitzky | Kane LLP
Four Embarcadero Center, Suite 1400
San Francisco, CA 94111
(415) 343-7102
Fax: (415) 343-7101
Email: mconrad@conmetkane.com
LEAD ATTORNEY

Grace Yu-Ting Yang
Conrad | Metlitzky | Kane LLP
Four Embarcadero Center
Suite1400
San Francisco, CA 94111-4164
415-469-1715
Fax: 415-343-7100

By: /s/ Mark L. Javitch         .
Mark L. Javitch

18

3:21-cv-00548-YGR