Mark L. Javitch (CA SBN 323729)
JAVITCH LAW OFFICE
480 S. Ellsworth Ave.
San Mateo, CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705
mark@javitchlawoffice.com
*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA RUTENBURG,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>TWITTER, INC.,<br><br>　　　　　Defendant. | Case No.:  4:21-cv-00548-YGR<br><br>**NOTICE OF MOTION AND SECOND MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**<br><br>**Hearing Date: July 20, 2021**<br>**Time: 2:00 p.m.** |

i

## NOTICE OF MOTION AND SECOND MOTION FOR LEAVE TO FILE
## SECOND AMENDED COMPLAINT

PLAINTIFF HEREBY PROVIDES NOTICE that on July 20, 2021, in Courtroom 1, on the 4th Floor of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, California, 94612, or if the Court determines is appropriate, through Zoom Video Conference, at 2:00 p.m., or as soon thereafter as the matter may be heard, Plaintiff MARIA RUTENBURG will and hereby does, move the Court, for the second time, for leave to file Plaintiff's [Proposed] Second Amended Complaint ("SAC") a copy and redline version of which are concurrently filed with this Notice of Motion and Motion as Exhibit "A" and "B" to the Declaration of Mark L. Javitch, ¶¶ 5-6.

The Motion will be based on this Notice of Motion and Second Motion for Leave to Amend, the Memorandum of Points and Authorities, the proposed SAC, the declaration of Mark L. Javitch, and at the Court's discretion, oral argument.

Date: June 10, 2021                         By: /s/ Mark L. Javitch
                                             Mark L. Javitch

                                            *Attorney for Plaintiff*
                                            MARIA RUTENBURG

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................1

II.     FACTS & PROCEDURAL HISTORY ....................................................1

III.    LEGAL STANDARD FOR LEAVE TO AMEND..................................2

IV.     THE COURT SHOULD GRANT LEAVE TO AMEND .......................2

        A.      Twitter's Conduct Satisfies the State Action Doctrine ............................3

                1.   The Constitution Restricts Twitter Even as a Private Entity When It
                     Regulates Speech in a Designated Public Forum ................................3

                2.   Twitter Retained Ultimate Discretion & Control to Regulate
                     Speech in the Designated Public Forum ..........................................5

        B.      The Space for Responding to former President Trump's Tweets
                Must be Analyzed Separately from Twitter as a Whole ..........................7

        C.      None of the Other *Foman* Factors Weighing Against Amendment Are Present.....9

                1.   There Has Been No Undue Delay..................................................9

                2.   There is No Bad Faith or Dilatory Motive........................................10

                3.   There is No Repeated Failure to Cure Deficiencies............................10

                4.   There is No Undue Prejudice ......................................................10

                5.   The Proposed Amendments Are Not Futile....................................11

                     i.    The Former President Tweeting Created the Privilege
                           of Administering the Forum, Satisfying the First *Lugar* Step ..........12

                     ii.   Twitter's Conduct Regulating Speech in a
                           Designated Public Forum Satisfies the Second *Lugar* Step .............12

                     iii.  Leave to Seek Declaratory Relief Should be Granted .....................14

V.      CONCLUSION.............................................................................................14

1

## <u>TABLE OF AUTHORITIES</u>

2
### <u><em>Cases</em></u>

3
<u>Supreme Court Authorities</u>

4
*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*,
   531 U.S. 288, 295 (2001)..................................................................................................3, 12

5
*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*,
6
   473 U.S. 788 (1985)................................................................................................................7

7
*Evans v. Newton*,
8
   382 U.S. 296, 299 (1966).......................................................................................................4

9
*Foman v. Davis*,
   371 U.S. 178 (1962) ................................................................................. 2, 9-10, 14
10

11
*Jackson v. Metropolitan Edison Co.*,
   419 U.S. 345, 351 (1974)................................................................................................ 12-13
12

13
*Lugar v. Edmondson Oil Co.*,
   457 U.S. 922, 937 (1982)................................................................................................ 12-13

14
<u>Circuit Court Authorities</u>

15
*Acri v. Int'l Ass'n of Mach. & Aerospace Workers*,
16
   781 F.2d 1393 (9th Cir. 2020) .............................................................................................10

17
*AmerisourceBergen Corp. v. Dialysist West, Inc.*,
18
   465 F.3d 946 (9th Cir. 2006) .................................................................................................9

19
*Campbell v. Reisch*,
   2021 U.S. App. LEXIS 2202, 2021 WL 261992 (8th Cir. Jan. 27, 2021)..............................6
20

21
*DCD Programs, Ltd. v. Leighton*,
   833 F.2d 183, 185 (9th Cir. 1987) ......................................................................................2, 9

22
*Dworkin v. Hustler Magazine*,
23
   867 F.2d 1188 (9th Cir. 1989) ...............................................................................................2

24
*Eminence Capital LLC v. Aspeon Inc.*,
   316 F.3d 1048, 1052 (9th Cir. 2003) ...................................................................................12
25

26
*Eureka Fed Sav. & Loan Ass'n v. Am. Cas. Co.*,
   873 F.2d 229 (9th Cir. 1989) ...............................................................................................14

27

iv

28

1

Circuit Court Authorities (continued)

2

3

*Gorenc v. Salt River Project Agric. Improvement & Power Dist.*,
869 F.2d 503 (9th Cir. 1989) ........................................................................3

4

*Griggs v. Pace Am. Grp., Inc.*,
170 F.3d 877 (9th Cir. 1999) ......................................................................10

5

6

*Lansing v. City of Memphis*,
202 F.3d 821, 828-29 (6th Cir. 2000) ...........................................................8

7

8

*Lee v. Katz*,
276 F.3d 556 (9th Cir. 2002) ..........................................................3-5, 12-13

9

10

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) (en banc) ......................................................2

11

*Morongo Band of Mission Indians v. Rose*,
893 F.2d 1074 (9th Cir. 1990) ......................................................................2

12

13

*Venetian Casino Resort, L.L.C. v. Local Joint Exec. Bd.*,
257 F.3d 937, 944 (9th Cir. 2001) .................................................................6

14

District Court Authorities

15

16

*Am. Atheists v. Rapert*,
2019 U.S. Dist. LEXIS 230493 (E.D. Ark. Sep. 30, 2019) .........................6

17

18

*Anderson v. Hansen*,
2021 U.S. Dist. LEXIS 27722 (E.D. Wis. Feb. 12, 2021) ...........................6

19

20

*Attwood v. Clemons*,
2021 U.S. Dist. LEXIS 49586, 2021 WL 1020449 (N.D. Fla. Mar. 17, 2021) ...........................6

21

*Citizens to End Animal Suffering & Exploitation, Inc. v. Faneuil Hall Marketplace, Inc.*,
745 F. Supp. 65, 72 (D. Mass. 1990) .........................................................3, 5

22

23

*Clark v. Kolkhorst*,
2020 U.S. Dist. LEXIS 193964, 2020 WL 6151570 (W.D. Tex. Oct. 20, 2020) .......................6

24

25

*Clark v. Upton*,
703 F.Supp.2d 1037, 1043 (E.D. Cal. 2010) ................................................6

26

*Felts v. Reed*,
2020 U.S. Dist. LEXIS 224489, 2020 WL 7041809 (E.D. Mo. Dec. 1, 2020) .........................6

27

28

District Court Authorities (continued)

*Fleck v. Trs. of Univ. of Penn.,*
    995 F. Supp. 2d 390 (E.D. Pa. 2014) ...........................................................................9

*Finjan, Inc. v. Check Point Software Techs., Inc.,*
    2019 U.S. Dist. LEXIS 62473, 2019 WL 1455333 (N.D. Cal. Apr. 2, 2019) .....................11, 13

*Genentech, Inc. v. Abbott Laboratories,*
    127 F.R.D. 529 (N.D. Cal. 1989) ...............................................................................11

*Garnier v. O'Connor-Ratcliffe,*
    2021 U.S. Dist. Lexis 761, 2021 WL 129823 (S.D. Cal. Jan. 14, 2021) ...................................6

*Garnier v. Poway Unified Sch. Dist.,*
    2019 U.S. Dist. LEXIS 167247 (S.D. Cal. Sep. 26, 2019) ..........................................6

*Knight First Amendment Inst. v. Trump,*
    302 F. Supp. 3d 541, 577 (S.D.N.Y. 2018)..................................................................12

*Lewis v. Jones,*
    440 F. Supp. 3d 1123, 1135 (E.D. Cal. 2020)...............................................................6

*Luis v. Metro Life Ins. Co.,*
    142 F. Supp. 3d 873, 881 (N.D. Cal. 2015) ...............................................................11

*N. Shore Right to Life Comm. V. Manhasset Am. Legion Post No. 304,*
    2013 U.S. Dist. Lexis 41624, 2013 WL 1222038 (E.D.N.Y. 1978)........................................3, 5

*One Wis. Now. v. Kremer,*
    354 F. Supp. 3d 940, 955 (W.D. Wis. 2019) .............................................................6

*Pindak v. Cook Cnty.,*
    2013 U.S. Dist. Lexis 41624, 2013 WL 1222038 (N.D. Ill. Mar. 25, 2013) ...........................3-4

*Popp v. Monroe Cnty.,*
    2020 U.S. Dist. Lexis 57042 (D. Ind. Mar. 31, 2020) ..................................................6

*Scarborough v. Frederick Cnty. Sch. Bd.,*
    2021 U.S. Dist. Lexis 22977, 2021 WL 419180 (W.D. Va. Feb. 8, 2021)................................6

*Serpa v. SBC Telecomms., Inc.,*
    318 F. Supp. 2d 865 (N.D. Cal. 2004) .......................................................................2

4:21-cv-00548-YGR

1

District Court Authorities (continued)

*Stearns v. Select Comfort Retail Corp.*,
  763 F. Supp. 2d 1128 (N.D. Cal. 2010) ......................................................................10

*Phillips v. Ochoa*,
  2021 U.S. Dist. Lexis 55683, 2021 WL 1131693 (D. Nev.. Mar. 24, 2021)...........................6

*TaiMed Biologics, Inc. v. Nuomda Corp*,
  2011 U.S. Dist. LEXIS 48863, 2011 WL 1630041 (N.D. Cal. Apr. 29, 2011) ........................11

*Venetian Casino Resort, L.L.C. v. Local Joint Executive Bd. Of Las Vegas*,
  45 F. Supp.2d 1027 (D. Nev. 1999) ...........................................................................13

*West v. Shea*,
  2020 U.S. Dist. LEXIS 248837, __ F. Supp. 3d __, (C.D. Cal. Nov. 12, 2020) ........................6

*Windom v. Harshbarger*,
  396 F. Supp. 3d 675 (N.D. W. Va. 2019) .......................................................................6

**Statutes, Rules, and Other Authorities**

U.S. Constitution.................................................................................................. *passim*
42 U.S.C. § 1983 ...................................................................................................1, 4
Fed. R. Civ. P. 15 ...................................................................................................2, 11
28 U.S.C. § 2201 ...................................................................................................2, 14

4:21-cv-00548-YGR

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   <u>INTRODUCTION</u>

Plaintiff seeks leave to file the Second Amended Complaint establishing Twitter's conduct satisfies the Supreme Court's state action doctrine. Twitter's conduct satisfies the government function test by blocking Plaintiff from commenting on certain of the former President's Tweets, a designated public forum that Twitter controlled. Therefore, the proposed SAC is permissible under Federal Rule of Civil Procedure 15(a)(2) and Twitter will not be unduly prejudiced by the filing of the proposed SAC.

### II.   <u>STATEMENT OF FACTS AND PROCEDURAL HISTORY</u>

On January 22, 2021, Plaintiff filed a Complaint under 42 U.S.C. § 1983 alleging that Twitter's conduct satisfied the state action doctrine and therefore could be held liable for violations of Plaintiff's First and Fourteenth Amendment rights when it arbitrarily censored and blocked Plaintiff's ability to comment on the topic of election integrity in the designated public forum that was the space where users could respond to former President Trump's Tweets. (*See* Dkt. No. 1). On January 26, 2021, Plaintiff Filed her Amended Complaint. (*See* Dkt. No. 2). On January 27, 2021, Rutenburg filed a motion for a temporary restraining order. (*See* Dkt. Nos. 9, 10). The Court denied the motion. (*See* Dkt. No. 11.)

On February 11, 2021, the Court issued an Order to Show Cause ("OSC") why the case should not be dismissed for lack of subject matter jurisdiction. (*See* Dkt. No. 16). After considering responses to the OSC, on April 9, 2021, the Court dismissed the case for lack of subject matter jurisdiction. (*See* Dkt. 21). On April 21, 2021, Plaintiff filed her first motion for leave to file the Second Amended Complaint. (*See* Dkt. 22). On May 27, 2021, the Court denied Plaintiff's first motion and entered

judgment against Plaintiff. (*See* Dkts. 25-26). Now before the Court is Plaintiff's second motion for leave to file the proposed Second Amended Complaint.

### III.   <u>LEGAL STANDARD</u>

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely granted when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (cleaned up). The liberal policy towards amendment is well-established in the Ninth Circuit. *See, e.g., Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) ("leave to amend 'shall be freely given when justice so requires,' Fed. R. Civ. P. 15(a), and this policy is to be applied with extreme liberality"). "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *DCD Programs, Ltd v. Leighton*, 833 F.2d 183, 185 (9th Cir. 1987) (citation omitted). "The party opposing leave to amend bears the burden of showing prejudice." *Serpa v. SBC Telecomms., Inc.*, 318 F. Supp. 2d 865, 870 (N.D. Cal. 2004) (cleaned up).

### IV.   <u>THE COURT SHOULD GRANT LEAVE TO AMEND</u>

On May 28, 2021, the Court dismissed the Amended Complaint because Plaintiff did not sufficiently allege that Twitter, a Delaware corporation, is a state actor exercising state authority. (*See* Dkt. 25). In order to hold Twitter liable for constitutional violations, a plaintiff must show that "the private parties' infringement somehow constitutes state action." *Dworkin v. Hustler Magazine*, 867 F.2d 1188, 1200 (9th Cir. 1989). The Court should allow Plaintiff to file the proposed SAC because adding allegations sufficient to establish that Twitter's conduct constitutes state action conveys subject matter jurisdiction over this case.

**A.  Twitter's Conduct Satisfies the State Action Doctrine**

Twitter's status as a Delaware corporation is not dispositive in determining whether Twitter's conduct satisfies the state action doctrine. This approach would run contrary to the Supreme Court's state action doctrine, that does not establish a bright line with private corporations on one side and the government on the other. *See Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (there is no "simple line" between state and private actors). Such a line would be overinclusive and underinclusive. A state officer is not always a state actor and a private entity does not always fail the state action test. Further, a person or entity may be a state actor for some purposes but not for others. *See Gorenc v. Salt River Project Agric. Improvement & Power Dist.*, 869 F.2d 503, 509 (9th Cir. 1989) (power district, although a limited political subdivision, was not a state actor for employment purposes).

Instead, the focus here is on whether the conduct at issue here is conduct that satisfies the Supreme Court's state action doctrine.

**1.  The Constitution Restricts Twitter Even as a Private Entity When It Regulates Speech in a Designated Public Forum**

Twitter is a state actor here because it regulates Plaintiff's speech in a designated public forum. Since the space Plaintiff tried to access was a designated public forum, the First Amendment restricts the entity, *public or private*, that retains discretion to decide who may access the forum or what topics may be discussed. *See Lee v. Katz*, 276 F.3d, 556 (9th Cir. 2002); *Pindak v. Cook Cnty.*, No. 10-cv-6237, 2013 U.S. Dist. LEXIS 41624, 2013 WL 1222038, at *13-15 (N.D. Ill. Mar. 25, 2013) (First Amendment restricts private security officers); *Citizens To End Animal Suffering & Exploitation, Inc. v. Faneuil Hall Marketplace, Inc.*, 745 F. Supp. 65, 72 (D. Mass. 1990) (First Amendment restricts private security guards); *N. Shore Right to Life Comm. v. Manhasset Am. Legion Post No.* 304, 452 F. Supp. 834, 840 (E.D.N.Y. 1978) (First Amendment restricts private group selecting participants in a

3

public parade). Therefore, private entity or not, Twitter's conduct in regulating Plaintiff's speech in a designated public forum satisfies the government function test of the state action doctrine.

This case is bound by the Ninth Circuit precedent in *Katz*. In *Katz*, a private corporation was held to be state actor under the First Amendment for regulating speech in a designated public forum. The Ninth Circuit held that the private corporation satisfied the state action doctrine because the private corporation was performing an "exclusively and traditionally public function regulating speech in a public forum." 276 F.3d 550, 554 (9th Cir. 2002).

Cases outside the Ninth Circuit also support the notion that private corporations are held to the same standards as the government when they perform functions that are exclusively and traditionally public functions. *Evans v. Newton* also holds private actors to "the constitutional limitations placed upon state action" when they take on governmental powers or functions. 382 U.S. 296, 299 (1966). In *Evans*, the Supreme Court held that management of a city park is a traditionally public function, such that private managers could not exclude persons from it on the basis of race. *Id*.

*Pindak* is another pure application of this law. 2013 U.S. Dist. LEXIS 41624, 2013 WL 1222038, at *13-15. In *Pindak*, the plaintiff was a beggar who was kicked out of Daley Plaza several times by security guards for panhandling. *Id*. at *3. The court held that since Daley Plaza was a public forum, the guards who removed the plaintiff from the plaza violated the plaintiff's First Amendment rights regardless of whether they were public police officers or private security guards. *Id*. at *15 ("When [private security] personnel allegedly banned Plaintiff while he was making only non-threatening overtures, they took on the mantle of state actors regulating speech in a public forum. Plaintiff has adequately alleged to survive a motion to dismiss that Securitas is liable pursuant to § 1983 because its officers were performing a public function.")

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 2. Twitter's Conduct Satisfies the State Action Doctrine Because it Retained Ultimate Discretion and Control to Regulate Speech in the Designated Public Forum

A private party who retains ultimate discretion and control over content, speakers, and access to a designated public forum must be treated as a state actor and held to the same standard as the government would be if it were administering the public forum. *See Katz*, 276 F.3d at 556 ("Portland retained little, if any, power over the [private entity's] free speech policies governing the [public forum.]"); *id.* (distinguishing *Lansing v. City of Memphis*, 202 F.3d 821, 828-29 (6th Cir. 2000)) (private company's conduct *does not* satisfy the state action because "*the city* retained ultimate control of the streets at all times.") (emphasis added). As demonstrated by their blocking Plaintiff from the designated public forum and eventually removing the entire space from its website, all contrary to Plaintiff's wishes, Twitter retained ultimate discretion to control speech in the designated public forum. SAC, ¶¶ 69-85.

Other cases outside the Ninth Circuit also support the proposition that a private party with discretion to regulate access to a public forum is a state actor bound by the Constitution. In *Faneuil Hall Marketplace, Inc.*, since a public forum existed in Faneuil Hall, the private company administering the forum was a state actor. 745 F. Supp. at 72 (The exercise of control over the public's right to use the [public forum] is subject to constitutional scrutiny, whether employed directly by the State or through delegation to a private party."); *see also N. Shore Right to Life*, 452 F. Supp. at 838 (a private entity  selecting which groups could march in a public Memorial Day parade was a state actor). Therefore, Twitter's retention of ultimate discretion to regulate speech in the designated public forum in this case means it is a state actor.

4:21-cv-00548-YGR

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### B.  The Space for Responding to former President Trump's Tweets Must be Analyzed Separately from Twitter as a Whole

Therefore, rather than analyzing Twitter as a whole, the Court must first determine the scope of the relevant forum by considering "the access sought by the speaker." *Cornelius v. NAACP Legal Defense & Ed. Fund*, 473 U.S. 788, 801 (1985). Here, Plaintiff sought access to the space for responding to former President's Tweets regarding election integrity. The reasoning of every court across the country that has been confronted with this situation supports the notion that this space is a designated public forum.[1] Twitter has specifically been on notice that this exact space in question was a designated public forum as early as May 23, 2018, when it was acknowledged by a district court, and Twitter continued to permit its resources to be used in operation of the forum, or at least did nothing to prevent the development of the constitutionally protected space until the events in this case. SAC, ¶¶ 36-48. Twitter cannot seriously dispute the countless number of courts that all follow the same logic in holding

---

[1] *See also Lewis v. Jones*, 440 F. Supp. 3d 1123, 1135 (E.D. Cal. 2020); *West v. Shea*, SACV 20-01293-CJC (DFMx), 2020 U.S. Dist. LEXIS 248837, __ F. Supp. 3d __, 2020 WL 8269540, at *6-7 (C.D. Cal. Nov. 12, 2020); *Garnier v. O'Connor-Ratcliff*, No. 3:17-cv-02215-BEN-JLB, 2021, U.S. Dist. LEXIS 7613, 2021 WL 129823, at *27 (S.D. Cal. Jan. 14, 2021); *Garnier v. Poway Unified Sch. Dist.*, No. 17-cv-2215-W (JLB), 2019 U.S. Dist. LEXIS 167247, 2019 WL 4736208, at *29 (S.D. Cal. Sept. 26, 2019); *Windom v. Harshbarger*, 396 F. Supp. 3d 675, 685 (N.D. W. Va. 2019); *One Wis. Now v. Kremer*, 354 F. Supp. 3d 940, 955 (W.D. Wis. 2019); *Attwood v. Clemons*, No. 1:18cv-38-MW/MJF, 2021 U.S. Dist. LEXIS 49586, 2021 WL 1020449, at *20 (N.D. Fla. Mar. 17, 2021); *Anderson v. Hansen*, No. 20-C-1305, 2021 U.S. Dist. LEXIS 27722, at *25-28 (E.D. Wis. Feb. 12, 2021); *Scarborough v. Frederick Cnty. Sch. Bd.*, No. 5:20-cv-00069, 2021 U.S. Dist. LEXIS 22977, 2021 WL 419180, at *17-19 (W.D. Va. Feb. 8, 2021); *Clark v. Kolkhorst*, No. A-19-CV-00198- LY-SH, 2020 U.S. Dist. LEXIS 193964, 2020 WL 6151570, at *19-20 (W.D. Tex. Oct. 20, 2020); *Felts v. Reed*, No. 20-cv-821-JAR, 2020 U.S. Dist. LEXIS 224489, 2020 WL 7041809, at *6 (E.D. Mo. Dec. 1, 2020); *Popp v. Monroe Cnty.*, No. 1:19-cv-03664-JPHDML, 2020 U.S. Dist. LEXIS 57042, at *2 (D. Ind. Mar. 31, 2020); *Am. Atheists v. Rapert*, No. 4:19-cv-00017-KGB, 2019 U.S. Dist. LEXIS 230493, at *79 (E.D. AR Sep. 30, 2019); *cf. Campbell v. Reisch*, No. 19-2994, 2021 U.S. App. LEXIS 2202, 2021 WL 261992, at *13 (8th Cir. Jan. 27, 2021) (the social media page of a candidate running for office was not official and thus did not create a public forum); *Phillips v. Ochoa*, No. 2:20-cv-00272-JAD-VCF, 2021 U.S. Dist. LEXIS 55683, 2021 WL 1131693, at *7-9 (D. Nev. Mar. 24, 2021) (same).

that designated public fora are opened on its platform.[2] Twitter just ignores the constitutional protections inherent in such a zone and does not even attempt to argue that the space somehow ceases to be a designated public forum after its status as an officially protected zone became court acknowledged. *Cf. Venetian Casino Resort, L.L.C. v. Local Joint Exec. Bd*., 257 F.3d 937, 944 (9th Cir. 2001) ("[T]o change a property's public forum status, the state must alter the objective physical character or uses of the property, but that has not happened here.") (internal citation omitted).

The constitutionally protected zone for commenting on a Tweet of the former President's was at the bottom of each Tweet, and additional replies could be interacted with by scrolling below the Tweet. The following is an example Tweet:



SAC, ¶ 67. According to the metrics on this example Tweet, at the time of the screenshot, it had generated over 14,000 comments, 22,000 retweets, and 90,000 likes in the protected zone. *Id*. ¶ 68.

---

[2] In a concurring opinion to the Supreme Court's order granting certiorari, Justice Thomas appeared to invite this suit exploring Twitter's First Amendment responsibilities. *See Biden*, 2021 U.S. LEXIS 1863, 2021 WL 1240931, at *15 (Thomas, J., concur. op.) ("And no party has sued Twitter. The question facing the courts below involved only *whether a government actor* violated the First Amendment by blocking another Twitter user.") (emphasis added); *id*. at 3 ("We will soon have no choice but to address how our legal doctrines apply to highly concentrated, privately owned information infrastructure such as digital platforms.")

7

However, Twitter's policy of open access to the designated public forum that it maintained for over two years since May 23, 2018, abruptly changed during the events in this lawsuit.

On January 6, 2021, the former President Tweeted a video of himself speaking. *Id*. ¶ 69.



As can be seen by comparing this Tweet to the example Tweet, Twitter blocked access to the constitutionally protected zone. *Id*. ¶ 70. Plaintiff tried to comment and reply to the Tweet, only to find that Defendant had removed Plaintiff's ability to comment and reply. *Id*. Instead of the seeing the space that normally permitted public response, Twitter cordoned off that area and instead applied a red warning label to the Tweet that said: "This claim of election fraud is disputed, and this Tweet can't be replied to, Retweeted, or liked due to a risk of violence. *Id*. ¶ 71. Plaintiff and the public were entirely prevented from commenting on and interacting with the Tweet. *Id*. ¶ 72. Then, in the evening, Defendant removed the video and replaced it with a message that said: "This Tweet violated is no longer available." *Id*. ¶ 73.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Court must determine what function Twitter was exercising in this protected space and cannot merely end the analysis by concluding that the Twitter as a whole is not a state actor.[3] Therefore, here, the Court must focus its forum analysis on the space Plaintiff desired to speak, in the space for comment on former President Trump's Tweets on the topic of election integrity. *See* SAC, ¶¶ 69-70. *Fleck v. Trustees of University of Pennsylvania*, 995 F. Supp. 2d 390, 399-402(E.D. Pa. 2014) (despite Penn not being a state actor generally, Penn's exercise of police services was state action). For the purposes of the government function test, the function under analysis is Twitter's regulation of speech in the space for comment on the former President's Tweets, a designated public forum.

### C.  None of the *Foman* Factors Weighing Against Amendment are Present

The factors to consider in determining whether to grant leave to amend were espoused in *Foman v. Davis*, 371 U.S. 178, 182 (1962). Regarding the *Foman* factors, in the absence of (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies in the complaint by prior amendment, (4) prejudice to defendant, and (5) futility of amendment, it is an abuse of discretion for a district court to refuse to grant leave to amend a complaint. *Id.*  Here, none of the *Foman* factors weigh against the filing of Plaintiff's proposed Second Amended Complaint. Therefore, Plaintiff requests that leave to amend should be granted.

### 1.  There Has Been No Undue Delay

To evaluate undue delay, courts must determine "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *AmerisourceBergen Corp. v. Dialysist West, Inc*., 465 F.3d 946, 953 (9th Cir. 2006) (internal citations omitted). While delay

---

[3] *ibid* (all courts facing this issue have held that the space for commenting on public officials' posts must be analyzed separately for public forum analysis).

4:21-cv-00548-YGR

alone will not justify the denial of leave to amend, "late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." *DCD Programs*, 833 F.2d at 186.

Plaintiff has not unduly delayed and further does not raise any new theories. The Court recently dismissed this case for lack of subject matter jurisdiction on May 28, 2021, and Plaintiff is promptly seeking leave to amend by June 10, 2021. Thus, this factor favors granting leave to amend.

### 2.   There is No Bad Faith or Dilatory Motive

"Examples of bad faith have included-but are not limited to-instances in which a party makes a claim without alleging any newly discovered facts, makes a tactical decision to omit a claim to avoid summary judgment, or includes a claim to harass or burden the other party." *Stearns v. Select Comfort Retail Corp*., 763 F. Supp. 2d 1128, 1159 (N.D. Cal. 2010). Courts have also found bad faith where the requested amendment contains baseless legal theories that are presented for the purpose of prolonging the litigation. *See Griggs v. Pace Am. Grp., Inc*., 170 F.3d 877, 881 (9th Cir. 1999).

Here, there are no indications of bad faith. Plaintiff seeks to establish her meritorious legal theory by adding more specific allegations in the SAC to resolve the issues identified by the Court in its order denying leave to amend. Therefore, this factor also favors granting leave to amend.

### 3.   There is No Repeated Failure to Cure Deficiencies

On April 9, 2021, and again on May 28, 2021, the Court dismissed this case for lack of subject matter jurisdiction because Plaintiff had not sufficiently alleged Twitter was a state actor. There have only been two dismissal orders, so that does not amount to a repeated failure to cure deficiencies. Therefore, as long as the Court finds Plaintiff has now plausibly alleged Twitter is a state actor, this factor also favors granting leave to amend, as well.

### 4.   There is No Undue Prejudice

Of all the *Foman* factors, "prejudice to the opposing party [ ] carries the greatest weight." *Eminence Capital LLC v. Aspeon Inc*., 316 F.3d 1048, 1052 (9th Cir. 2003).  Prejudice typically arises where the opposing party is surprised with new allegations which require more discovery or will otherwise delay resolution of the case. *Acri v. Int'l Ass'n of Mach. & Aerospace Workers*, 781 F.2d 1393, 1398-99 (9th Cir. 1986).

There is no surprise here because the facts are not disputed, the new allegations will not require additional discovery, and Plaintiff merely seeks leave to plead sufficient allegations establishing that Twitter was exercising state action. There is little prejudice to Defendant at such an early stage of litigation, especially because discovery will not be much different with or without the amendment. *See, e.g., Finjan, Inc. v. Check Point Software Techs., Inc*., No. 18-CV-02621-WHO, 2019 U.S. Dist. LEXIS 62473, 2019 WL 1455333, at *10 (N.D. Cal. Apr. 2, 2019) (no prejudice where proposed amendments would not require meaningful additional discovery). Defendant cannot identify any undue prejudice and this factor, too, favors granting leave to amend.  *See, e.g., Genentech, Inc. v. Abbott Laboratories*, 127 F.R.D. 529, 531 (N.D. Cal. 1989) (additional expense and discovery is insufficiently prejudicial to deny a proposed amended complaint when the new facts came to light after the prior complaint was filed); *TaiMed Biologics, Inc. v. Numoda Corp*., No. 10-03260-LB, 2011 U.S. Dist. LEXIS 48863, 2011 WL 1630041, at *11 (N.D. Cal. April 29, 2011) (no prejudice where Plaintiff gave prompt notice of its claim and amended complaint within the court's scheduling order).

### 5.   The Proposed Amendments are Not Futile

Under Rule 15(a), if the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. *Luis v. Metro. Life Ins. Co*., 142 F. Supp. 3d 873, 881 (N.D. Cal. 2015). Therefore, denial of a motion for leave

4:21-cv-00548-YGR

to amend on the ground of futility "is rare and courts generally defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed." *Clarke v. Upton*, 703 F.Supp.2d 1037, 1043 (E.D. Cal. 2010).

As explained above, the proposed SAC establishes Twitter is a state actor when it regulates speech in a designated public forum under the government function test. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Katz*, 276 F.3d at 554-55.

> ### i. The former President Making Official Announcements on Twitter Created the Privilege of Administering the Public Forum, Satisfying First *Lugar* Step is Satisfied

The first *Lugar* step is satisfied because the deprivation was only possible by the exercise of a privilege created by the Government. *Id*. When former President Trump choose Twitter to make official announcements and opened his comment section for reply, he exercised governmental control that turned the space for responding to his Tweets into a designated public forum. *See Knight*, 302 F. Supp. 3d at 568 ("[E]xercis[ing control] over the account and certain of its features is governmental in nature"); SAC, ¶¶ 31-48. The privilege and responsibility of administering the designated public forum was assigned to Twitter. *Id*. Twitter has been on notice that it was responsible for administering this designated public forum since at least May 23, 2018, when a court first held that the space constituted a designated public forum. *Id*., ¶ 51. Twitter cooperated and allowed its resources to be employed to develop the designated public forum. *Id*., ¶¶ 53-54. Twitter would never have had the power to regulate speech in a designated public forum without this governmental action.

> ### ii. Twitter's Conduct Regulating Speech in a Designated Public Forum Satisfies the Second *Lugar* Step

Second, the party charged with the deprivation must be a person who may fairly be said to be a governmental actor. "In order for private conduct to constitute governmental action, 'something more'

12

4:21-cv-00548-YGR

must be present." *Lugar*, 457 U.S. at 939. That 'something more' means that the conduct must satisfy the public function test.

"Under the public function test, 'when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations.'" *Katz*, 276 F.3d at 554-55 (citing *Evans v. Newton*, 382 U.S. 296, 299). To satisfy the public function test, the function at issue must be both traditionally and exclusively governmental. *Katz*, 276 F.3d at 555.

Therefore, the question is whether the function performed, regulating speech in a public forum, has been "traditionally the exclusive prerogative of the State." *Jackson v. Metro. Edison Co*., 419 U.S. 345, 351 (1974). For instance, activities such as conducting elections and regulating public streets and thoroughfare sidewalks, even if performed by private parties, are traditionally and exclusively the prerogative of the state and thus constitute state action. *See Lugar*, 457 U.S. at 929*; Venetian Casino Resort, L.L.C. v. Local Joint Executive Bd. of Las Vegas*, 45 F.Supp.2d 1027, 1035 (D. Nev. 1999).

Similar to these other public functions, regulating speech in a public forum is also one of the few functions that the Supreme Court recognizes has been both *traditionally* and *exclusively* performed by the government. *Katz*, 276 F.3d at 556-57. Therefore, Twitter's specific function at issue, blocking Plaintiff from a designated public forum, satisfies the second step of the *Lugar* analysis under the public function test because regulating speech in a public forum is the "quintessential" function that is both traditionally and exclusively the prerogative of the state. *Id*.

Because Ms. Rutenburg plausibly alleges Twitter was performing a function traditionally and exclusively reserved to the government when it arbitrarily censored her in a designated public forum, Twitter's conduct satisfies the state action doctrine, and her proposed amendment is not futile. Thus,

4:21-cv-00548-YGR

this factor, too, favors granting leave to amend.  *See Finjan, Inc*., 2019 U.S. Dist. LEXIS 62473, 2019 WL 1455333, at *16-17 ("[plaintiff] states sufficient facts that, if proven, would support [its claims.]").

### iii.    Leave to Seek Declaratory Relief Should be Granted

If the Court grants leave to amend, Plaintiff also requests leave to seek declaratory relief.  28 U.S.C. § 2201 provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. *See Eureka Fed. Sav. & Loan Ass'n. v. Am. Cas. Co*., 873 F.2d 229, 232 (9th Cir. 1989) (Declaratory relief is appropriate when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue.)

## V.   __CONCLUSION__

Amendment would not be futile and all of the *Foman* factors favor granting leave to amend. Courts freely grant leave to amend when justice so requires. Furthermore, there is no undue prejudice to Defendant by Plaintiff filing the attached proposed SAC. Therefore, for the foregoing reasons, Plaintiff respectfully requests that the Court grant leave to amend.


Dated: June 10, 2021                      Respectfully submitted

                                          By:  /s/ Mark L. Javitch          .

                                          Javitch Law Office
                                          Mark L. Javitch (SBN 323729)
                                          480 S. Ellsworth Ave.
                                          San Mateo CA 94401
                                          Tel: (650) 781-8000
                                          Fax: (650) 648-0705

                                          *Attorney for Plaintiff*
                                          MARIA RUTENBURG

1

## <u>CERTIFICATE OF SERVICE</u>

2

Filed electronically on this 10th day of June 2021, with the United States District Court for the

3

Northern District of California CM/ECF system.

4

Notification was, therefore, automatically sent through the CM/ECF system to Counsel of record

for Defendant:

5

6

Mark R. Conrad

Conrad | Metlitzky | Kane LLP

7

Four Embarcadero Center, Suite 1400

San Francisco, CA 94111

8

(415) 343-7102

Fax: (415) 343-7101

9

Email: mconrad@conmetkane.com

LEAD ATTORNEY

10

11

Grace Yu-Ting Yang

Conrad | Metlitzky | Kane LLP

12

Four Embarcadero Center

Suite1400

13

San Francisco, CA 94111-4164

415-469-1715

14

Fax: 415-343-7100

15

16

17

By:  /s/ Mark L. Javitch            .

18

Mark L. Javitch

19

20

21

22

23

24

25

26

27

15

28

4:21-cv-00548-YGR