Mark L. Javitch (CA SBN 323729)
JAVITCH LAW OFFICE
480 S. Ellsworth Ave
San Mateo, CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705
mark@javitchlawoffice.com
*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA RUTENBURG, an individual,<br><br>          Plaintiff,<br><br>v.<br><br>TWITTER, INC., a Delaware Corporation,<br><br>          Defendant. | Case No.:  4:21-cv-00548-YGR<br><br>**[PROPOSED] SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff MARIA RUTENBURG brings this [Proposed] Second Amended Complaint For Declaratory and Injunctive Relief against Defendant TWITTER, INC. ("Twitter" or "Defendant") and makes the following allegations based on personal knowledge as to facts pertaining to their own experiences and on information and belief as to all others:

## NATURE OF THE ACTION

1. Defendant Twitter, Inc. wrongfully and arbitrarily blocked the public's ability to speak in a constitutionally protected designated public forum.

2. This case is not about the free speech of former President Trump – this case is about the free speech rights of Plaintiff Maria Rutenburg and millions of people around the country who have a First Amendment right to view, discuss, debate, comment, and respond to former President Trump's tweets.

3. Yet Twitter, contrary to its public position of trust, arbitrarily revoked those constitutional rights by picking and choosing which topics people could tweet about, and then ultimately by banning all discussions with Trump's tweets in context.

4. Defendant acted under color of law that was delegated to them when they were entrusted to lawfully administer the designated public forum.

5. Defendant's arbitrary censorship of constitutionally protected speech must be enjoined.

6. Therefore, Plaintiff seeks an injunction restoring her ability to comment under the First Amendment and Fourteenth Amendments.

## PARTIES

7. Plaintiff MARIA RUTENBURG ("Plaintiff") is an individual residing in Redwood City, California.

8. Defendant TWITTER, INC. ("Twitter") is a Delaware corporation with its principal place of business located at 1355 Market St., Suite 900, San Francisco, California.

## JURISDICTION AND VENUE

9. This Court has original subject matter jurisdiction under 28 U.S.C. § 1331, and 28 U.S.C. § 1343, as the action arises under 42 U.S.C. § 1983, a federal statute.

10. This Court has general personal jurisdiction over Twitter because Twitter's headquarters are located in San Francisco at 1355 Market St.

11. Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this District.

## INTRADISTRICT ASSIGNMENT

12. Pursuant to Civil L.R. 3-2(c), this case is properly assigned to the San Francisco / Oakland Division because a substantial part of the events or omissions that give rise to Plaintiff's claims occurred in the County of San Francisco, California.

## FACTS

### DEFENDANT TWITTER, INC.

13. Twitter is a ubiquitous social media platform that has hundreds of millions of users.

14. Twitter opens it platform broadly to users who can sign up for "handles" using the @ symbol.

15. Twitter allows users to post short messages that are called "Tweets" that may be up to 280 characters and are posted on Twitter's website.

16. By default, Twitter profiles are visible to everyone with internet access, including those who are not Twitter users.

17. Twitter permits users to repost or respond to others' messages and to interact with other Twitter users in relation to those messages.

18. Beyond posting tweets, Twitter users can engage with one another in a variety of ways.

19. Twitter users can "retweet" a message showing that it came from the user.

20. Users can also reply to other users' tweets.

21. Users can also favorite or like another user's tweets by clicking on the heart icon that appears under the tweet. By liking a tweet, a user may mean to convey approval or to acknowledge having seen the Tweet.

22. Tweets, retweets, replies, likes and mentions are controlled by the user who generates them.

23. Each retweet and reply is its own Tweet in and of itself, and therefore may also be retweeted, replied to, or liked.

24. A Twitter user can also reply to other replies. A user whose Tweets generates replies will see the replies below his or her original tweet, with any replies to replies nested below the replies to which they respond.

25. The section of replies and replies to replies is sometimes referred to as a "comment thread."

### PLAINTIFF MARIA RUTENBURG

26. Ms. Rutenburg has been using Twitter since June 2020.

27. Ms. Rutenburg tweets under her own name as "Maria Rutenburg" with the handle @maria_rutenburg.

28. Ms. Rutenburg is a frequent tweeter and has tweeted over 2,800 times.

29. Plaintiff frequently retweets and likes other tweets that she agrees with or wants to amplify. She also posts her own original tweets that she writes herself.

30. Plaintiff commonly liked, quoted, commented on, and/or retweeted former President Trump's tweets.

### THE SPACE FOR COMMENTING ON THE FORMER PRESIDENT'S TWEETS WAS A DESIGNATED PUBLIC FORUM

31. The former President's tweets covered a range of all topics, official and unofficial, were always controversial, and the media punditry's reaction commonly drove the media coverage for the day's news cycle.

32. Although they were political opponents, former President Trump maintained an account on his adversary's service to post public messages.

33. The Southern District of New York and the Second Circuit examined the Twitter account of former President Trump' and determined that the space for public commenting on his Tweets was a designated public forum.[1]

---

[1] *See Knight First Amendment Inst. at Columbia Univ. v. Trump*, 302 F. Supp. 3d 541, 580 (S.D.N.Y. 2018) aff'd by 928 F.3d 226, 239-40 (2d Cir. 2019) (vacated on other grounds by *Biden v. Knight First*

34. The former President presented his Twitter account as being a presidential account as opposed to a personal account and used the account to take actions that can only be taken by the President as President.

35. For example, the former President's Twitter Account was used in the course of the appointment and removal of officers and for conducting foreign policy.

36. Between his inauguration and the events in this case, the former President used the @realDonaldTrump account as a channel for communicating and interacting with the public about his administration.

37. The page associated with the account is registered to Donald J. Trump, '45th President of the United States of America, Washington, D.C."

38. The @realDonaldTrump account is generally accessible to the public at large without regard to political affiliation or another limiting criteria.

39. Any member of the public can view his Tweets even without being signed into Twitter.

40. Former President Trump often used @realDonaldTrump multiple times a day to announce, describe, and defend his policies, to promote his Administration's legislative agenda, to announce official decisions, to engage with foreign political leaders, to publicize state visits, to challenge media organizations' coverage of himself, and sometimes for non-government business.

41. For example, former President Trump used the @realDonaldTrump account to announce on June 7, 2017, that he intended to nominate Christopher Wray for the position of FBI Director.

42. He also used the @realDonaldTrump account in removing then-Secretary of State Rex Tillerson and then-Secretary of Veterans Affairs David Shulkin.

43. The National Archives and Records Administration advised the White House that the President's Tweets from @realDonaldTrump are official records that must be preserved under the Presidential Records Act.

---

*Amendment Institute at Columbia University, et. al.*, 593 U.S. ___ , 2021 U.S. LEXIS 1863, 2021 WL 1240931 (Apr. 5, 2021)).

44. Former President Trump commonly engaged with the public and retweeted others' Tweets in his comment threads.

45. Twitter users frequently engaged with the former President's Tweets by liking, retweeting, commenting, and replying to his Tweets.

46. In 2017, former President Trump and his advisor blocked seven users who had responded negatively to his Tweets.

47. The seven users and the Knight First Amendment Institute sued former President Trump. The Court held the blocking was illegal arbitrary censorship in a designated public forum.

48. The space for commenting in response to the former President's Tweets is a designated public forum.

## TWITTER IS A STATE ACTOR

49. Twitter exercises state action when it regulates speech in a designated public forum that it controls. *See Lee v. Katz*, 276 F.3d, 556 (9th Cir. 2002).

50. When a public official posts on social media and permits the public to reply, the area for commenting is a designated public forum. *West v. Shea*, SACV 20-01293-CJC (DFMx), 2020 U.S. Dist. LEXIS 248837, __ F. Supp. 3d __, 2020 WL 8269540, at *6-7 (C.D. Cal. Nov. 12, 2020).

49. Since May 23, 2018, Courts specifically recognized that the place for public comment on the former President's Tweets is a designated public forum. *Knight First Amendment Inst. v. Trump*, 302 F.Supp.3d 541, 578 (S.D.N.Y. 2018) (vacated on other grounds).

50. When the former President Tweeted for official purposes and opened comments for reply, the government created a designated public forum. Id. at

51. The government delegated Twitter the privilege and responsibility of administering the public forum.

52. From at least May 23, 2018, until the events in this case January 6, 2021, Twitter cooperated and complied with the governmental delegation of authority.

53. Twitter maintained the public's uninterrupted access to the space for commenting on the former President's Tweets, both virtually on its website and physically on its servers.

54. Twitter voluntarily permitted the former President to use Twitter's vast resources to broadcast thousands of Tweets to Twitter's massive audience around the world and generate hundreds of thousands of derivative Tweets amongst users.

51. Twitter retained ultimate discretion to control and administer the designated public forum.

52. Twitter had ultimate discretion to determine which topics could be discussed or which topics would be censored.

53. Twitter exercised its discretion and authority to censor comments, likes and retweets on the former President's Tweets on only the certain topic of election integrity as described herein, and by making sure that no could view or discuss the Tweets in the space that was normally open to the public.

**DEFENDANT ARBITRARILY CENSORED PLAINTIFF IN A DESIGNATED PUBLIC FORUM ON THE TOPIC OF ELECTION INTEGRITY**

54. Plaintiff wanted to view and comment on the topic of alleged election fraud.

55. On election night, November 3, 2020, Trump tweeted: "We are up BIG, but they are trying to STEAL the Election. We will never let them do it. Votes cannot be cast after the [polls] are closed."

56. Twitter erased this tweet, but Trump was able to tweet the same message five minutes later, and Twitter permitted the tweet to stand but added its warning notices.

57. The day after the election, Trump retweeted "@MattMackowiak: An update gives Biden 100% of new votes – 128k+"

58. This post was deleted by Twitter.

59. On November 5, 2020, Trump retweeted "@EricTrump: The amount of FRAUD being reported in Pennsylvania, Michigan, Nevada, Georgia and Wisconsin is unreal.  Please report personal experiences. Please have all facts and evidence."

60. This post was also deleted by Twitter.

61. On January 6, 2021, Trump held a rally in Washington, D.C that culminated in violence at the Capital Building.

62. Trump tweeted three at least times that day, but all three of those tweets were removed by Twitter.

63. Prior to removing the videos, Twitter applied warning labels and restricted Plaintiff and the public's ability to interact with the tweets.

64. On January 6, 2021, the former President tweeted at least two tweets and a video. The first tweet stated: "Mike Pence didn't have the courage to do what should have been done to protect our Country and our Constitution, giving States a chance to certify a corrected set of facts, not the fraudulent or inaccurate ones which they were asked to previously certify. USA demands the Truth!"



65. At first, the tweet was left up by Defendant, but they attached a warning label to the tweet which said: "This claim about election fraud is disputed[.]"

66. The same day, the former President also tweeted a video of himself speaking. In the video, Trump stated:

> I know your pain. I know you're hurt. We had an election that was stolen from us. It was a landslide election, and everyone knows it, especially the other side. But you have to go home now. We have to have peace.
>
> We have to have law and order. We have to have to respect our great people in law and order. We don't want anybody hurt. It's a very tough period of time. There's never been a period of time like this where such a thing happened where they could take it away from all of us: from me, from you, from our country.
>
> This was a fraudulent election, but we can't play into the hands of these people. We have to have peace. So go home. We love you. You're very special. You've seen what happens. You see the way others are treated that are so bad and so evil. I know how you feel but go home and go home in peace.

67. The constitutionally protected zone for commenting on a Tweet was at the bottom of each Tweet (where additional replies could be interacted with by scrolling below):



68. For instance, according to the metrics on this example Tweet, at the time of the screenshot, it had generated 14,000 comments, 22,000 retweets, and 90,000 likes.

69. On January 6, 2021, the former President Tweeted a video of himself speaking.



70. Twitter blocked access to the constitutionally protected zone. Plaintiff tried to comment and reply to the Tweet, only to find that Defendant had disabled Plaintiff's ability to comment and reply to Trump's video tweet.

71. Instead of the seeing the space that normally permitted constitutionally-protected content, Defendant closed that area and instead applied a warning label to the tweeted video that said: "This claim of election fraud is disputed, and this Tweet can't be replied to, Retweeted, or liked due to a risk of violence."

72. Plaintiff and the public were entirely prevented from commenting on and interacting with the Tweet.

73. Then, in the evening, Defendant removed the video and replaced it with a message that said: "This Tweet violated is no longer available."

74. That same day, Trump also tweeted: "These are the things and events that happen when a sacred landslide election victory is so unceremoniously & viciously stripped away from great patriots who have been badly & unfairly treated for so long.  Go home with love & in peace.  Remember this day forever!



75. Based on these three tweets, on January 7, 2021, Defendant suspended the former President for a 12 hour period and required Trump's account to remove three tweets that represented "severe and repeated" policy violations.

76. Twitter deleted the three tweets and replaced with a banner that read "This Tweet is no longer available."



77. Regarding these deleted tweets, the interactive features usually open to the public were also removed.

78. Plaintiff could not view, comment, or otherwise interact with these three tweets. At that time only the three tweets were blocked, however, it was still possible to search and interact with the thousands of Trump's other tweets.

79. Between November 2, 2020 and January 8, 2021, Twitter deleted approximately 62 tweets and added approximately 400 warning labels.

80. On January 8, 2021, Twitter again suspended Trump's account and removed all of Trump's Tweets entirely.

81. Defendant removed the more than 65,000 tweets that used to be visible in the account.

82. In doing so, Defendant arbitrarily prevented Plaintiff and the public from the ability to view and search through the former President's tweets.

83. Plaintiff desires to view, search and comment but is no longer able to do so on any of the former President's tweets.

84. Plaintiff was blocked from viewing tweeting, quoting, or retweeting President Trump's tweets.

85. As a direct and proximate result of this misconduct, Plaintiff and the public can no longer debate the former President's tweets in a designated public forum.

**CAUSE OF ACTION**
**Violation of Federal Constitutional Rights**
**42 U.S.C. § 1983**
**(Declaratory and Injunctive Relief)**

86. Plaintiff incorporates paragraphs 1–83 as if fully set forth herein.

87. The interactive space where the public may comment on the former President's tweets is a designated public forum.

88. Plaintiff had a First Amendment right to view, comment, retweet, quote, and like the former President's tweets in a designated public forum.

89. Plaintiff had a Fourteenth Amendment right to due process before her ability to comment was arbitrarily removed in a designated public forum.

90. Defendant were granted authority by the former President under color of law when he opened a designated public forum by tweeting from a presidential account on Twitter. Defendant accepted the position to administer the interactive space surrounding former President's tweets.

91. However, Defendant was a political opponent of the former president's and could not resist taking biased action.

92. In the weeks and months between the election and the inauguration, Defendant began to abuse their authority in administering the designated public forum by interfering with the content of messages, applying warning labels, deleting tweets on certain topics, and preventing Plaintiff from commenting and interacting with the former president's tweets.

93. On January 6, 2021, Defendant abused their authority under color of law by arbitrarily deleting certain of the former President's tweets and blocking the space where Plaintiff and the public could formerly comment on the former President's tweets (when he spoke about certain topics such as election fraud) when it deleted (and continues to suppress) three of the former President's tweets.

94. On January 8, 2021, Defendant again abused their authority under color of law when they arbitrarily removed Plaintiff's and the public's ability to interact with the former President's tweets that he wrote for the period that he was in office.

95. Plaintiff seeks declaratory and injunctive relief, including costs and attorney's fees under this section.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

A. An order declaring that Defendant's actions, as set out above, violates 42 U.S.C. § 1983;

B. Declare Defendant's arbitrary viewpoint-based blocking of discussion on only certain topics on @realDonaldTrump Tweets to be unconstitutional;

C. Enter an injunction requiring Defendant to unblock and restore the ability for Plaintiff to view, comment, reply, quote and comment, or otherwise interact with the former President's tweets for the tweets that he wrote during the period of his presidency;

D. An award of reasonable attorney's fees and costs;

E. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: _____          Respectfully submitted,

PLAINTIFF MARIA RUTENBURG

By: /s/ draft _____
Mark L. Javitch (California SBN 323729)
JAVITCH LAW OFFICE
480 S. Ellsworth Ave
San Mateo CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705
mark@javitchlawoffice.com

*Attorney for Plaintiff*